1

**TYCKO & ZAVAREEI, LLP**
Annick M. Persinger, Esq. (SBN 272996)

2
apersigner@tzlegal.com
483 Ninth Street, Suite 200

3
Oakland, CA 94607
Tel: (510) 254-6808

4
Facsimile: (202) 973-0900

5
**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)

6
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)

7
sclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)

8
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804

9
Los Angeles, CA 90069
Tel: (213) 788-4050

10
Fax: (213) 788-4070

11

12
*Attorneys for Plaintiff Raul Pizana and the*
*Proposed Plaintiff Class*

13

14
**UNITED STATES DISTRICT COURT**

15
**EASTERN DISTRICT OF CALIFORNIA**

16

17
RAUL PIZANA, on Behalf of Himself and all
Others Similarly Situated,

18

19
                                    Plaintiff,

20
        v.

21
SANMEDICA INTERNATIONAL, LLC, and

22
DOES 1 through 10, inclusive,

23
                                    Defendants.

24

Case No.  1:18-cv-00644-DAD-SKO

Hon. Dale A. Drozd

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: September 18, 2018
Time: 9:30 a.m.
Courtroom: 5 (7th Floor)

25

26

27

28

---

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION .................................................................................................. 1

II.    SCIENTIFIC EVIDENCE SHOWS THAT THE PRODUCTS ARE
       PLACEBOS ........................................................................................................... 3

       A.    Defendant's Own Study, and the Scientific Literature Show That the
             Oral Administration of SeroVital Has No Effect Beyond That of a
             Placebo ...................................................................................................... 3

III.   PLAINTIFF SUFFICIENTLY ALLEGES THAT THE PRODUCTS ARE
       PROVABLY INEFFECTIVE—NOT THAT DEFENDANT'S CLAIMS
       ARE MERELY UNSUBSTANTIATED ............................................................... 5

       A.    Defendant's Attempt to Avoid Plaintiff's Experts Fails ......................... 12

       B.    Defendant Mischaracterizes Plaintiff's Experts' Reports ...................... 15

IV.    PLAINTIFF ADEQUATELY ALLEGES RELIANCE ...................................... 17

V.     PLAINTIFF COMPLIED WITH CLRA NOTICE REQUIREMENTS ............. 20

VI.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF .................. 22

VII.   CONCLUSION ................................................................................................... 24

1

2

# TABLE OF AUTHORITIES

**PAGE(S)**

3

**Cases**

4

*Aloudi v. Intramedic Research Group, LLC,*
    729 Fed. App'x 514 ........................................................................................ 10

5

*Bd. of Trustees of Cal. Winery Workers' Pension Trust Fund v. Giumarra Vineyards,*
    2018 WL 1155988 (E.D. Cal. Mar. 2, 2018).................................................. 22

6

*Bronson v. Johnson & Johnson,*
    2013 WL 1629191 (N.D. Cal. Apr. 16, 2013)................................................... 5

7

*Cf. Elliott v. Tandy Corp.,*
    2005 WL 2064432 (Cal. Ct. App. Aug. 29, 2005) .......................................... 22

8

9

*Cf. Mittal v. County of Clark,*
    716 F. App'x 644 (9th Cir. 2018) ................................................................... 14

10

*Chavez v. Nestle USA, Inc.,*
    2011 WL 2150128 (C.D. Cal. May 19, 2011) ................................................... 8

11

12

*Corra v. Energizer Holdings, Inc.,*
    962 F. Supp. 2d 1207 (E.D. Cal. Aug. 2, 2013) ............................................. 21

13

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018)...................................................................... 22, 23

14

15

*Dean v. Colgate-Palmolive,*
    2015 WL 3999313 (C.D. Cal. June 17, 2015) ...................................... 10, 13, 14

16

*Delarosa v. Boiron,* Inc.,
    818 F. Supp. 2d 1177 (C.D. Cal. 2011)........................................................... 21

17

18

*DeMarco v. DepoTech Corp.,*
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) ............................................... 12, 13, 14

19

*DLJ Mortg. Cap. Inc. v. Kontogiannis,*
    726 F. Supp. 2d 225 (E.D.N.Y. 2010) ........................................................... 14

20

*F.T.C. v.* Pantron I Corp.,
    33 F.3d 1088 (Ninth Cir. 1994) .............................................................. 5, 9, 10

21

22

Forcellati v. Hyland's, Inc.,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................ 6, 7, 8, 9

23

*Fraker v. Bayer Corp.,*
    2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)...................................................... 8

24

*Gallagher v. Bayer AG,*
    2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) .................................................. 6

25

26

*Gulaid v. CH2M Hill, Inc.,*
    2016 WL 5673144 (N.D. Cal. Oct. 3, 2016) .................................................. 14

27

28

---

*Hughes v. Ester C Co.*,
   930 F.Supp.2d 439 (E.D.N.Y.2013) ............................................................... 6

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018)................................................... 13

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012).................................................. 6, 18

*In re MannKind Sec. Actions*,
   835 F. Supp. 2d 797, 820-21 (C.D. Cal. 2011)............................................ 14

*In re Resonant Inc. Sec. Litig.*,
   2016 WL 6571267 (C.D. Cal. July 11, 2016) ............................................. 13

*In re Resource Am. Sec. Litig.*,
   2000 WL 1053861 (E.D. Pa. July 26, 2000) ............................................... 14

*Kasky v. Nike Inc.*,
   27 Cal. 4th 939 (2002)................................................................................. 19

*Kwan v. San Medica Int'l, LLC*,
   854 F.3d 1088 (9th Cir. 2017) ............................................................... 4, 8, 9

*Kwan v. SanMedica Int'l, LLC*,
   2014 WL 5494681 (N.D. Cal. 2014)..................................................... 4, 8, 20

*Luman v. Theisman*,
   647 Fed. App'x. 804 (9th Cir. 2016) ........................................................... 24

*McCrary v. Elations Co., LLC*,
   2013 WL 6403073 (C.D. Cal. July 12, 2013) ............................................... 5

*Melgar v. Zicam LLC*,
   2016 WL 1267870 (E.D. Cal. Mar. 31, 2016)...................................... passim

*Mollicone v. Universal Handicraft, Inc.*,
   2017 WL 440257 (C.D. Cal. Jan. 30, 2017)............................................ 8, 11

*National Counsel Against Health Fraud, Inc. v King Bio Pharm, Inc.*,
   107 Cal. App. 4th 1336 (2003) ................................................................. 6, 7

*Neal v. Naturalcare, Inc.*,
   2012 WL 12548490 (C.D. Cal. Dec. 20, 2012)............................................ 21

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ..................................................................... 13

*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*,
   139 Cal. App. 4th 1006 (2006) .................................................................... 19

*Pineida v. Lee*,
   2014 WL 2927160 (N.D. Cal. June 26, 2014).............................................. 12

*Rose v. Bartle*,
   871 F.2d 331, 339-43 (3d Cir. 1989)............................................................ 14

*Salazar v. Honest Tea, Inc.*,
   2015 WL 7017050 (E.D. Cal. Nov. 12, 2015) ......................................................... 19

*Sanchez v. Bay Area Rapid Transit*,
   2013 WL 4764485 (N.D. Cal. Sept. 5, 2013) ......................................................... 13

*Sonner v. Schwabe N. Am., Inc.*,
   2015 WL 13307076 (C.D. Cal. Nov. 18, 2015) ..................................................... 18

*Stuart v. Cadbury Adams*,
   2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010) ................................................ 14

*Torrent v. Yakult U.S.A., Inc.*,
   2015 WL 4335076 (C.D. Cal. July 14, 2015) ........................................................ 17

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................................ 12

*Vigil v. GNC Corp.*,
   2015 WL 2338982 (S.D. Cal. May 13, 2015) ......................................................... 6

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................ 21

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ................................................................ 19

*Washoe Med. Ctr. v. Second Jud. Dist. Ct. of Nev. ex rel. Cty. of Washoe*,
   148 P.3d 790 (Nev. 2006) ...................................................................................... 14

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................ 19

*Zakaria v. Gerber Prods Co.*,
   2015 WL 3827654 (C.D. Cal. June 18, 2015) ......................................................... 6

**Statutes**

Cal. Civ. Code § 1782 .......................................................................................... 20, 22

## I.     INTRODUCTION

Defendant SanMedica International, LLC represents that SeroVital can increase Human Growth Hormone ("HGH") levels by 682%, and "that Growth Hormone has been associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making users look and feel decades – not years but DECADES – younger." *See, e.g.*, First Amended Complaint ("FAC") ¶ 1. In fact, SeroVital is incapable of significantly increasing growth hormone levels and, as a result, is incapable of providing any of the purported benefits from an increase in human growth hormone. Indeed, the study that Defendant commissioned to test the efficacy of SeroVital, as well as studies on the oral administration of amino acids like SeroVital, and Plaintiff's two experts all confirm that SeroVital is no different than a worthless placebo.  *See, e.g. id.* at ¶¶ 2-5.  In other words, Defendant's study, the scientific literature, and Plaintiff's experts show that Defendant's claims about SeroVital are provably false and misleading—not merely that Defendant's statements are unproven or unsubstantiated. Notably, if SeroVital were to increase HGH levels as claimed, it would cause significant health risks. Thus, contrary to Defendant's contention, Plaintiff plainly alleges that Defendant's efficacy representations are false and misleading.

To avoid Plaintiff's well-pled allegations of falsity, Defendant relies heavily on decisions in the *Kwan v. San Medica Int'l, LLC* case in an attempt to convert the instant case into a lack of substantiation case. But this case is distinguishable from the *Kwan* case where the plaintiff repeatedly alleged that the *defendant lacked evidence* in support of its advertising claims. Conversely, here, Plaintiff alleges that *he has evidence* that shows that Defendant's claims are affirmatively false and misleading. *See e.g.*, *Melgar v. Zicam LLC*, 2016 WL 1267870, at *10 (E.D. Cal. Mar. 31, 2016). Where, as here, a plaintiff points to studies and statements by experts to show a product is ineffective, false advertising claims survive a lack of substantiation challenge. *Id.* Plaintiff's case is additionally distinguishable from *Kwan* in several other material respects, including that: (i) Plaintiff points to findings that there were no significant differences between SeroVital and placebo in Defendant's own study on SeroVital to show that SeroVital is no different than a worthless placebo pill; (ii) Plaintiff identifies two experts in the field of endocrinology—

1   who both conclude that SeroVital does not work as advertised; (iii) Plaintiff alleges that published

2   studies on the low dose administration of amino acids like SeroVital show that formulations like

3   SeroVital are incapable of increasing HGH levels; (iv) and Plaintiff notes that, if SeroVital actually

4   worked as represented, it would be dangerous to human health—a fact demonstrating that it does

5   not work as claimed.

6          Since Plaintiff's identified experts clearly distinguish Plaintiff's case from the lack of

7   substantiation claims in *Kwan*, Defendant attempts to impose a Catch 22. Specifically, Defendant

8   claims, on the one hand, that Plaintiff cannot rely on expert opinion at the pleading stage. On the

9   other hand, Defendant argues that Plaintiff's claims are for lack of substantiation because Plaintiff

10  fails to point to affirmative evidence—like expert testimony—to show that its representations are

11  false. Defendant, however, is wrong on both points. Plaintiff's reliance on experts is exactly what

12  the District Court and the Ninth Circuit suggested could show falsity in *Kwan*. Furthermore, none

13  of Defendant's cited case law supports the proposition that the Plaintiff's detailed *allegations* about

14  his experts and their opinions are impermissible. As such, Plaintiff's allegations about his experts

15  and their opinions survive and provide one of several bases that distinguish this case from the lack

16  of substantiation claims in *Kwan*.

17         Although Defendant argues that Plaintiff's experts' reports must be stricken at the pleading

18  stage, Defendant dedicates over half its opposition to addressing Plaintiff's experts' reports. Just

19  like it does with the findings in its own study on SeroVital, Defendant cherry-picks partial phrases

20  and data points to misrepresent the findings and conclusions in Plaintiff's experts' reports. A

21  review of Plaintiff's experts' reports and conclusions, however, makes clear that both experts agree

22  that SeroVital is incapable of providing the advertised benefits—and not merely that they think that

23  there should be more scientific support for the advertised claims.

24         Finally, Defendant's argument that Plaintiff fails to state his allegations with the

25  particularity required by 9(b) is meritless given that Plaintiff alleges the who, what, when, where,

26  and how of Defendant's fraud. Accordingly, for these and the reasons below, this Court should

27  deny Defendant's motion in its entirety.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                                    2
CASE NO. 1:18-CV-00644-DAD-SKO

## II.      SCIENTIFIC EVIDENCE SHOWS THAT THE PRODUCTS ARE PLACEBOS

### A.      Defendant's Own Study, and the Scientific Literature Show That the Oral Administration of SeroVital Has No Effect Beyond That of a Placebo

While Defendant goes to great lengths to mischaracterize Plaintiff's claims, Plaintiff *does not* merely claim that Defendant failed to support its advertising with reliable evidence. Instead, relying on peer-reviewed scientific publications, Defendant's study, and expert analysis, Plaintiff alleges that Defendant's claim that the Product increases HGH by 682% is provably false and misleading. Specifically, Plaintiff alleges, for example, that Defendant's advertising is affirmatively false and misleading because "low dose oral amino acids like SeroVital do not induce GH levels" and because "the oral ingestion of SeroVital is not significantly different from a placebo." FAC ¶ 3. Plaintiff further alleges that Defendant's own study on SeroVital showed that there is "no statistically significant difference in total GH levels over the two hours (AUC) following SeroVital compared to placebo treatment." *Id.*

Plaintiff additionally alleges that SeroVital is incapable of providing a 682% HGH increase, and does not provide any of the benefits of HGH that Defendant advertises on the label, because of its specific formulation. *See* FAC ¶ 30. Because SeroVital is a low dose amino acid administered orally, it cannot sustain increased HGH levels. *See id.* ("Oral amino acids, including those contained in the SeroVital formulation, cannot sustain increased HGH levels"). In that regard, studies on oral amino acids show that oral administration *does not* significantly increase HGH levels. *Id.* at ¶ 32 ("Most published clinical studies regarding the effects of oral amino acids show no significant HGH increase, some show flat and other[s] actually show HGH suppression. See, Melmed Report at p. 9, Table 3"). In the few studies that showed a brief rise in HGH from an oral amino acid, the short-lived rise in HGH required much greater amounts of amino acids than are included in the formulation of SeroVital. *Id.* ("In the few studies when HGH has been reported to rise, it is transient, short-lived, very modest in magnitude, and most importantly, required greater amounts of amino acids than are contained in the SeroVital formulation."). The amino acid ingredients in SeroVital are simply too low—either together or separate—to increase HGH in the human body. *Id.* at ¶ 33.  In short, because SeroVital is administered orally and does not contain

sufficient levels of amino acid, Defendant's claimed "682% increase is categorically impossible to achieve." *See Kwan v. SanMedica International, LLC*, 2014 WL 5494681, at *4 (N.D. Cal. Oct. 30, 2014).

Since SeroVital is incapable of significantly increasing HGH, the low dose oral administration of SeroVital also does not provide any of the anti-aging benefits of HGH that Defendant touts on the label. In fact, HGH is not associated with most of the anti-aging benefits claimed by Defendant no matter how HGH is administered. *See e.g.*, FAC ¶ 38 (discussing randomized controlled trial that showed that HGH did not increase strength, endurance, or cognitive function); *see also* FAC ¶¶ 39-40. The only instance where HGH showed an effect at all involved synthetic injections. *Id.* at ¶ 37. But SeroVital is not a synthetic HGH injection—it is a low dose oral amino acid incapable of causing a significant HGH increase. *See e.g.*, *id.* ¶¶ 30-32. The provable conclusion that SeroVital does not increase HGH significantly is further buttressed by findings that an increase of HGH by 682% would actually cause significant adverse health risks. *Id.* ¶¶ 28, 39.

In addition, Plaintiff has retained two leading exerts in the areas of endocrinology and growth hormone who confirm that SeroVital cannot work as Defendant claims. *Id.* at ¶¶ 23-28. Dr. Melmed is a world-renowned endocrinologist and national expert in the field of growth hormone who heads the largest pituitary department in the nation at Cedars Sinai Medical Center in Los Angeles, where he also serves as the Dean of the Medical Faculty, Executive Vice President, Chief Academic Officer and Director of Research Institute. *Id.* Dr. David H. Madoff, M.D., Ph.D., is a clinical endocrinologist, who has been in full time endocrine practice since 1989, and who has been teaching at Johns Hopkins University of School of Medicine. *Id.* Based on their review of the relevant peer-reviewed scientific literature and research on growth hormone, their review of SeroVital's formulation, and their personal and clinical research experience working in the field of endocrinology, both Dr. Melmed and Dr. Madoff agree that SeroVital cannot increase HGH by 682% and cannot lead to any of the anti-aging benefits that Defendant claims HGH is associated with. *Id.* ¶ 27.

1    Both Dr. Melmed and Dr. Madoff also reviewed Defendant's study on SeroVital and

2    concluded that it showed that there is no difference between SeroVital and a placebo.  *Id.* at ¶¶ 43-

3    46; *see also F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994) (explaining that where

4    "a product's effectiveness arises solely as a result of the placebo effect a representation that the

5    product is effective constitutes a 'false advertisement.'").  Dr. Madoff also explains that Defendant

6    cherry-picked and misconstrued information from the study to claim an effect from SeroVital. *Id.*

7    Dr. Melmed adds that the purported increase shown by the study is so low and transient that it

8    could not increase liver IGF-I levels required to target growth factor. *Id.* ¶ 46. As a result, any mild

9    HGH increase would have no clinical impact. *Id.* As such, like other studies, Defendant's own

10   study shows that SeroVital does not have the claimed HGH increase or any of the anti-aging

11   benefits that Defendant claims are associated with HGH. Thus, Plaintiff alleges numerous

12   independently sufficient facts that affirmatively disprove Defendant's claims, including: published

13   peer reviewed studies on the oral formulation of amino acids like SeroVital, studies on the

14   ingredients in the amounts in the formulation of SeroVital, Defendant's own study, and expert

15   analysis and assessment of the research and formulation of SeroVital.

16   **III.    PLAINTIFF SUFFICIENTLY ALLEGES THAT THE PRODUCTS ARE**
17   **PROVABLY INEFFECTIVE—NOT THAT DEFENDANT'S CLAIMS ARE**
     **MERELY UNSUBSTANTIATED**

18       Even though Plaintiff cites studies and experts that confirm that Defendant's advertising is

19   provably false and misleading, Defendant argues that "this is a textbook lack of substantiation

20   case." Def. at 2.  But Plaintiff does not allege that Defendant's efficacy representations merely lack

21   substantiation—Plaintiff alleges that studies and expert testimony will demonstrate that

22   Defendant's claims are affirmatively false and misleading.  In other words, Defendant's efficacy

23   representations do not merely lack substantiation—studies and expert testimony demonstrate that

24   they are affirmatively false.  Where plaintiffs point to studies and expert testimony to show falsity,

25   courts regularly reject challenges based on a lack of substantiation. *See*, *e.g.*, *McCrary v. Elations*

26   *Co., LLC,* 2013 WL 6403073, at * 1-2, 9-10 (C.D. Cal. July 12, 2013) (finding sufficient plaintiff's

27   claim that he did not receive the promised benefits, coupled with evidence of a scientific consensus

28   that the ingredients in the challenged product were ineffective); *Bronson v. Johnson & Johnson*,

2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (explaining that "[a] claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false"); *Gallagher v. Bayer AG*, 2015 WL 1056480, at *8 (N.D. Cal. Mar. 10, 2015) (rejecting lack of substantiation argument and stating that "[a]s courts in California, New York, and Florida have held, where plaintiffs allege that … claims are false and cite to scientific studies in support, those allegations are adequate to plead false and misleading conduct"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232-33 (N.D. Cal. 2012) (rejecting lack of substantiation challenge based on studies); *Vigil v. GNC Corp.*, 2015 WL 2338982, at *8 (S.D. Cal. May 13, 2015); *Zakaria v. Gerber Prods Co.*, 2015 WL 3827654, at *9 (C.D. Cal. June 18, 2015); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014); *Hughes v. Ester C Co.,* 930 F.Supp.2d 439, 459-61 (E.D.N.Y.2013) (finding an affirmative misrepresentation claim where a study of the challenged product directly contradicted the defendant's advertising claims).

Chief Judge Morrison England's decision denying summary judgment in *Melgar v. Zicam LLC*, 2016 WL 1267870, at *10 (E.D. Cal. Mar. 31, 2016) is directly on point. In *Melgar*, the plaintiff alleged that Zicam Pre-Cold medicine was nothing more than a placebo, and thus did not shorten or treat cold symptoms. *Id.* at *2, 10. To support her claim that Zicam was a placebo and that the defendant's advertising was false, the plaintiff pointed to studies and expert testimony that she maintained affirmatively proved that the products were no more than a placebo. *Id.* at *10. In response, like Defendant does here, the defendant relied on *National Counsel Against Health Fraud, Inc. v King Bio Pharm, Inc.*, 107 Cal. App. 4th 1336, 1342 (2003) to contend that the plaintiff's efficacy claim was based on an alleged lack of substantiation for its advertising. *Melgar*, 2016 WL 1267870, at *10. Also, like Defendant does here, the defendant in *Melgar* argued that the plaintiff's claims fell under *King Bio* because there was no admissible evidence showing that Zicam did not work; "rather, at best the evidence in the record support[ed] only the finding that Zicam's effectiveness ha[d] not been adequately demonstrated." *Id.* Judge England, however, disagreed with the defendant, explained that the defendant's reliance on *King Bio* was misplaced, and concluded that the defendant's "suggestion that Plaintiff [was] simply alleging a lack of substantiation [was] inaccurate." *Id.*

1    In rejecting the same argument that Defendant makes here, Judge England explained that,

2    in *King Bio*, the plaintiff "proceeded on the theory that there [was] no scientific basis for the

3    advertised efficacy of King Bio's products" and alleged that defendant "performed no tests to

4    determine the efficacy of King Bio's products and presented no anecdotal evidence." *Id.* (citing

5    *King Bio* 107 Cal. App. 4th at 1341). Judge England went on to explain that, unlike in *King Bio*,

6    the plaintiff in *Melgar* was not arguing that the defendants had the burden to prove their products

7    were effective or that they must conduct tests showing their products are effective. *Id.* Instead, the

8    plaintiff argued that she could affirmatively prove that the products do nothing based on studies

9    and expert evidence. *Id.* Judge England went on to note that the "state court in King Bio explicitly

10   acknowledged that plaintiffs may, without resorting to any impermissible substantiation argument,

11   establish '[t]he falsity of [] advertising claims…by testing, scientific literature, or anecdotal

12   evidence." *Id.* (quoting *King Bio*, 107 Cal. App. 4th at 1348); *see also Forcellati,* 2014 WL

13   1410264, at *14 (distinguishing *King Bio* because "[u]nlike the plaintiff in King Bio, Plaintiffs are

14   not arguing that Defendants have the burden to prove that their products are effective or that they

15   must conduct tests showing their products are effective; Plaintiffs argue that they can affirmatively

16   prove that the Class Products do nothing. Plaintiffs' argument relies on studies and expert

17   evidence–but that is appropriate under *King Bio*."). Since plaintiff maintained that she could

18   affirmatively prove that the products were no more effective than a placebo, and submitted expert

19   opinions to support that claim, Judge England concluded that the defendant mischaracterized

20   plaintiff's efficacy claim as one for lack of substantiation, and denied the defendants motion for

21   summary judgment because plaintiff's experts "Bausell and Rose opine[d] that Defendants'

22   products are no more effective than a placebo." *Id.* at *11.

23   This case is no different. Plaintiff is not arguing that Defendant failed to conduct tests or

24   that Defendant's advertising claims are unproven. Rather, based on studies and expert analysis,

25   Plaintiff alleges that formulation of SeroVital cannot increase HGH by 682%, and cannot provide

26   any of the anti-aging benefits Defendant claims that HGH provides. Unlike in *King Bio*, Plaintiff

27   does not attempt to shift the burden to Defendant to prove that it has reliable support for its

28   representations. Instead, Plaintiff alleges that *he will prove* that Defendant's representations are

false with studies and expert testimony. Thus, Defendant's lack of substantiation challenge should be rejected. *See e.g.*, *Melgar*, 2016 WL 1267870, at *10; *Forcellati*, 2014 WL 1410264, at *9; *Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *11 (C.D. Cal. Jan. 30, 2017). [1]

To avoid Plaintiff's allegations that Defendant's claims about SeroVital are provably false and misleading, Defendant claims that this case is the same as *Kwan v. San Medica Int'l, LLC* simply because that case also involved SeroVital. *Kwan v. San Medica Int'l, LLC*, 854 F.3d 1088, 1094-96 (9th Cir. 2017); *see also Kwan*, 2014 WL 5494681, at *4. But this case is fundamentally different. In *Kwan*, the plaintiff attempted to shift the burden to Defendant to prove its advertising claims by alleging that Defendant had no "reliable basis" for the advertising claims, and that the advertising claims falsely implied that the advertising was "based on credible scientific proof." *Kwan*, 854 F.3d at 1096; *Kwan*, 2014 WL 5494681, at *3. The plaintiff in *Kwan* continued to improperly allege a lack of substantiation even though the district court provided a roadmap for how to allege that the statements were false, rather than merely unsubstantiated. Specifically, the district court advised that the plaintiff could allege facts showing that Defendant's representations were affirmatively false by pointing to studies showing that SeroVital was incapable of increasing HGH by 682%:

> …. [Plaintiff] must allege facts affirmatively disproving Defendant's claims. For example, Plaintiff could allege that one or more of the authorities alluded to actually studied or tested the formula SeroVital contains and found that it does not produce a 682% mean increase in HGH levels, or that Plaintiff herself did not experience such an increase when using the product, or that a study exists somewhere demonstrating that a 682% increase is categorically impossible to achieve in an over-the-counter pill.

*Kwan*, 2014 WL 5494681, at *4. Even though the plaintiff was given leave to amend, the plaintiff did not cure the deficiency by pointing to studies showing that SeroVital could not increase HGH

---

[1] Defendant's citations to *Fraker v. Bayer Corp.*, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009), *Chavez v. Nestle USA, Inc.*, 2011 WL 2150128 (C.D. Cal. May 19, 2011) are equally unavailing because, unlike in those cases, here, Plaintiff alleges facts that, when proven with evidence, will be sufficient to present to a jury that Defendant's claims are actually false. The plaintiffs in *Fraker* and *Chavez* did not point to their own facts or evidence to show falsity. In *Fraker*, the plaintiff relied only on an FTC order that did not prove that the claims were false. *Fraker*, 2009 WL 5865687, at *8. The plaintiff did not point to any study or any expert that suggested that the vitamin supplement did not increase metabolism. *See generally id.* Similarly, the plaintiff in *Chavez* alleged that "Defendant does not possess requisite scientific evidence to substantiate" its claims and did not point to any of his own evidence that the claims were false or misleading. *Chavez*, 2011 WL 2150128, at *1, 5.

1   by 682%. Instead, the plaintiff continued to allege that the advertising was not credible. *Kwan*, 854

2   F.3d at 1096; *see also Kwan* Second Amended Class Action Compl., Case No. 14-cv-03287-MEJ,

3   Dkt. No 42, ¶¶ 6, 9, 13, 15-20, 34, 49. Accordingly, the Ninth Circuit affirmed the district courts

4   finding that the plaintiff impermissibly alleged a lack of substantiation. *Kwan*, 854 F.3d at 1096.

5   Importantly, in doing so, the Ninth Circuit reiterated the district court's finding that the plaintiff

6   could have alleged facts affirmatively disproving the defendant's claims by, for example, alleging

7   that studies proved that an over-the-counter pill could not increase HGH levels by 682%, or that

8   the plaintiff herself did not experience an HGH increase. *Id.* at 1091-92.

9       Here, Plaintiff cures the deficiencies in *Kwan* by following the Ninth Circuit's roadmap.

10  Plaintiff alleges facts affirmatively disproving Defendant's claims: Plaintiff cites published studies

11  on the oral formulation of low dose amino acids like SeroVital; Plaintiff relies on Defendant's own

12  study on SeroVital that shows that SeroVital performed no better than a placebo; and Plaintiff

13  identifies two experts who confirm that the oral administration of SeroVital does not increase HGH

14  by 682% and, as a result, cannot provide any of the anti-aging benefits Defendant claims are

15  associated with HGH. *See* FAC ¶¶ 23-46. Thus, the instant action is materially distinguishable in at

16  least five independently sufficient respects.

17      First, unlike in *Kwan*, Plaintiff does not attempt to shift the burden of proof to Defendant by

18  arguing that Defendant must substantiate its claims with reliable evidence. Instead, Plaintiff alleges

19  that he will prove that Defendant's representations are affirmatively false. *See Melgar*, 2016 WL

20  1267870, at *10; *Forcellati,* 2014 WL 1410264, at *14.

21      Second, Plaintiff relies on findings in Defendant's own study—which it admits is on

22  SeroVital itself—to show that SeroVital is no different than a worthless placebo pill. Controlling

23  Ninth Circuit authority dictates that when a product is no better than a placebo, a claim that the

24  product is effective is false advertising.  As the Ninth Circuit explained, where "a product's

25  effectiveness arises solely as a result of the placebo effect a representation that the product is

26  effective constitutes a 'false advertisement.'" *Pantron*, 33 F.3d at 1100. Here, Plaintiff alleges that

27  Defendant's own study shows that SeroVital is nothing more than a worthless placebo.  *See e.g.*,

28  FAC ¶ 44 ("AUC values provided in the abstract on the SeroVital website suggest that there is

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                                                              9
CASE NO. 1:18-CV-00644-DAD-SKO

actually no difference in effect between placebo and SeroVital on subsequent HGH levels.").

Because SeroVital has no effect beyond the placebo effect, Defendant's representation that

SeroVital is an anti-aging miracle that can increase HGH levels by 682% and thereby cause

wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved

mood, and heightened sex drive is false advertising. *Pantron*, 33 F.3d at 1100; *FTC v. QT, Inc.*,

512 F.3d 858, 863 (7th Cir. 2008).[2] Accordingly, this Court should disregard Defendant's

argument that "what Plaintiff never does is cite to any study ruling out Defendant's representations

or actually showing they are false." *See* Def. at 6.[3]

   Third, Plaintiff relies on the conclusions of specifically disclosed experts with experience in

the field who both reach the same conclusion—that SeroVital is ineffective for its claimed uses.

This expert disclosure goes well beyond what is required in a pleading. *See*, *e.g.*, *Dean v. Colgate-*

*Palmolive*, 2015 WL 3999313, at *6, n.5 (C.D. Cal. June 17, 2015) (finding that the plaintiff

alleged falsity where plaintiff alleged that toothpaste could not whiten beyond surface stains,

rejecting defendant's argument that no study addressed the toothpaste's specific formulation where

---

[2] Defendant also argues "that the Pennington Study, which tested the Product itself, found that the Product does, in fact increase HGH by 682%, it is impossible for the FAC to plausibly plead that there is a 'scientific consensus that the Product cannot deliver the advertised benefit.'" Def. at 7. To the contrary, Plaintiff explains that statistical tests from that very study showed that SeroVital is no more than a placebo. FAC ¶ 44. Plaintiff even explains how Defendant manufactured the 682% claim based on one cherry-picked data point. *Id.* at ¶ 43 ("And the claim that SeroVital leads to a 682% Mean Increase in HGH Levels is based on a single value of HGH 15 minutes before and a single value of HGH two hours after the administration of Serovital, even though there were two GH levels assessed and five GH levels assessed following Serovital ingestion." (internal quotations omitted)). In any event, the question of whether Defendant's study proves that SeroVital is ineffective, as Plaintiff alleges, or effective, as Defendant argues, is a question of fact inappropriate for decision on a motion to dismiss. *See Melgar*, 2016 WL 1267870, at *7, 11 (denying summary judgment where defendant took differing view on the plaintiff's expert's analysis of studies).

[3] Because Plaintiff relies on a study specifically on the formulation of SeroVital that showed no effect beyond the placebo effect, Defendant's reliance on *Aloudi v. Intramedic Research Group, LLC* is misplaced. *See* 729 Fed. App'x 514, 516 (no study on the product). Even if Plaintiff could not point to Defendant's own study, *Aloudi* would still be distinguishable because Plaintiff points to studies with the same active ingredients as SeroVital, in doses similar to SeroVital, that show no HGH increase. *Compare id.* ("None of these allegations involves scientific testing of the actual JavaSLIM product *or a product with the same active ingredients as JavaSLIM, in a dose similar to JavaSLIM*" (emphasis added)) *with* Melmed Report, Table 3 (listing, for example, Forbes 2011 and Forbes 2014 low dose arginine studies showing no GH increase, and a GH decrease respectively).

there was a study on a similar formulation, and noting that citing "experts' statements and studies [went] above and beyond what is required in a pleading").

Fourth, Plaintiff alleges that published studies on the low dose administration of SeroVital show that formulations like SeroVital are incapable of increasing HGH levels. Unlike here, in *Kwan*, the plaintiff did not allege that the amount of the ingredients in SeroVital were too low to be capable of having any impact. Instead, the plaintiff in *Kwan* only alleged that there were no studies supportive of ingredients in the product. Here, on the other hand, Plaintiff alleges that that only active ingredient—L- arginine—is an amount so low that it would have no effect on HGH levels at all:

> The only active ingredient in the Product is L-arginine. The amount of L-arginine contained in the Product (181 mg per capsule) is *so low* even at the recommended 4 capsule dosage, it would have no effect on HGH levels at all. *See*, Melmed Report at p. 9 ¶ 1. Lowest oral amino acid doses reported to transiently increase in GH in all the heterogenous studies are 3 to 9 grams daily. *Id.* The product contains 10 to 100-fold lower concentrations of an effective oral doses. *Id.* The Product's low doses are proven to have no effect on GH. *Id.* Even if a healthy individual would ingest 4 capsules of SeroVital, the amount of active amino acid ingredient, particularly arginine, would still be below 3 grams—the lowest minimal dose required for an effect at all. *See* Melmed Report Table 3 [any dosage under 3 grams has been shown in all published studies to have no effect on HGH].

FAC ¶ 33(a). None of the inactive ingredients fare any better. *Id.* ¶¶ 33(b)-(f). Because Plaintiff alleges that the literature shows that orally administered low doses of amino acids like SeroVital do not meaningfully increase HGH, unlike in *Kwan*, Plaintiff alleges that SeroVital is incapable of delivering the advertised benefits. *See e.g.*, *Melgar*, 2016 WL 1267870, at *10 (finding that the plaintiff's therapeutic efficacy claim was not barred by the lack of substantiation doctrine where plaintiff "point[ed] to evidence that studies have show that 'concentrations of zinc similar to the amount provided by the Products…show no significant difference from placebo'"); *Mollicone*, 2017 WL 440257, at *11 ("Plaintiff does not merely allege that defendants' representations about the anti-aging benefits of the Adore Products are inconclusive or lack scientific evidence. Rather, plaintiff contends that defendants' representations are false. For example, she avers that the ingredient list on the Adore Products falsely claims that the products contain actual stem cells, but

that the process of preparing PhytoCellTec necessarily results in an ingredient in which there are no living plant stem cells.").[4]

Fifth, Plaintiff further alleges that if SeroVital were to have the claimed benefit, it would be dangerous to human health—a fact suggesting that SeroVital could not cause the claimed HGH increase and could not provide the associated benefits with HGH that Defendant deceives consumers into believing that SeroVital could provide. In sum, unlike the plaintiff in *Kwan*, Plaintiff has followed the lower court and Ninth Circuit's instructions for alleging falsity and is prepared to prove that Defendant's claims are affirmatively false and misleading.

### A.      Defendant's Attempt to Avoid Plaintiff's Experts Fails

Like its other arguments, Defendant's attempt to avoid Plaintiff's experts' reports also fails. In fact, most of Defendant's cited cases support a finding that Plaintiff's expert reports are allowed as pleading exhibits because they form part of the basis of the complaint, and Plaintiff refers extensively to them in the complaint itself. Plaintiff's explicit reliance on the expert reports in the body of the complaint itself distinguishes the cases relied upon by Defendant, in which pleadings were struck because they did *not* form the basis of the pleadings. *See, e.g.*, *U.S. v. Ritchie*, 342 F.3d 903, 908 (Ninth Cir. 2003) ("Affidavits and declarations such as the Hieronymus declaration are not allowed as pleading exhibits unless they form the basis of the complaint. Indeed, none of the attached documents formed the basis of Hroner's complaint, and she did not refer extensively to any of them." (internal citations omitted)); *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220-21 (S.D. Cal. 2001) (striking an affidavit that contained an expert's "assessment of Defendants' public statements, *but it does not form the basis of Plaintiffs' claims*" (emphasis added)). And Defendant cites no case that would require the dismissal of Plaintiff's *allegations* about his experts and their opinions. Instead, Defendant's cases at best stand for the proposition that expert reports—as opposed to allegations about experts—may be stricken in cases, unlike this

---

[4] Defendant asserts that Plaintiff has not shown that the "combination" of ingredients is incapable of having an effect. That argument is misleading for several reasons. As Plaintiff explains, Serovital has but one active ingredient, and it is in an amount too low to have an effect according to all published studies. FAC ¶ 33(a). Plaintiff further alleges that even when the amount of the one active ingredient is combined with the amounts of inactive ingredients, the amount of amino acids in SeroVital is too low to have an effect. *Id.* ¶ 33.

one, where expert reports are not the basis of the pleadings or referred to extensively in the

pleading. For example, Defendant relies primarily on *DeMarco v. DepoTech Corp.*, in which the

court specifically approved the practice of including allegations of expert conclusions in the body

of the complaint. 149 F. Supp. 2d at 1222 ("Because the Court must generally assume the truth of

all material factual allegations in a complaint, averments in an expert affidavit carry no additional

probative weight merely because they appear within an affidavit rather than numbered paragraphs

of the complaint. . . .  A better approach might be to include the expert's nonconclusory assertions

within specific paragraphs in the complaint."). As a result, the court declined to strike portions of

the complaint "that were derived from the [expert] affidavit." *Id.* The plaintiff in *DeMarco* failed to

do what Plaintiff did here—include the detailed allegations, based on expert reports, in the body of

the complaint.

Thus, even if the Court agrees with Defendant that the expert reports may not be attached to

the complaint, Plaintiff's *allegations* in the complaint that identify his experts, and detail their

findings and conclusions, must remain. *See, e.g.*, *Dean v. Colgate-Palmoliv Co.*, 2015 WL

3999313, at *7 n.5 (acknowledging that expert statements and studies in fact "go above and beyond

what is required in a pleading," and approvingly recognizing that it was appropriate for the

complaint to "cite[] a specific study that concluded that" the products in issue did not in fact have

the qualities they were advertised to possess); *In re Resonant Inc. Sec. Litig.*, 2016 WL 6571267, at

*5 (C.D. Cal. July 11, 2016) ("[E]xpert testimony is not barred from being plead directly into a

complaint." (citing *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233

(9th Cir. 2004)). Therefore, although the Court can easily decline to strike Plaintiff's expert reports,

even if the Court chooses to strike them, Plaintiff's allegations about his experts and their

conclusions survive.

Additionally, contrary to Defendant's assertions, courts routinely decline to strike expert

reports attached to the complaint where, as here, the complaint incorporates and relies upon the

substance of the reports. *See, e.g.*, *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at

*11 (N.D. Cal. Jan. 4, 2018) ("[O]ther courts that have considered whether to strike purported

expert opinions incorporated into or attached to a compliant have declined to do so at this stage in

the proceedings."); *Pineida v. Lee*, 2014 WL 2927160, at *8 (N.D. Cal. June 26, 2014) (refusing to strike an expert report filed along with complaint because the report directly commented on topics that were at issue in the case and mentions defendants by name); *Sanchez v. Bay Area Rapid Transit*, 2013 WL 4764485, at *9 (N.D. Cal. Sept. 5, 2013) (noting that "expert reports and photographs are commonly attached to complaints" and declining to strike expert reports because they were not "redundant, immaterial, impertinent, or scandalous" under Rule 12(f)); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 820-21 (C.D. Cal. 2011) (finding that there "exists no inflexible rule governing the sort of written instruments that may be attached to a pleading," particularly where the "expert reports serves merely to buttress Plaintiff's contentions" (quoting *DLJ Mortg. Cap. Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 234 (E.D.N.Y. 2010))); *In re Resource Am. Sec. Litig.*, 2000 WL 1053861, at *4 (E.D. Pa. July 26, 2000) (citing two expert affidavits attached to the complaint and denying motion to dismiss); *Cf. Mittal v. County of Clark*, 716 F. App'x 644 (9th Cir. 2018) (quoting *Washoe Med. Ctr. v. Second Jud. Dist. Ct. of Nev. ex rel. Cty. of Washoe*, 148 P.3d 790, 794 (Nev. 2006) for the proposition that "a medical malpractice complaint filed without a supporting medical expert affidavit is void ab initio"); *Gulaid v. CH2M Hill, Inc.*, 2016 WL 5673144, at *4 (N.D. Cal. Oct. 3, 2016) (refusing to strike declaration attached to a complaint and finding it proper to consider it on a motion to dismiss "as incorporated by reference"). Here, where the expert reports provide highly relevant, contextual background in which to assess the falsity of Defendant's statements, the Court may fairly consider them. *See id.*[5]

---

[5] Defendant's remaining cited cases are also inapposite. *Stuart v. Cadbury Adams*, which relied on *DeMarco*, is also distinguishable because the Court determined that even accepting the contents of the expert report as true, the complaint nevertheless failed to state a claim. *See* 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010) ("[M]ore significantly, even if the Court were to accept as true the contents of the report, Plaintiff's claim would still fail."). There, consumer belief that claims that a toothpaste caused "whitening" signified "intrinsic whitening" rather than "extrinsic stain removal" was insufficient to plead falsity. *See id.* at *3-4. In contrast, in *Dean v. Colgate-Palmolive Co.*, an expert opinion incorporated into the allegations of the complaint, which stated that the toothpaste in question was incapable of penetrating enamel to deeply whiten teeth, *was* sufficient to allege falsity. *See* 2015 WL 3999313, at *7 n.5. In *Rose v. Bartle*, a RICO action, the Third Circuit was primarily concerned with the improper manner in which the district court had converted the defendant's motion to dismiss into a motion for summary judgment. 871 F.2d 331, 339-32 (3d Cir. 1989). The court did not rule on the propriety of incorporating the allegations of an expert report into a pleading for purposes of establishing falsity and attaching the entire report to the complaint. *Id.*

**B.      Defendant Mischaracterizes Plaintiff's Experts' Reports**

Like it does with its study, Defendant cherry-picks phrases from Plaintiff's experts' reports to attempt to misconstrue their conclusions, and Plaintiff's case as merely a claim that Defendant failed to substantiate its labeling statements. *See* Def. at 9-10. To the contrary, Plaintiff's experts conclude that SeroVital is incapable of achieving the HGH increase that Defendant represents on SeroVital's labels. For example, Dr. Melmed explains that "A critical review of available peer-reviewed scientific publications reveals that low dose oral amino acids like Serovital *do not* induce GH levels." Melmed ¶ 1 (emphasis added). Dr. Melmed does not merely state that increased GH levels have not been proven from SeroVital, but rather, that Serovital *does not* induce GH levels as claimed, and that SeroVital is no different than a placebo. *Id.* ("Serovital does not increase serum GH levels"); *see also e.g.*, Melmed p. 3 ("In fact, most existing data show either no GH increase, flat GH or even suppressed GH after oral amino acid injection."); p. 4 ("Therefore, not only is GH treatment discouraged in patients with no pituitary disease, but even for those with rigorously proven pituitary GH deficiency; injections would be required; oral amino acid would have no sustained effect."); p. 10 (citing studies listed in Table 3 and stating that the "[l]owest oral amino acid doses reported to transiently increase GH in all the heterogenous studies are 3 to 9 grams daily" and that "[e]ven if a healthy individual would ingest 4 capsules of Serovital, the amount of active amino acid ingredient, especially arginine, would still be below 3 grams shown in the literature to be the lowest minimal dose required in the very few uncontrolled studies published."); p. 11 ("[T]he oral ingestion of Serovital is not significantly different from a placebo."); p. 12 ("In conclusion: Based on the scientific consensus regarding oral amino acids as well the information available regarding Serovital, Serovital does not increase GH by 682%, nor lead to any anti-aging fat loss, or any of the other claimed benefits.").

Similarly, Dr. Madoff does not merely assert that there are no reliable studies proving Plaintiff's claims. Like Dr. Melmed, Dr. Madoff concludes that SeroVital is no more than a worthless placebo. *See e.g.*, Madoff Report ¶ 2.2.2.5 ("AUC values provided in the abstract on the Serovital website suggests that there is actually no difference in effect between placebo and Serovital on subsequent GH levels. …. The values for AUC are very nearly identical and show no

clinically relevant or statistically significant difference… Importantly, the confidence intervals for the AUC for placebo and Serovital treated subjects are overlapping, demonstrating that there is no statistical difference in GH following Serovital ingestion."); *id.* at ¶ 2.2.2.7 (same); *id.* at ¶ 4 ("Serovital does not cause any of the beneficial effects as stated on the product packaging and website."). Dr. Madoff further explains that even if Serovital were hypothetically capable of increasing mean GH levels by 682%, GH levels would approach dangerous levels. *Id.* a ¶ 3. As such, Defendant's efforts to re-write Plaintiff's experts' reports should be rejected.

Defendant also misconstrues several other aspects of Plaintiff's experts' reports. For example, Defendant makes misleading claims about Melmed's reliance on the "Isidori" study (1981). *See* Def. at 11. Defendant claims that Isordi found the opposite of what Plaintiff claims because the oral administration of lysnine and arginine in that study resulted in secretion of HGH. That study, however, does not show the opposite of what Plaintiff claims. Defendant leaves out that the amount of the active ingredient used in the Isidori study was much higher than the amount in SeroVital. In that connection, Plaintiff's expert, Dr. Melmed, notes that while there was a transient hormone increase in that study, *the amount of the active ingredient was a much higher amount than the amount found in SeroVital*. *See* Melmed Report p. 10 ¶ 1 (referring to Table 3). In another instance, Defendant attempts to argue that the studies Melmed relies on are by his own admission insufficiently powered with poor exclusion criteria such that he cannot reach his stated conclusions. Def. at 11-12. But that leaves out that Dr. Melmed also specifically states in the preceding paragraph that the *rigorous studies* show no GH induction at all. Melmed Report p. 9 ¶ 1.

Defendant also misrepresents Plaintiff's allegations regarding Defendant's misleading statements on the label touting the anti-aging benefits of HGH, as well as the impact of the "Rudman" and "Blackman" studies—both of which involved HGH injections. *See* Def. at 16. Importantly, Plaintiff alleges that *SeroVital* does not have any of the benefits of growth hormone because it does not increase HGH levels sufficiently to have any impact—regardless of what impact HGH may or may not have on aging. *See e.g.*, FAC ¶ 4 (stating that the "Product is not associated with these [anti-aging] benefits because, based on the scientific consensus regarding oral amino acids as well as the information available regarding SeroVital, oral administration of amino

acids like those in SeroVital would not increase GH bioactivity after ingestion"). Stated otherwise, because SeroVital cannot meaningfully increase HGH, it has no clinical impact no matter what the beneficial anti-aging effects of growth hormone may or may not be. The fact that HGH when *injected directly* for 6 months may have had an impact on lean body mass does not change the fact that the *low dose oral administration* of amino acids in SeroVital do not increase GH at all— thereby eliminating the possibility of any benefit from GH. *See* FAC ¶ 37 (citing the "Rudman Study" and stating that "[t]he only clinical study which found any causal link between HGH and lean body mass benefits involved synthetic injections administered for 6 months over the age of 60"); *see also* Madoff Report ¶ 2.4.2 (noting that that the Blackman study involved GH injection therapy).[6] The fact that "[e]ven GH administered by injection is not associated with most of the claimed benefits of [HGH] including wrinkle reduction, increased lean muscle mass, stronger bones, or heightened sex drive" is just further evidence that Defendant's claim that SeroVital dramatically increases HGH, and that HGH is associated with these benefits is provably misleading. *See e.g.*, Melmed Report p. 2 at ¶ 3. Accordingly, all of Defendant's attempts to misconstrue Plaintiff's plainly well-plead allegations of falsity should be disregarded.

IV.    **PLAINTIFF ADEQUATELY ALLEGES RELIANCE**

Although Plaintiff identifies the specific statements on the Product packaging that he relied on, Defendant argues that his allegations are "vague and conclusory" and that "Plaintiff's FAC does not attempt to comply with Rule 9(b)'s pleading requirements." *See* Def. at 2-3. Contrary to Defendant's contention, plaintiffs who identify labeling statements they relied on in purchasing a product easily satisfy both reliance and Rule 9(b) requirements. *Torrent v. Yakult U.S.A., Inc.*, 2015 WL 4335076, at *3 (C.D. Cal. July 14, 2015) (plaintiff's UCL claim met Rule 9(b)'s heightened pleading standard because plaintiff alleged where and how defendant made misleading representations in its packaging and advertising and plaintiff relied on these representations in purchasing defendant's product, and plaintiff included the text and image of the product's

---

[6] Defendant misrepresents Plaintiff's allegations regarding the FTC. While relevant to Plaintiff's claims, especially with respect to the FTC's statements distinguishing injectable HGH from other purported methods of increasing HGH levels, the FTC's conclusion are not intended—or needed in this case—to show falsity.

packaging in the complaint); *Sonner v. Schwabe N. Am., Inc.*, 2015 WL 13307076, at *6–7 (C.D. Cal. Nov. 18, 2015) (plaintiff's allegations met Rule 9(b)'s heightened pleading standard in part because she alleged to whom and how the misleading representations and omissions were made on defendant's website and product labels and that she relied on those representations and omissions in making her purchase of defendant's product). And so it is here. Plaintiff satisfies 9(b) requirements because he identifies the who, what, when, where, and how, of Defendant's fraudulent representations:

- **Who:** The complaint identifies SanMedica International as the entity that misrepresented on SeroVital packaging that it would increase HGH levels by 682% and thereby cause "wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, [and] heightened sex drive" so as to make "users look and feel decades—not years, but DECADES—younger." *See e.g.*, FAC ¶¶ 1-2, 6.
- **What:** The complaint identifies SeroVital, and the statements made on the packaging that are false and misleading. *Id.*
- **When:** Plaintiff alleges that he purchased SeroVital in early 2017 after reading the label. *Id.* at ¶ 6.
- **Where:** Plaintiff alleges that he purchased SeroVital from a Kohl's Store in Hanford, California. *Id.*
- **How:** Plaintiff alleges that Defendant's conduct is provably false and misleading because the low dose amino acids in SeroVital are incapable of meaningfully increasing HGH, and, as a result, are incapable of providing any benefit that might be associated with HGH. *See e.g.*, *id.* at ¶¶ 3-4; *supra* §§ II-III.

As such, Plaintiff satisfies Rule 9(b) and Defendant is on notice of the claims against it. *See In re Clorox Consumer Litig.*, 894 F.Supp.2d at 1234 (the level of detail in plaintiff's allegations is "sufficient to place [defendant] on notice of the basis of [plaintiff's] claims and demonstrates that [plaintiff] is not on a fishing expedition.").

Defendant also claims that supposedly "[a]mong the problems" with Plaintiff's allegations is that the packaging states that "Growth Hormone" is associated with anti-aging benefits, but "[t]hat is different than representing that the Product itself provides these benefits." Def. at 3. But Defendant states on the packaging that SeroVital dramatically increases Human Growth Hormone—by 682%. FAC ¶ 1. As a result, it was reasonable for Plaintiff to believe that he would attain the benefits Defendant represented were associated from growth hormone from the increase in growth hormone that Defendant represented SeroVital would provide. *Id.* at ¶ 6 ("Based on

Defendant's claim that the product increases HGH levels, Plaintiff reasonably believed that the increase in HGH levels purportedly caused by the Product would achieve the purported benefits listed on the label"); *id.* at ¶ 20 ("Because Defendant represents that the Product will cause a '682% mean increase in HGH levels,' and that HGH will provide certain benefits listed on the label, consumers reasonably believe that the HGH increase from the Product will cause wrinkle reduction, decrease body fat, increase lean muscle mass, strengthen bones, improve mood, and heighten sex drive such that they will 'look and feel decades—not years, but DECADES—younger'—as claimed on the label"); *id.* at ¶ 21.  Why else would Defendant tout the benefits of growth hormone prominently on the label other than to communicate to consumers that SeroVital could provide those benefits? *See id.* ¶ 1 (depicting label); *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006) (advertising may be misleading if it has a "'likelihood or tendency to deceive or confuse the public.'" (quoting *Kasky v. Nike Inc.*, 27 Cal. 4th 939, 951 (2002)).  In addition, Defendant's claim that on the label that growth hormone is associated with wrinkle reduction, stronger bones, improved mood, heightened sex drive, and looking younger is also, in and of itself, provably false.  FAC at ¶ 2 ("there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood or heightened sex drive.)

In any event, whether Defendant's labeling practices are deceptive is a question of fact inappropriate for resolution on the pleadings. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008); *Salazar v. Honest Tea, Inc.*, 2015 WL 7017050, at *10 (E.D. Cal. Nov. 12, 2015) (rejecting defendant's argument that reasonable consumers are not likely to be deceived by its nutrient content claims on its product labels because it is a question of fact whether defendant's practice is deceptive which cannot be resolved through a motion to dismiss); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (plaintiffs' allegation that they were deceived by the labeling of defendant's drink products as "All Natural" because they did not believe that the products would contain high fructose corn syrup is sufficient at the pleading stage because California courts have long recognized that whether a practice is deceptive is a question of fact). Accordingly, Plaintiff's allegations are sufficient, and the Court need not decide

whether reasonable consumers were deceived into believing that they would obtain the touted

benefits of growth hormone from SeroVital—a product represented to increase growth hormone.

Defendant later argues that "[a]s a preliminary matter, Plaintiff's assertion that SeroVital

packaging represents that the Product causes these associated benefits, is contradicted by the

Packaging itself." Def. at 14. Again, Defendant misconstrues Plaintiff's allegations. Plaintiff does

not assert that the packaging literally states "that the Product causes these associated benefits" as

Defendant suggests. *See id.* Instead, Plaintiff includes an image of the packaging which states that

"growth hormone" causes anti-aging benefits and alleges that consumers are deceived into

believing that they would receive the benefits of growth hormone from SeroVital, a product which

purportedly increases growth hormone. FAC ¶¶ 1, 6, 20-21. Defendant then argues that "[i]n *Kwan*,

the plaintiff made essentially the same conclusory allegation over the exact same advertising." Def.

at 14.  Not so. In *Kwan*, the plaintiff did not allege that reasonable consumers would believe that

they could obtain the touted benefits of growth hormone from SeroVital's purported ability to

increase growth hormone. Instead, the plaintiff alleged that the advertising was false because "the

only study supporting Defendant's representations did not test for 'youthful skin integrity, lean

musculature, elevated energy production, [and] adipose tissue distribution'" *Kwan*, 2014 WL

5494681, at *3. The statement on the packaging about the benefits of growth hormone, however,

says nothing about testing.  Differently, here, Plaintiff accurately alleges that SeroVital's

packaging states that the product increases growth hormone—directly adjacent to Defendant's

representation about the anti-aging benefits of growth hormone. And again, here, Plaintiff does not

argue that Defendant's representation about the benefits of growth hormone is false for lack of

testing. Therefore, Defendant's attempt to liken Plaintiff's claims to the lack of clinical testing

claims in *Kwan* fails and the Court should find that Plaintiff's allegations that he was deceived into

believing that he would obtain the benefits of growth hormone from SeroVital are sufficient.

## V.   PLAINTIFF COMPLIED WITH CLRA NOTICE REQUIREMENTS

Defendant's false assertion that Plaintiff failed to provide the required notice under the

CLRA, Cal. Civ. Code § 1782, is in no way a basis for dismissing Plaintiff's claim for damages

under the CLRA. The CLRA requires only that the plaintiff serve the defendant with the CLRA

notice, and at the pleading stage, that the plaintiff plead compliance—both of which Plaintiff did. *See* FAC ¶ 71. There is no requirement that the Plaintiff plead or prove receipt of the notice. *See, e.g.*, *Neal v. Naturalcare, Inc.*, 2012 WL 12548490 (C.D. Cal. Dec. 20, 2012); *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1192 (C.D. Cal. 2011). In both *Neal* and *Delarosa*, the defendant asserted that it had not actually received the required CLRA notice. The court was not persuaded in either case. In *Neal*, the court explained that the plaintiff "complied with the literal notice requirements" of the CLRA by alleging that her counsel "mailed to Defendant, by certified mail, return receipt requested, the written notice." *Id.* at *4. In *Delarosa*, the court specifically rejected the position that the CLRA "requires plaintiff to allege that defendant actually received the notice, or that defendant even knew of and had the opportunity to correct the behavior before a claim for damages was filed." *Delarosa*, 818 F. Supp. 2d at 1192.

Here, as alleged in the FAC, Plaintiff did, in fact, serve the required notice. On May 31, 2018, Plaintiff served the required CLRA notice letter by mailing it to Defendant via certified mail, return receipt requested. *See* FAC Ex. 3. Plaintiff obtained a receipt from the United States Postal Service reflecting that the letter was mailed from a United States Post Office location in Oakland, California, addressed to Defendant's Salt Lake City, Utah headquarters. Persinger Decl. Ex. 1 (USPS receipt). Thus, Plaintiff "complied with the literal notice requirements" of the CLRA, and Defendant's contentions to the contrary are simply unsupportable. *See Neal*, 2012 WL 12548490, at *1. Moreover, as a courtesy and to ensure prompt receipt, Plaintiff emailed a copy of the notice to Defendant's counsel in addition to sending it via First Class mail to Defendant. Persinger Decl. Ex. 2.

Since Plaintiff complied with the literal notice requirements, this case bears no resemblance to *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003), a case relied upon by Defendant. Unlike the letter in *Von Grabe*, Plaintiff's letter was delivered timely and in the proper manner, and contained the proper notices. *Von Grabe*, 312 F. Supp. 2d at 1304. Importantly, it is well accepted that a plaintiff may serve the CLRA notice and amend the complaint to add a claim for damages under the CLRA after commencing a case. *See, e.g.*, *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1220-21 (E.D. Cal. 2013) (rejecting the argument that notice must be

provided before litigation commences and stating that plaintiffs had right to seek damages in amended complaint filed 30 days after CLRA notice was mailed).

Dismissing Plaintiff's claim for damages under the CLRA based on Defendant's self-serving and unproven assertion that it did not receive the written notice *in the mail* would be contrary to the plain language of § 1782(a), which contains no requirement that a plaintiff demonstrate receipt of the notice. Dismissal would also contravene the purpose of the CLRA to protect consumers. *Cf. Elliott v. Tandy Corp.*, 2005 WL 2064432, at *5 (Cal. Ct. App. Aug. 29, 2005) ("Because Tandy had actual notice of the demand letter, and because there is no contention that the notice was untimely or that the content of the notice was defective, mailing the notice to Tandy's counsel by regular or certified mail constitutes compliance with section 1782 because it satisfies the underlying purposes of the CLRA to protect consumers and is consistent with the statutory requirement that the CLRA be liberally construed to promote its purposes"). Consumers have no control over the mail once a letter is deposited with the United States Postal Service. For this reason, traditional mailbox rules provide that "if a letter properly directed is proved to have been put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Bd. of Trustees of Cal. Winery Workers' Pension Trust Fund v. Giumarra Vineyards*, 2018 WL 1155988, at *6 (E.D. Cal. Mar. 2, 2018). Self-serving statements that the document was not received or cannot be found is insufficient to defeat that presumption—especially where, as here, Defendant's counsel received the same notice served via email. *See id.* Accordingly, the Court should reject Defendant's argument that it was not properly noticed.

## VI.     PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Finally, Defendant contends that Plaintiff does not have standing to seek injunctive relief because he cannot allege both that he desires to purchase SeroVital if it worked as advertised and that SeroVital cannot work as advertised. Not only does Defendant's argument mischaracterize Plaintiff's allegations, it entirely ignores the Ninth Circuit's recent decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) which resolved a district court split

on the issue of Article III standing to pursue injunctive relief in a false advertising case by concluding that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson*, 889 F.3d at 969 (internal quotation marks omitted). Under *Davidson*, Plaintiff plainly has standing to seek an injunction, and Defendant does not—and cannot—show otherwise.

Plaintiff's allegations are precisely the type of allegations that the Ninth Circuit in *Davidson* concluded were sufficient to demonstrate standing to seek injunctive relief. The *Davidson* court explained that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* Whether the threat of future harm is "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future," or the consumer's "plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved," the underlying threat of future harm persists. *Id.* at 969-70. Here, Plaintiff alleges that he would buy SeroVital in the future if it functioned as advertised, and specifically alleges that he might make such a purchase even though the product was once marred by false advertising or labeling. FAC ¶ 8. Plaintiff "is an average consumer who is not sophisticated in the bioavailability or effects of HGH in different formulations, so he is [at a] risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the product." *See id.* Thus, Plaintiff has alleged "an injury that is concrete and particularized," based on his allegations that he would purchase Defendant's product if it truly functioned as advertised. *See Davidson*, 889 F.3d at 971. His alleged harm is his "inability to rely on the validity of the information advertised" on the SeroVital package, "despite his desire to purchase" a product conferring its purported benefits. *See id.*

Contrary to Defendant's contention, Plaintiff's allegations that SeroVital, as it is currently formulated, cannot provide its advertised benefits are completely consistent with his allegation that he would purchase SeroVital if it could provide him with those benefits. In other words, Plaintiff's

allegation that SeroVital in fact does not raise HGH levels, and that an increase in HGH levels in fact does not lead to the purported benefits listed in the label, *see* FAC, ¶¶8, 23-46, does not undercut Plaintiff's further allegation that he *would* buy SeroVital in the future if he believed that Defendant had reformulated it to provide the benefits claimed. Plaintiff nowhere alleges, as Defendant incorrectly represents, that there is *no* reformulation of SeroVital that would lead to its purported and advertised benefits. In that regard, there is nothing implausible about Plaintiff's allegation that he would buy SeroVital again.

Defendant, notably, ignores *Davidson*. And the sole case Defendant cites, *Luman v. Theisman*, 647 Fed. App'x. 804, 801 (9th Cir. 2016), predates *Davidson* and does not compel the court to conclude Plaintiff does not have standing. The plaintiffs in *Luman* did not "allege that they intend to purchase [the product] in the future" and therefore could not "demonstrate a likelihood of future injury." *Id.* at 807. Plaintiff's complaint does not have the same flaw: He does allege that he intends to purchase SeroVital if it worked as advertised, and thus the Court should reject Defendant's argument that he does not have standing to pursue injunctive relief.

## VII.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss in its entirety.

Dated: September 4, 2018                Respectfully submitted,

**TYCKO & ZAVAREEI LLP.**

By*:*      */s/ Annick M. Persinger*
                 Annick M. Persinger

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson, Esq.
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq. Annick M. Persinger, Esq.

*Attorneys for Plaintiff Raul Pizana*
*and the Proposed Plaintiff Class*