UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL PIZANA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANMEDICA INTERNATIONAL LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:18-cv-00644-DAD-SKO<br><br><u>ORDER DENYING MOTION TO CHANGE VENUE AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS</u><br><br>(Docs. Nos. 8, 25, 30, 37) |

This matter is before the court on defendant SanMedica International LLC's ("SanMedica") motions to change venue and to dismiss plaintiff Raul Pizana's First Amended Complaint. On October 16, 2018, those motions came before the court for hearing. Attorneys Shireen M. Clarkson and Annick Marie Persinger appeared telephonically on behalf of plaintiff. Attorney Steven W. Garff appeared telephonically on behalf of defendant. Having considered the parties' briefing and arguments, defendant's motion to change venue is denied and the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

Plaintiff filed this putative class action on May 9, 2018, challenging the advertising and efficacy of SeroVital-hgh (the "Product"), a purported Human Growth Hormone ("HGH") supplement produced by defendant. (Doc. No. 1, Compl. at 2.) On June 5, 2018, defendant filed

1

a motion to dismiss, (Doc. No. 7), and a motion to change venue to the United States. District Court for the Central District of California. (Doc. No. 8.)

After the court granted plaintiff's *ex parte* motion for extension of time to do so, plaintiff filed a First Amended Complaint on June 30, 2018. (Doc. No. 13, First Am. Compl. ("FAC").) The FAC asserts four causes of action: (1) a violation of California Civil Code § 1750, *et. seq.*, the Consumer Legal Remedies Act ("CLRA"); (2) a violation of California Business & Professions Code § 17500, *et. seq.*, the False Advertising Law ("FAL"); (3) a violation of California Business & Professions Code § 17200, *et. seq.*, the Unfair Competition Law ("UCL"); and (4) breach of express warranty. (FAC at ¶¶ 56–122). Defendant renewed its motion to dismiss on July 23, 2018. (Doc. No. 25.)

The crux of plaintiff's suit is that defendant's Product, despite being marketed as an HGH supplement that can "make users look and feel decades—not years, but *DECADES*—younger," is "no more effective for its advertised purposes than a placebo[] and is therefore worthless to California consumers . . . ." (FAC at ¶¶ 1–5.) Specifically, plaintiff alleges:

> (1) [T]he Product cannot increase HGH levels whatsoever, let alone by 682%; (2) the Product does not reduce wrinkles, "decrease[] body fat," "increase[] lean muscle mass," strengthen bones, "improve[] mood," "heighten[] sex drive," or make "users look and fees decades … younger" because the oral administration of amino acids like SeroVital does not increase growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood, [or] heightened sex drive; and (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks.

(FAC at ¶ 2.)

According to defendant, plaintiff's suit should be dismissed because: (1) the FAC rests on an impermissible lack of substantiation claim; (2) the FAC fails to show falsity; (3) the FAC fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b); (4) plaintiff failed to provide defendant with notice as required by the CLRA before filing suit; (5) plaintiff did not state a claim for breach of express warranty; and (6) plaintiff lacks standing to seek injunctive relief. (Doc. No. 25 at 2.) Defendant also moves to change venue to the United States

/////

2

District Court for the Central District of California for the convenience of the parties and in interest of justice. (Doc. No. 8.)

## REQUEST FOR JUDICIAL NOTICE

Before turning to defendant's motions, the court first considers the parties' requests for judicial notice. (Doc. Nos. 30, 37.) Plaintiff requests that judicial notice be taken of the following documents from *Martin v. SanMedica Int'l, LLC, et al.*, No. 2:16-cv-07794-ODW-JPR (C.D. Cal. 2016) (hereinafter "*Martin*"): (1) the class action complaint; (2) the docket; (3) defendant's motion to transfer venue to the District of Utah; and (4) the first amended complaint. (Doc. No. 30.) Defendant requests that judicial notice be taken of the following documents from *Martin*: (1) the complaint; (2) the order denying plaintiff's ex parte application to continue; (3) plaintiff's ex parte application to reset the deadline for a motion for class certification; (4) plaintiff's notice of voluntary dismissal without prejudice; (5) the court's order granting dismissal of the entire action without prejudice; and (6) plaintiff's first amended complaint. (Doc. No. 37.)

Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*; *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Here, the exhibits that both plaintiff and defendant seek this court to take judicial notice of are part of the docket for *Martin*. As these documents are relevant to the pending motion to change venue, the court will take judicial notice of the documents appearing on the docket in the *Martin action*. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

/////

3

## LEGAL STANDARDS

### A. Motion to Change Venue

Under 28 U.S.C. § 1404(a), a court may transfer a case to another district for "the convenience of the parties and witnesses [and] in the interest of justice . . . ." The change of venue provision "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

A motion to change venue requires the court to determine whether venue is proper in this district, whether plaintiff could have brought the action in the transferee district, and whether the transfer will promote convenience and fairness. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Hoffman v. Bilaski*, 363 U.S. 335, 343–44 (1960). To do so, "the court should consider private and public interest factors." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Private interest factors include: (1) the location where the relevant agreements were negotiated and executed, (2) the plaintiff's choice of venue, (3) the venue's familiarity with the governing law, (4) the contacts relating to the plaintiff's cause of action in the chosen venue, (5) the differences in the costs of litigation in the two venues, (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (7) the ease of access to sources of proof. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *see also Decker Coal Co.*, 805 F.2d at 843. Public factors include the relative degree of court congestion and the local interest in having localized controversies decided at home. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981); *Decker Coal Co.*, 805 F.2d at 843; *see also Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001). But "[n]o single factor is dispositive . . . ." *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *5 (N.D. Cal. Feb. 3, 2017) (quoting *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org.*, 487 U.S. at 29 and *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988).

In addition, "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Mainstay Bus. Sols. v. Indus. Staffing*

*Servs.*, No. CIV S-10-3344-KJM-GGH, 2012 WL 44643, at *1 (E.D. Cal. Jan 9, 2012) (citing *Van Dusen*, 376 U.S. at 645–46). The party moving for a transfer of venue has the burden of establishing that transfer is appropriate. *Decker Coal Co.*, 805 F.2d at 843; *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1980); *Johnson v. Walmart Stores*, No. CIV. 2:10-997-WBS-EFB, 2010 WL 2902386, at *2 (E.D. Cal. July 22, 2010).

Ultimately, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc.*, 487 U.S. at 29 (quoting *Van Dusen*, 376 U.S. at 622); *see also Savage*, 611 F.2d at 279 ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

**B. Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A complaint alleging fraud, as does the plaintiff's, must satisfy heightened pleading requirements. Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction" at issue. *Id.* (internal quotations omitted) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotations omitted).

/////

/////

# DISCUSSION

**A. Motion to Change Venue**

Defendant moves to transfer this action to the Central District of California on the basis that: (1) the action "is a thinly disguised amendment" to the complaint in *Martin*, which was voluntarily dismissed by the plaintiff in that case on July 17, 2017; (2) this case might have been brought in the Central District of California; (3) convenience weighs in favor of transferring to the Central District; and (4) the interest of justice strongly weighs in favor of transferring the case to the Central District. (Doc. No. 8.)

Because plaintiff does not dispute that venue would be proper in the Central District, the court will focus its analysis on the issues of convenience and fairness. (Doc. No. 28.)

1. Convenience and Fairness

According to defendant, convenience weighs in favor of changing venue because: (1) plaintiff's counsel is located in the Central District; and (2) the case will almost certainly be reassigned to Judge Otis Wright, who, as the presiding judge in *Martin*, would be familiar with the facts and claims at issue. Plaintiff counters that: (1) a plaintiff's choice of forum is entitled to substantial weight; (2) the Eastern District is a more convenient forum for the parties and witnesses in this action; and (3) the Eastern District is equally or more familiar with the facts of the case than the Central District.

The court first observes that plaintiff's counsel being located in the Central District has no bearing on consideration of the motion because plaintiff has *chosen* to litigate in the Eastern District—defendant cannot assert plaintiff's purported inconvenience to support its motion to change venue. "If plaintiff is willing to suffer the inconvenience and expense incurred by suing in a particular forum of his choice, his choice to do so is entirely his own concern." *Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *4 (N.D. Cal. Oct. 14, 2003). Defendant and its counsel, both based in Utah, are also no closer to the Central District than the Eastern District. (Doc. No. 9.) Thus, this factor is neutral with respect to transfer to the Central District.

/////

Plaintiff is also entitled to some deference to his choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum . . . when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.") In class actions, the amount of weight accorded to plaintiff's choice of forum depends on the parties' contacts with the chosen venue. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 49, 954 (9th Cir. 1968). The plaintiff's contacts are evaluated by factors such as: (i) whether plaintiff and class members reside in the district; (ii) whether plaintiff's claims arise within the district; and (iii) whether plaintiff's claims are based on the state law of the chosen district. *Martinez v. Knight Transportation, Inc.*, No. 116-cv-01730-DAD-SKO, 2017 WL 2722015, at *4 (E.D. Cal. June 23, 2017) (collecting cases). Two of these factors weigh significantly against a change of venue here—plaintiff and a portion of the class reside in the Eastern District, and plaintiff's claims arose in the Eastern District.[1] Consideration of these factors also weigh against transfer because plaintiff would be burdened by being forced to litigate outside of the district in which he resides were the case to be transferred.

Finally, though it is true that Judge Wright presided over a similar case in *Martin*, he never reached any of the substantive issues in that case but rather was only required to address procedural issues such a quashing service of summons, staying the case pending resolution of a relevant action then pending before the Ninth Circuit, and denying an extension of time to seek class certification.[2] (Doc. No. 28 at 15.) Thus, the risk of inconsistent rulings is null here. In addition, the case currently before this court, though similar, has a different named plaintiff, a different class period, different theories underlying the claims, an additional counsel, and factually distinguishable allegations. (*Cf.* FAC *with* Doc. No. 37, Ex. A.) Because of these differences, and because of this court's opportunity to familiarize itself with the merits of this

/////

---

[1] The third factor is neutral as the Central and Eastern Districts are equally familiar with California law.

[2] The only substantive issue was a motion to dismiss, which was denied as moot after the case was voluntarily dismissed by the plaintiff. (Doc. No. 25 at 15.)

case due to the instant motion to dismiss, judicial economy weighs against a transfer of this action to the Central District.

On balance, the convenience of the parties and judicial economy weigh substantially against transfer to the Central District here.

### 2. Interests of Justice

Defendant also argues that this case should be transferred in the interests of justice because plaintiff's decision to file in the Eastern District violates the Local Rules of this court and is an attempt to forum shop in order to circumvent an adverse ruling. (Doc. No. 36 at 4.) Under Eastern District of California Local Rule 123(d), when a dismissed action, "or one essentially the same, is refiled, it shall be assigned to the same Judge and Magistrate Judge." *See also* C.D. Cal. R. 83-1.2.2 ("Whenever an action is dismissed . . . and thereafter the same or essentially the same claims, involving the same or essentially the same parties, are alleged in another action, the later-filed action shall be assigned to the judge to whom the first-filed action was assigned."). However, as noted above, this case is sufficiently distinguishable from the *Martin* action such that Local Rule 123(d) does not apply. Therefore, the interests of justice do not compel transfer of this case to the Central District on this ground.[3]

The defendant has failed to demonstrate that the convenience of the parties and the interest of justice require transfer. Therefore, defendant's motion to transfer (Doc. No. 8) this case to the Central District of California is denied.

**B. Motion to Dismiss**

Defendant contends that plaintiff's suit should be dismissed because: (1) the FAC rests on an impermissible lack of substantiation claim; (2) the FAC fails to show falsity; (3) the FAC fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b); (4) plaintiff failed to provide defendant with notice as required by the CLRA before filing suit; (5) plaintiff does not state a claim for breach of express warranty; and (6) plaintiff lacks standing to seek injunctive relief.

---

[3] At any rate, as noted above, Judge Wright did not dispose of any substantive motions in *Martin* and it is not certain that he would be assigned this case were it to be transferred to the Central District of California.

9

(Doc. No. 25 at 2.)  Defendant also argues that plaintiff's expert reports cannot be considered on a motion to dismiss.

          1.   <u>The Inclusion of Expert Reports in the FAC</u>

The court will first consider defendant's argument that the expert reports included by plaintiff in his FAC cannot properly be incorporated into a pleading and thus cannot be considered in the court's ruling on its Rule 12(b)(6) motion.  (Doc. No. 25 at 14.)  The court disagrees.  Although defendant cites to several cases in support of its argument, none of them stand for the proposition that expert reports included as part of a complaint, and which form the basis of its claims, cannot be considered by the court in addressing a motion to dismiss.

In *United States v. Ritchie*, cited by defendant, (Doc. No. 25 at 7), the Ninth Circuit merely noted that attachments to the complaint such as "affidavits and declarations . . . are not allowed as pleading exhibits *unless they form the basis of the complaint*." 342 F.3d 903, 908 (9th Cir. 2003) (emphasis added).  In *Ritchie*, "none of the attached documents formed the basis of [plaintiff's] complaint, and she did not refer extensively to them." *Id.*; *cf. Paskenta Band of Nomlaki Indians v. Crosby*, No. 2:15-cv-00538-MCE-CMK, 2016 WL 6094468, at *5 (E.D. Cal. Oct. 19, 2016) (concluding that several documents "relied on by Plaintiffs in their [complaint] and [which] form part of the basis of their claims" are properly considered in a motion to dismiss).

Here, however, plaintiff's complaint cites extensively to expert reports in alleging that the Product "cannot deliver [its] advertised benefits."  (FAC at ¶ 27–28, 43; Doc. No. 25 at 13.)  Including expert reports to help allege falsity in a complaint is not prohibited; rather, it "go[es] above and beyond what is required in a pleading . . . ." *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313, at *6 n.5 (C.D. Cal. June 17, 2015) (finding that plaintiff met the requisite pleading standards for false and deceptive advertising when she alleged that defendant promised its product would perform even though its product "did not and could not"); *see also Agha-Khan v. Bank of Am.*, No. 1:17-cv-00011-DAD, 2017 WL 2833399, at *4 (E.D. Cal. June 30, 2017) ("[T]he court is permitted to consider material which is properly submitted as part of the complaint . . . ."), *aff'd sub nom. In re Agha-Khan*, No. 17-17262, 2018

WL 5883987 (9th Cir. May 21, 2018); *Sanchez v. Bay Area Rapid Transit District*, No. 13-cv-1885 YGR, 2013 WL 4764485, at *9 (N.D. Cal. Sept. 5, 2013) (noting that expert reports are "commonly attached to complaints"); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *11 (N.D. Cal. Jan. 4, 2018) (collecting cases). Moreover, "expert testimony is not barred from being plead directly into a complaint." *In re Resonant Inc. Sec. Litig.*, No. CV 15-1970 SJO (VBKx), 2016 WL 6571267, at *5 (C.D. Cal. July 11, 2016) (citing *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004)).

Because there is no reason for the court to disregard plaintiff's expert reports, either as exhibits to the complaint or pled directly into the complaint, the court will consider them in ruling on defendant's Rule 12(b)(6) motion to dismiss.

### 2. The Lack of Substantiation Theory

Plaintiff alleges that defendant engaged in false and deceptive advertising in violation of California's CLRA, FAL, and UCL. *See* Cal. Civ. Code § 1770(a) (prohibiting misrepresentation that is "intended to result or that results in the sale or lease of goods or services"); Cal. Bus. & Prof. Code § 17508 (declaring it unlawful "to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact"); Cal. Bus. & Prof. Code § 17200 (banning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"). Defendant, however, argues that plaintiff's claims are underpinned by a lack of substantiation theory, which he claims cannot be advanced in a private action.

To enforce false advertising laws, government authorities have some powers private litigants do not. In *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, the California Court of Appeal held:

> [B]oth private persons and prosecuting authorities may sue to enjoin false advertising and obtain restitution. When they bring such actions, both private persons and prosecuting authorities bear the burden of proving the advertising claims to be false or misleading. Prosecuting authorities, but not private plaintiffs, have

the administrative power to request advertisers to substantiate advertising claims before bringing actions for false advertisement, but the prosecuting authorities retain the burden of proof in the false advertising actions.

107 Cal. App. 4th 1336, 1344 (2003).

This means that "neither the UCL nor the CLRA provides . . . a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws." *Kwan v. SanMedica Int'l LLC*, 854 F.3d 1088, 1096 (9th Cir. 2017). Accordingly, "[u]nder current California law, the plaintiff in a false advertising action has the burden of producing evidence to prove the allegations of the complaint that the challenged advertising is false or misleading." *King Bio*, 107 Cal. App. 4th 1336, 1345. A plaintiff cannot simply allege that a defendant's advertising claims lack substantiation. *See id.*

According to defendant, this bars plaintiff's action because his "FAC . . . is based entirely on the allegation that Defendant's advertising is unsubstantiated."[4] (Doc. No. 25 at 11.) Plaintiff counters by arguing that the FAC "plainly alleges that Defendant's efficacy representations are false and misleading." (Doc. No. 31 at 6.) In this regard, the FAC alleges:

> [T]he Product provides consumers with nothing more than a false promise. The scientific community confirms: (1) the Product cannot increase HGH levels whatsoever, let alone by 682%; (2) the Product does not reduce wrinkles, "decrease[] body fat," "increase[] lean muscle mass," strengthen bones, "improve[] mood," "heighten[] sex drive," or make "users look and fees decades … younger" because the oral administration of amino acids like SeroVital does not increase growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood, [or] heightened sex drive; and (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks.

---

[4] Defendant compares the instant case to *Chavez v. Nestle USA, Inc.*, where the court dismissed the complaint before it because it "essentially allege[d] that Defendant's claims about its products are deceptive because they are unsubstantiated." No. CV-09-9192-GW-CW, 2011 WL 2150128, at *4 (C.D. Cal. May 19, 2011), *aff'd in part, rev'd in part and remanded*, 511 F. App'x 606 (9th Cir. 2013). Defendant, however, fails to note that the Ninth Circuit reversed in part specifically because it determined that some of appellant's deceptive advertising and misrepresentation claims, "support viable FAL and UCL fraudulent business practices claims" and "are adequate to state a claim." *Chavez v. Nestle USA, Inc.*, 511 F. App'x 606, 607 (9th Cir. 2013).

12

> . . . Defendant's advertising is false and misleading because, as Dr. Melmed explains, "the oral ingestion of SeroVital is not significantly different from a placebo." Another expert, Dr. H. Madoff, M.D., Ph.D. reached the same conclusion based on Defendant's own study: that there is "no statistically significant difference in total [H]GH levels over the two hours (AUC) following SeroVital compared to placebo treatment." Thus, based on peer-reviewed scientific publications, Defendant's study, and expert testimony, Defendant's claim that the Product increases [HGH] 682% is provably false and misleading.
>
> . . . [A]s Plaintiff's experts and the scientific consensus confirm, the Product does not improve "wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, heightened sex drive, and making uses look and feel decades younger." Dr. Melmed, M.D. confirms that the Product is not associated with these benefits because, based on the scientific consensus regarding oral amino acids as well as the information available regarding SeroVital, oral administration of amino acids like those in SeroVital would not increase [H]GH bioactivity after SeroVital ingestion. Accordingly, based on scientific consensus and expert testimony, Defendant's claim that HGH, which it claims the Product drastically increases, causes weight-loss and anti-aging benefits is provably false and misleading.
>
> In short, the Product is no more effective for its advertised purposes than a placebo . . . .

(FAC at ¶¶ 2–5.)

Defendant argues that plaintiff's FAC mirrors the complaint considered by the court in *Kwan*, where the plaintiff only asserted that "the claims that growth hormone levels are associated with certain health benefits . . . falsely imply that defendant's product claims were based on credible scientific proof." 854 F.3d at 1096. But the FAC in this case does not simply allege that defendant's advertising about its Product is unsubstantiated and lacks scientific support—it pleads specific facts and bases allegations on evidence, including from experts, to buttress its claims that defendant's advertising is "false and misleading" because its Product does not and cannot perform as marketed. (FAC at ¶¶ 2–5.) The reasoning set forth by another judge of this court is directly applicable here:

> Unlike the plaintiff in *King Bio*, Plaintiffs are not arguing that Defendants have the burden to prove that their products are effective or that they must conduct tests showing their products are effective; Plaintiffs argue that they can affirmatively prove that the Class Products do nothing. Plaintiffs' argument relies on studies and expert evidence—but that is appropriate under *King Bio*. The state court in *King Bio* explicitly acknowledged that plaintiffs may,

13

> without resorting to any impermissible substantiation argument, establish "[t]he falsity of [ ] advertising claims . . . by testing, scientific literature, or anecdotal evidence."

*Melgar v. Zicam LLC,* No. 2:14-cv-00160-MCE-AC, 2016 WL 1267870, at *10 (E.D. Cal. Mar. 31, 2016) (quoting *Forcellati v. Hyland's Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *14 (C.D. Cal. Apr. 9, 2014)).

Defendant notes that one of plaintiff's experts, Dr. Melmed, wrote that the "[u]se of oral amino acids is not advocated or approved, as the evidence is lacking" and argues that "[t]his is classic lack of substantiation." (FAC at 86.) However, Dr. Melmed also wrote that the Product contains "10 to 100-fold lower concentrations of effective oral doses [of amino acids] published in the literature, and these low doses have been shown in all published studies to have no effect on [H]GH." (*Id.* at 87.) Dr. Melmed further noted that the circulating half-life of HGH is only "12-14 minutes, so even any modest increase after capsule ingestion would be dissipated completely within 30 minutes." (*Id.*) Dr. Melmed explains that because "a sustained level of [H]GH is required to be elicited for months to impart [H]GH responses in peripheral tissues" that could lead to fat loss, higher sex drives, or the other advertised benefits, "SeroVital does not . . . lead to anti-aging, fat loss, or any of the other claimed benefits." (*Id.* at 88.)

Although defendant attacks the FAC as only discussing the six ingredients in the Product individually rather than as a formula and as conflating the Product's advertised ability to increase HGH levels with the health benefits associated with HGH, defendant fails to address the allegations of plaintiff's entire FAC in context. Construing the factual allegations in the FAC in the light most favorable to plaintiff, the court can conclude that low doses of orally administered amino acids (a category that includes defendant's Product) categorically cannot increase HGH levels by 682%, and, even if the Product could, such elevated levels cannot be sustained a period long enough to yield any of the purported benefits associated with HGH. Because defendant marketed its Product as being able to significantly increase HGH and prominently trumpeted that HGH is associated with a myriad of health benefits, a consumer could put two and two together to

14

reasonably assume that defendant's Product would yield the benefits associated with HGH. Hence, Plaintiff has sufficiently plead falsity, not lack of substantiation. Defendant's motion to dismiss based on a lack of substantiation theory will therefore be denied.

### 3. Rule 9(b) Requires Pleading with Particularity

Citing the particularity standard required by Federal Rule of Civil Procedure 9(b) for pleading fraud, defendant argues that plaintiff has failed to plead facts with sufficient particularity to show plaintiff: (1) relied on defendant's advertising to buy the Product; and (2) did not experience an increase in HGH after taking the Product. (Doc. No. 25 at 9.)

Plaintiff alleges in his FAC that he purchased the Product "from a Kohl's store in Hanford, California in early 2017 after reading Defendants' advertisements on the Product's packaging labels." (FAC at ¶ 6.) Plaintiff also alleges:

> Based on Defendant's claim that the product increases HGH levels, Plaintiff reasonably believed that the increase in HGH levels purportedly caused by the Products would achieve the purported benefits of HGH listed on the label . . . . Like other reasonable consumers, ***Plaintiff interpreted the challenged advertising and labeling claims to mean that the Product would increase HGH levels by 682%, and that as a result of that increase, Plaintiff would receive the anti-aging benefits stated on the Product's label***.
>
> Plaintiff used the Product as directed. However, as a result, Plaintiff did not receive any of the advertised HGH increasing or anti-aging benefits. Plaintiff's body fat, muscle mass, sex drive, mood, and skin remained unchanged. Moreover, Plaintiff—in no way, shape, or form—looked or felt younger, let alone by years or decades, as Defendants promised. If Plaintiff had known that the Product would not deliver the advertised HGH increasing and anti-aging benefits, and that the promises made on the Product's packaging were misleading and false, Plaintiff would not have purchased the Product.

(FAC at ¶¶ 6–7) (emphasis added).

Although it is true that plaintiff does not specifically allege in his FAC that he failed to personally experience an increase in HGH levels after taking the Product, the FAC does allege that plaintiff did not experience any of the benefits defendant advertised as associated with HGH and that "the Product cannot increase HGH levels by 682% nor can the Product lead to the anti-aging benefits claimed by Defendants . . . ." (FAC at ¶ 27.)

The FAC adequately puts defendant on notice that plaintiff is proceeding in this action under a theory that defendant's Product categorically cannot increase HGH levels as advertised and thus cannot yield any of the benefits that defendant advertises as associated with HGH. These allegations, taken as a whole, meet the pleading standards of Rule 9(b). The FAC's allegations identify the who (SanMedica and plaintiff), what (the SeroVital product), when (early 2017), where (a Kohl's store in Hanford, CA), and how (the Product is advertised as able to increase HGH levels and markets the benefits of HGH but yields neither). (*See* Doc. No. 31 at 23.) Accordingly, defendant's motion to dismiss on this ground will also be denied.

### 4. Rule 8 and 12(b)(6) Pleading Standards

Defendant dedicates one paragraph of its motion to dismiss to attack the FAC under Rules 8 and 12(b)(6). Defendant recites the requisite pleading standards and then summarily concludes that "Plaintiff's claims fail to meet this standard, and should be dismissed." (Doc. No. 25 at 9–10.) As noted above, however, plaintiff adequately has alleged the who, what, when, where, and how of defendant's alleged misconduct and incorporates two expert reports into the FAC thereby providing analysis about the Product and its marketed effects. (*See* Doc. No. 31 at 23.) Accepting the FAC's factual allegations as true and in the light most favorable to plaintiff, the court finds that plaintiff's FAC meets the pleading standards under Federal Rules of Civil Procedure 8 and 12(b)(6). Thus, defendant's motion to dismiss under Rules 8 and 12(b)(6) will also be denied.

### 5. Notice Required by the CLRA

California Civil Code § 1782 requires plaintiff to notify defendant of any alleged violations of the CLRA thirty days before filing suit. Because plaintiff did not comply with this notice requirement, defendant argues that his CLRA claim should be dismissed with prejudice. *See Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975) (holding that the purpose of § 1782 is to "provide and facilitate pre-complaint settlements of consumer actions wherever possible" and that this can "only be accomplished by a literal application of the notice provisions"); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303–04 (S.D. Cal. 2003)

(applying § 1782 strictly to dismiss with prejudice a CLRA claim that did not comply with the notice requirement).

However, in *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1220 (E.D. Cal. 2013), the court concluded that strict adherence with § 1782 does not require such a harsh result. *See, e.g.*, *Breen v. Pruter*, 679 F. App'x 713, 724 (10th Cir. 2017) (noting that California Courts of Appeal are divided on the question of whether "it is appropriate to dismiss a premature request for damages under the CLRA with or without prejudice"). In *Corra*, the plaintiff's original complaint failed to satisfy the notice requirements of § 1782, causing the court to observe, "[i]f the original complaint were the operative complaint, and Defendants were moving to dismiss *that* complaint (as opposed to the FAC), the Court might be inclined to grant the motion or at least strike Plaintiff's" CLRA claims. 962 F. Supp. 2d at 1220. However, the plaintiff in *Corra had* filed an amended complaint *after* sending the defendant a CLRA notice and waiting the requisite thirty days. *Id.*

The present case involves a nearly identical situation. After filing the original complaint including an admittedly non-compliant CLRA claim, plaintiff sent defendant a CLRA notice on May 31, 2018, (*see* Doc. Nos. 13 at 139–41; 25-1, Exs. 1, 2), waited thirty days, and then filed his amended complaint in this action on June 30, 2018. (*See* FAC.)

Despite attempting to comply with the notice requirement, the court acknowledges that plaintiff sent the CLRA notice to defendant's counsel's office instead of one of the locations required by the statute. Cal. Civ. Code. § 1782 (requiring notice to be sent "to the place where the transaction occurred or to . . . [the] place of business in California."). Although this technical deficiency does not warrant dismissal with prejudice, the court will adopt *Outboard Marine's* instruction to apply § 1782 strictly but with the temperance shown by the court in *Morgan v. AT&T Wireless Servs., Inc.* 177 Cal. App. 4th 1235, 1261 (2009) ("A dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements.").

/////

Therefore, defendant's motion to dismiss plaintiff's CLRA claim due to the lack of notice required by § 1782 will be granted. However, plaintiff will be granted leave to amend in order to fully comply with the CLRA notice requirement.

### 6. Breach of Express Warranty Claim

Defendant also argues that plaintiff has failed to state a claim for breach of express warranty because the Product packaging expressly declares, "Individual results will v[a]ry." (Doc. No. 25 at 31.) Because plaintiff failed to respond to this argument in his opposition, his breach of express warranty claim will be deemed abandoned. *See Contreras v. Esper*, No. 2:1-cv-01282-KJM-KJN, 2018 WL 1503678, at *3 (E.D. Cal. Mar. 27, 2018) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim . . . .") and *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014)). Defendant's motion to dismiss will, therefore, be granted with prejudice as to the breach of express warranty claim.

### 7. Standing for Injunctive Relief

Defendant challenges plaintiff's standing to seek injunctive relief by arguing that plaintiff's claim he would like to purchase the Product again "[i]f the Product functioned as advertised . . . despite the fact that it was once marred by false advertising" is implausible. (Doc. Nos. 13 at 5; 25 at 25.) According to defendant, plaintiff "cannot plausibly allege on the one hand that his experts have demonstrated that the Product does not and cannot work and then at the same time argue that he might be in danger of purchasing the Product at some later date." (Doc. No. 25 at 25.)

Plaintiff responds by arguing that the Ninth Circuit's ruling in *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 959, 969–70 (9th Cir. 2018), *cert. denied*, ___U.S.___, 139 S. Ct. 640, 202 L. Ed. 2d 492 (2018), controls and allows him to proceed with his claim for injunctive relief. In *Davidson*, the court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may

suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson*, 889 F.3d at 969. To demonstrate that threat of future harm, a plaintiff must make "plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969–70.

Under the *Davidson* standard, the allegations of plaintiff's FAC are sufficient to establish standing. Plaintiff clearly alleges therein that he would buy the Product again, so long as it functions as advertised, because he wants to benefit from its purported benefits. (FAC at ¶ 8.) That plaintiff believes the Product's current formulation and method of delivery does not work does not preclude the possibility of the Product being reworked to produce its advertised benefits. Therefore, defendant's motion to dismiss the request for injunctive relief based upon a lack of standing will denied.

**CONCLUSION**

For the reasons discussed above:

1. Defendant's motion to change venue (Doc. No. 8) to the Central District of California is denied;
2. Defendant's motion to dismiss (Doc. No. 25) is granted with leave to amend as to plaintiff's Consumer Legal Remedies Act claim and denied as to all other claims; and
3. Any amended complaint shall be filed within 30 days from the date of service of this order.

IT IS SO ORDERED.

Dated: **September 30, 2019**

UNITED STATES DISTRICT JUDGE