UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL PIZANA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANMEDICA INTERNATIONAL LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:18-cv-00644-DAD-SKO<br><br>ORDER DENYING DEFENDANT'S MOTIONS TO CHANGE VENUE AND STAY THIS ACTION<br><br>(Doc. Nos. 57, 59) |

This matter is before the court on motions to change venue and stay this action filed by defendant SanMedica International LLC ("SanMedica"). The court reviewed the papers filed in connection with the pending motions and deemed the matter suitable for decision on the papers pursuant to Local Rule 230(g). Having considered the parties' arguments, the court will, for the reasons set forth below, deny both motions.

**BACKGROUND**

Plaintiff Paul Pizana filed this putative class action on May 9, 2018, challenging the advertising and efficacy of SeroVital-hgh (the "Product"), a purported Human Growth Hormone ("HGH") supplement purchased by plaintiff in early 2017. (Doc. No. 53, Second Am. Compl. ("SAC") at ¶¶ 1, 6.) The Product was produced by defendant, a Utah-headquartered corporation. (*Id.* at ¶ 9.) The Second Amended Complaint, filed on November 13, 2019, asserts three causes

1

of action: 1) a violation of California Civil Code § 1750, *et. seq.*, the Consumer Legal Remedies Act ("CLRA"); 2) a violation of California Business & Professions Code § 17500, *et. seq.*, the False Advertising Law ("FAL"); and 3) a violation of California Business & Professions Code § 17200, *et. seq.*, the Unfair Competition Law ("UCL"). (SAC at ¶¶ 60–121.).

The crux of plaintiff's suit is that defendant's Product, despite being marketed as an HGH supplement that can "make users look and feel decades—not years, but *DECADES*—younger," is "no more effective for its advertised purposes than a placebo[] and is therefore worthless to California consumers[.]" (SAC at ¶¶ 1–5.) Specifically, plaintiff alleges:

> (1) [T]he Product cannot increase HGH levels whatsoever, let alone by 682%; (2) the Product does not reduce wrinkles, "decrease[] body fat," "increase[] lean muscle mass," strengthen bones, "improve[] mood," "heighten[] sex drive," or make "users look and feel decades … younger" because the oral administration of amino acids like SeroVital does not increase growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood, [or] heightened sex drive; and (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks.

(*Id.* at ¶ 2.)

On June 5, 2018, defendant filed a motion to change venue to the U.S. District Court for the Central District of California, which this court denied on September 30, 2019. (Doc. Nos. 8, 50.) Defendant now moves again for a change of venue, this time to the U.S. District Court for the District of Utah. (Doc. No. 57.) Defendant also moves to stay this action pending resolution of the motion to change venue. (Doc. No. 59.) Plaintiff filed his oppositions to both motions on January 8, 2020, and defendant filed its replies on January 15, 2020. (Doc. Nos. 64, 65, 66, 67)

## LEGAL STANDARDS

**A.     Motion to Change Venue**

Under 28 U.S.C. § 1404(a), a court may transfer a case to another district for "the convenience of the parties and witnesses, in the interest of justice," and "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). "Section 1404(a) provides for transfer to a more

convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Id.* at 645–46.

A motion to change venue requires the court to "first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables*, Inc., 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). Once a movant has made this showing, district courts make an "individualized, case-by-case consideration of convenience and fairness," *Van Dusen*, 376 U.S. at 622, taking into account "private and public interest factors." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The burden is on the moving party to show that transfer is appropriate. *Id.* ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").

Private interest factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). Public factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (internal quotation marks and citations omitted). "No single factor is dispositive[.]" *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *5 (N.D. Cal. Feb. 3, 2017) (citations omitted).

Ultimately, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), as the "[w]eighing of the factors for and against transfer involves subtle considerations and is best left to

/////

the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

**B.      Motion to Stay**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Stone v. INS*, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Breyer, J., dissenting) (quoting *Landis*, 299 U.S. at 254)). Deciding whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. The party seeking such a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255.

In considering whether to grant a stay, this court must weigh several factors, including "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). A stay may be granted regardless of whether the separate proceedings are "judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

## LEGAL ANALYSIS

**A.      Motion to Change Venue**

Defendant moves to change venue, arguing that the filing of *Diebler v. SanMedica Int'l LLC*, No. 1:19-cv-20155-NLH-JS (D.N.J. 2019) [hereinafter the "*Diebler* case"], a "nearly identical class action lawsuit against Defendant," in the District of New Jersey by the same

4

attorneys and firms in this case makes "litigating both cases on distant coasts . . . inconvenient, inefficient, and contrary to judicial economy." (Doc. No. 57 at 3–4). The solution, according to defendant, is to transfer this action to the District of Utah.[1]  (Doc. No. 57 at 4.)

Because plaintiff does not contest that venue would be proper in the District of Utah, *see* 28 U.S.C. § 1391(b) (providing that a "civil action may be brought in . . . a judicial district in which any defendant resides"), the court will focus on the convenience and fairness inquiry.

1. <u>Plaintiff Is Entitled to Deference in His Choice of Forum</u>

Defendant contends that "Plaintiff's choice of forum deserves little weight," given that the case is a class action where "most of the class Plaintiff seeks to represent resides outside of this forum" and that "Plaintiff's counsel ha[s] now chosen to litigate these issues in two separate forums."  (Doc. No. 57 at 6–7.)
Although it is true that "great weight is generally accorded plaintiff's choice of forum[,] . . . when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  This does not mean that plaintiff's choice of forum is accorded zero deference.  Rather, the weight accorded to plaintiff's choice of forum in a class action depends on the parties' contacts with the chosen venue.  *Id.* (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)); *see, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1059 (N.D. Cal. 2015) (affording plaintiffs, in the class action context, "some deference" where a significant portion of the named plaintiffs reside in California, numerous claims were asserted under California law on behalf of a California subclass, and there is no evidence that plaintiffs engaged in forum shopping).  These contacts are evaluated by factors such as whether:  1) plaintiff and class members reside in the district; 2) plaintiff's claims arise within the district; and 3) plaintiff's claims are based on the state law of the chosen district.  *See Martinez v. Knight Transportation,*
/////

---

[1] Defendant has also filed a motion to change venue to the District of Utah in the *Diebler* action. *Deibler v. SanMedica Int'l LLC*, No. 1:19-cv-20155-NLH-JS (D.N.J. 2019) (Doc. No. 6).  That motion has not yet been ruled upon.

5

*Inc.*, No. 1:16-cv-01730-DAD-SKO, 2017 WL 2722015, at *4 (E.D. Cal. June 23, 2017) (collecting cases).

As this court noted in its order on defendant's previous motion to change venue, the first and second factors weigh against transfer here because plaintiff and a portion of the class reside in this district and plaintiff's claims arose in this district. *See Pizana v. SanMedica Int'l LLC*, No. 1:18-cv-00644-DAD-SKO, 2019 WL 4747947, at *4 (E.D. Cal. Sept. 30, 2019). Because defendant here seeks a change of venue to the District of Utah, the third factor, whether plaintiff's claims are based on the state law of his chosen district, now also weighs against transfer.

In addition, plaintiff's decision to file in the Eastern District of California harmonizes the forum state with the governing law in question; this factor also weighs against transfer. *See Jones*, 211 F.3d at 498–99 (giving weight to "the state that is most familiar with the governing law"); *Atl. Marine Const. Co.*, 571 U.S. at 62 n.6 (factoring in "the local interest in having localized controversies decided at home"); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) ("A California district court is more familiar with California law than district courts in other states. . . . [T]his factor weighs against transfer.").

Moreover, the fact that plaintiff's counsel participated in the filing of the action in *Diebler* —a case in the District of New Jersey that involves a different plaintiff proceeding under New Jersey state claims related to events that occurred in New Jersey—does not invalidate plaintiff's choice of forum in this case and has little bearing on whether this case should be transferred to the District of Utah. (*See* Doc. No. 58, Ex. A ("*Diebler* Compl.").) Even if this court were to accept that transferring both cases to the District of Utah would promote judicial economy, there is no guarantee that the District of New Jersey will grant the transfer motion pending before it.[2] *See Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 1569697, at *3 (N.D. Cal. Mar. 30, 2018) ("Given that any such transfer [by the other court] is speculative at this stage,

---

[2] The court wishes to clarify that this rationale does not preclude it from acting—were that the case, it would tie the hands of both courts. It does, however, mean that the moving party cannot lean on a speculative benefit to carry its burden of proving to the court that transfer is for the fairness and convenience of the parties and witnesses and is in the interest of justice. *See* 28 U.S.C. § 1404(a).

and considering the local interest in the controversy and deference to plaintiff's choice of forum, defendant has failed to make the strong showing of inconvenience necessary to grant transfer.").

The court, considering these factors together, concludes that plaintiff's choice of the Eastern District as forum for this action deserves at least some deference, weighing against transfer to the District of Utah.

    2.    <u>The Convenience of the Parties and Witnesses Weigh Against Transfer</u>

According to defendant, it would be more convenient for most of the witnesses and parties involved if this case was transferred to the District of Utah, as "[v]irtually all employees and senior personnel are based in Utah, and all corporate decision-making is performed in Utah." (Doc. No. 57 at 7.) Transfer would thus "eliminate travel time for the witnesses for the defense and reduce Defendant's financial burden in presenting the numerous witnesses and documentation required to defend itself, all of whom are based in or work in Utah," enabling defendant to "continue to efficiently operate while defending [against] Plaintiff's claims." (*Id.* at 7–8.) Defendant also contends that the risk of inconvenience to plaintiff due to being forced to travel to Utah would be limited only to "trial (or potential evidentiary hearings)." (*Id.* at 8.) This risk is further mitigated by the fact that "potential class members sprinkled throughout [California] maybe required to travel for trial regardless of whether this case is in California or Utah." (*Id.*)

"Venue is primarily a matter of convenience of litigants and witnesses," *Denver & R.G.W.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 560 (1967), and "[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer venue." *Martinez*, 2017 WL 2722015, at *4 (citations omitted). "To demonstrate inconvenience to witnesses, the moving party should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action." *Williams v. WinCo Foods, LLC*, No. 2:12-cv-02690-KJM, 2013 WL 211246, at *4 (E.D. Cal. Jan. 10, 2013) (citations omitted). In conducting the inquiry into this issue, the court must "be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs," especially given that "corporations are better-equipped than individuals to absorb increased litigation costs."

7

*Devaux-Spitzley v. Prudential Ins. Co. of Am.*, No. 18-cv-04436-JST, 2019 WL 935137, at *4 (N.D. Cal. Feb. 26, 2019) (citing *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081).

Although defendant suggests that its witnesses would be inconvenienced if this case were to remain in the Eastern District of California, defendant fails to specifically identify any potential witnesses or the content or relevance of their testimony. Moreover, as defendant itself pointed out, the risk of inconvenience to its witnesses is mitigated by the fact that they would only have to travel for "trial (or potential evidentiary hearings)." (Doc. No. 57 at 8.) In contrast, plaintiff has identified specific witnesses[3]—all resident in California—who would be inconvenienced by a change of venue to the District of Utah, such as himself and all putative class members, the retailer where the transaction in question took place, and Dr. Shlomo Melmed, one of his expert witnesses.[4] (*See* Doc. No. 65 at 12.)

Defendant's lack of detail in support of its motion leaves the court to speculate about the potential inconveniences that defendant's Utah-based witnesses *might* face versus the concrete inconveniences specifically identified by plaintiff.[5] *See In re Ferrero Litig.*, 768 F. Supp. 2d at 1081 ("[T]he Court must be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs.") (quoting *Decker Coal*, 805 F.2d at 843). The court therefore concludes that the convenience of the parties and witnesses weighs against a change of venue to the District of Utah. *See, e.g.*, *Williams*, 2013 WL 211246, at *4 (concluding that, when moving for a change of venue, the movant's failure to produce information regarding its potential witnesses and their testimony weighs against transfer); *In re Ferrero Litig.*, 768 F. Supp. 2d at

---

[3] Plaintiff also described his witnesses' expected testimony and its relevance to the claims in question. (*See* Doc. No. 65 at 12.)

[4] That some of these witnesses are non-party witnesses also weighs against transfer. *See Credit Acceptance Corp. v. Drivetime Auto. Grp., Inc.*, No. CV 13-01531 (MRWX), 2013 WL 12124382, at *4 (C.D. Cal. Aug. 5, 2013) ("[P]articular consideration is given to the convenience of non-party witnesses.").

[5] Even if defendant had shown that it would be comparatively more inconvenienced than plaintiff by remaining in the Eastern District, a corporation's "ability to bear these expenses tempers the importance of the expenses' relative size." *Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-cv-04568-LHK, 2011 WL 768735, at *6 (N.D. Cal. Feb. 28, 2011).

1080 (holding that a "sole conclusory statement" about the location of a party's witnesses "does not satisfy [the] burden of showing that transfer is warranted based on" the inconvenience of witnesses).

        3.        <u>The Location of the Sources of Proof in This Case Weighs Slightly Against Transfer</u>

Defendant argues that its sources of proof, which include "[a]ll of Defendant's relevant documents, including advertisements, Defendant's substantiation for its advertising claims, Defendant's financial records, etc., are located in Utah," thus favoring transfer there. (Doc. No. 57 at 8.)

Plaintiff, however, correctly points out that "advances in technology have made it easy for documents to be transferred to different locations." (Doc. No. 65 at 13.); *see Shultz*, 2011 WL 768735, at *8 ("With technological advances in document storage and retrieval, transporting documents does not generally create a burden.") (citation omitted); *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 906 (S.D. Cal. 2016) ("Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because 'advances in technology have made it easy for documents to be transferred to different locations.'"). The sources of proof identified by defendant—documents such as advertisements and financial records—can all be easily transported or converted to digital form, and defendant fails to show that doing so would constitute significant hardship. *See, e.g.*, *May v. Haas*, No. 2:12-cv-01791-MCE-DAD, 2013 WL 4010293, at *7 (E.D. Cal. Aug. 5, 2013) ("[A]ny difficulties in accessing the evidence must be more significant than those that can be overcome by the availability of electronic data transfer."); *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007) ("Other than describing where their records are located, defendants do not contend that transporting records, or reducing them to electronic form, would cause them significant hardship.").

Given the fact that plaintiff's physical evidence is also located in California (*see* Doc. No. 65 at 13), the court concludes that defendant has not shown that transfer would eliminate, rather than shift, the inconvenience of costs. Therefore, the location of the sources of proof for this case is at best neutral with respect to transfer.

### 4. The Interests of Justice and Administrative Considerations Weigh Against a Change of Venue

Defendant contends that, in the interest of justice, factors such as: 1) "the ability of process to compel attendance of unwilling witnesses and the cost of obtaining willing witnesses"; and 2) the risk of inconsistent rulings and the burden on judicial resources due to concurrent proceedings here and in the District of New Jersey favor transfer to the District of Utah. (Doc. No. 57 at 9.) Neither argument is availing.

#### a. *The Availability and Costs of Witnesses Weigh Against Transfer*

As noted, defendant has not identified a single witness—let alone an "unwilling" one—who the court can examine to determine whether their circumstances would support a change of venue. Assuming these unwilling witnesses are defendant's own employees (*see* Doc. No. 57 at 7, 9) (referencing the "defense witnesses located in Utah," which appear to include "all employees and senior personnel"), defendant can compel them to testify at trial. *See Mainstay Bus. Sols. v. Indus. Staffing Servs., Inc.*, No. CIV S-10-3344 KJM, 2012 WL 44643, at *4 (E.D. Cal. Jan. 9, 2012) (noting that an employer "can compel the testimony of its employees at trial"); *Nanografix Corp. v. Pollard Banknote Ltd.*, No. CV 18-6735-GW(RAOX), 2019 WL 2240439, at *6 (C.D. Cal. Feb. 28, 2019) ("[C]ourts discount the inconvenience to parties' employee witnesses in analyzing transfer because the Court can compel those witnesses to testify.") (citing *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999)).

Defendant also fails to account for the possibility that transferring this action to the District of Utah may deprive plaintiff of witnesses, such as the retailer that sold the Product, who would be removed from reach of the court's subpoena power. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (concluding that the "venue with usable subpoena power" is favored in the change of venue analysis); Fed. R. Civ. P. 45(b)(2)(C) (permitting courts to subpoena witnesses in the district or within 100 miles of where the witness "resides, is employed, or regularly transacts business in person").

In this respect as well, defendant has failed to show that transfer would eliminate, rather than shift, the inconvenience of costs. Indeed, transfer to the District of Utah could possibly

10

remove witnesses from reach of the court's subpoena power. Thus, the availability of witnesses weighs against a change of venue to the District of Utah.

          b.      *The Risk of Inconsistent Rulings and the Burden on Judicial Resources*

Defendant argues that proceeding concurrently with both this action and the *Diebler* case "runs the risk of inconsistent rulings and effectively doubles the burden on the Federal Courts." (Doc. No. 57 at 9.) Defendant also contends that allowing both cases to proceed in their current respective venues "raises the specter of additional identical class actions in many more states[.]" (*Id.*) Even assuming that the District of New Jersey acquiesces to transferring the *Diebler* case to the District of Utah, defendant does not explain how a change of venue would ensure consistent outcomes in two different cases involving different classes of consumers proceeding under different state laws on different sets of facts. Nor does defendant explain why it believes the District of Utah to be "the only jurisdiction which could potentially adjudicate a nationwide class" in this case.[6] (*Id.*)

    In contrast, plaintiff argues that judicial economy weighs against transfer because this court has already expended judicial resources in familiarizing itself with this case. (Doc. No. 65 at 6.) As plaintiff points out, defendant itself made a version of this argument in its previous motion to change venue. (*See* Doc. No. 8 at 6) (arguing that transferring this action to a judge "who is already familiar with the facts and claims at issue will spare both parties time and expense in re-briefing the Court on the nature of the case"). That rationale weighed against

/////

/////

/////

/////

---

[6] If defendant is referring to consolidation, the court notes, without going into detail, that consolidation of related cases typically follows the "first-to-file rule," which gives priority "to the party who first establishes jurisdiction." *See In re Ferrero Litig.*, 768 F. Supp. 2d at 1081. That would appear to favor consolidation in the Eastern District of California, rather than transferring this action and *Diebler* to the District of Utah and consolidating there.

11

transfer then,[7] and it continues to weigh against transfer now. A change of venue would burden the judicial system by requiring the District of Utah to devote additional judicial resources to acquaint itself with the merits of this case and the litigation as it has proceeded so far. *See Pizana*, 2019 WL 4747947, at *4 ("[B]ecause of this court's opportunity to familiarize itself with the merits of this case due to [a] motion to dismiss, judicial economy weighs against a transfer of this action[.]"). It would also deprive this case of a court that is "already familiar with the facts and claims at issue," further prolonging litigation. (Doc. No. 8 at 6.)

The court therefore concludes that the purported risk of inconsistent rulings and the burden on judicial resources weigh strongly against transfer to the District of Utah.[8]

     5.    <u>That the Operative Facts Occurred in Utah Weighs Slightly in Favor of Transfer</u>

Defendant contends that:

> Other than plaintiff's alleged purchase (and his alleged review of advertisements), most of the operative facts occurred in Utah. Defendant is headquartered in Utah. While it is true that Defendant

---

[7] In that motion to change venue, which this court denied, defendant wanted this case transferred to the judge who had presided over *Martin v. SanMedica Int'l, LLC, et al.*, No. 2:16-cv-07794-ODW-JPR (C.D. Cal. 2016), a case that defendant argued was nearly identical to the instant action. (*See* Doc. No. 8.) However, the judge presiding over the *Martin* action did not reach any of the substantive issues before the case was voluntarily dismissed. *See Pizana*, 2019 WL 4747947, at *5 (noting that *Martin* was somewhat similar to the instant case but concluding that judicial economy weighed against transfer because the court had familiarized itself with the substantive issues of the case at hand).

[8] The court does acknowledge the "impending, acute, and judicial catastrophe" that the Eastern District of California faces. See Hailey Konnath, *Calif. Eastern District's Chief Says Court Nearing 'Catastrophe'*, Law360 (Oct. 21, 2019) https://www.law360.com/articles/1211844 ("[As of February 2020], the Federal Court System in the Eastern District of California will have lost the equivalent of one-third of our District Judge Bench to retirement. That fact [is] coupled with the undeniable truth that each District Judge here maintains a caseload that has been at the highest level in the Nation for more than two decades (with no new judgeships since 1978)[.]") (quoting an Oct. 18, 2019 letter written by Chief Judge Lawrence J. O'Neill); *see also* Lawrence J. O'Neill, et al., *An Important Letter to Congress from the Judges of the Eastern District of California Regarding Our Caseload Crisis*, (June 19, 2018) http://www.caed.uscourts.gov/caednew/index.cfm/news/important-letter-re-caseload-crisis/ (noting that in 2018, "[e]ach District Judge handles an average of approximately 900 cases at any given time, more than double the nationwide average"). Nonetheless, "administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984)).

> has sold its SeroVital product to customers throughout California and advertised the product throughout California, all marketing, production, creating, and distribution decisions regarding the Product are made from beginning to end in Utah. Likewise, all marketing materials and products originate in and are disseminated from Utah. All relevant defense documents are in Utah and all potential defense witnesses are in Utah. All of these facts favor transferring this matter to Utah.

(Doc. No. 57 at 9.) However, the fact that a corporation makes decisions at its headquarters in another district "does not negate the local impact of those decisions when they are implemented elsewhere." *Shultz*, 2011 WL 768735, at *5. This court must also consider the fact that plaintiff filed this case in the same district where he was exposed to defendant's marketing and where he purchased the Product, as these too are operative facts. (SAC at ¶ 6.) Weighing the relative importance of both locations, the court concludes that consideration of this factor weighs only slightly in favor of transfer to the District of Utah.

      6.    <u>The Balance of Factors Weigh Strongly Against Transfer</u>

Taking into account all of the factors analyzed above, the court concludes that defendant has failed to justify transfer of this case to the District of Utah.[9] Therefore, defendant's motion to transfer (Doc. No. 57) will be denied.

**B.**     **Motion to Stay**

Defendant has requested a stay pending of this action resolution of the motion to change venue. (Doc. No. 59.) Because this order resolves the motion to change venue, defendant's request for a stay will be denied as moot.

/////

/////

/////

/////

---

[9] Defendant has for a second time sought a change of venue in this action, this time to a district different than the one to which it initially sought transfer, for several reasons that either: 1) could have been raised in its first motion but were not; or 2) contradict the rationale provided in its first motion. (*Compare* Doc. No. 8 *with* Doc. No. 57.) This raises a significant concern that defendant is engaging in forum shopping.

13

**CONCLUSION**

For the reasons discussed above:

1. Defendant's motion to change venue (Doc. No. 57) to the District of Utah is denied;

    a. Defendant is directed to seek leave of the court before filing any future motion to change venue in this action; and

2. Defendant's motion for a stay (Doc. No. 59) is denied as moot.

IT IS SO ORDERED.

Dated: **January 29, 2020**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE