UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL PIZANA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANMEDICA INTERNATIONAL, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 1:18-cv-00644-DAD-SKO<br><br>ORDER RE: PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT'S MOTIONS FOR PROTECTIVE ORDER<br><br>(Docs. 82, 83, & 84) |

This matter is before the Court on Plaintiff Raul Pizana ("Plaintiff")'s motion to compel discovery responses (Doc. 82) and Defendant SanMedica International, LLC ("Defendant")'s motions for protective order (Docs. 83 & 84). Plaintiff and Defendant filed their joint statements directed to the motions, as required by this Court's Local Rule 251, on September 16, 2020. (Docs. 89, 90, & 91.)  The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument.  The hearing set for September 23, 2020, was therefore vacated.  (Doc. 94.)

Having considered the parties' briefing, and for the reasons set forth below, Plaintiff's motion to compel (Doc. 82) will be granted in part and denied in part, and Defendant's motions for protective order (Docs. 83 & 84) will be granted and denied, respectively.

**I.      BACKGROUND**

Plaintiff Raul Pizana filed this putative class action on May 9, 2018, challenging the advertising and efficacy of SeroVital-hgh (the "Product"), a purported Human Growth Hormone ("HGH") supplement produced by Defendant that was purchased by Plaintiff in early 2017.

1

(Doc. 53, Second Am. Compl. ("SAC") at ¶¶ 1, 6, 9.)  The Second Amended Complaint, filed on November 13, 2019, asserts three causes of action: (1) a violation of California Civil Code § 1750, *et. seq.*, the Consumer Legal Remedies Act ("CLRA"); (2) a violation of California Business & Professions Code § 17500, *et. seq.*, the False Advertising Law ("FAL"); and (3) a violation of California Business & Professions Code § 17200, *et. seq.*, the Unfair Competition Law ("UCL").  (SAC at ¶¶ 60–121.).

The crux of Plaintiff's suit is that Defendant's Product, despite being marketed as an HGH supplement that can "make users look and feel decades—not years, but *DECADES*—younger," is "no more effective for its advertised purposes than a placebo[] and is therefore worthless to California consumers[.]"  (SAC at ¶¶ 1–5.)  Specifically, Plaintiff alleges:

> (1) [T]he Product cannot increase HGH levels whatsoever, let alone by 682%; (2) the Product does not reduce wrinkles, "decrease[] body fat," "increase[] lean muscle mass," strengthen bones, "improve[] mood," "heighten[] sex drive," or make "users look and feel decades … younger" because the oral administration of amino acids like SeroVital does not increase growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood, [or] heightened sex drive; and (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks.

(*Id*. at ¶ 2.)

Plaintiff seeks to assert claims on behalf of a proposed class defined as:

> All persons residing in California who purchased the Product for personal use and not for resale during the time period May 9, 2014, through the present.  Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product.

(SAC ¶ 50.)  On March 6, 2020, the Court entered a scheduling order that bifurcated merits from class certification discovery and set a deadline of December 18, 2020, for class discovery only.[1] (*See* Doc. 74.)

Plaintiff moves to compel: (1) discovery of information pertaining to the identification of

---

[1] The parties agreed in their joint scheduling report that discovery in this case should be bifurcated.  (*See* Doc. 71 at 5.)

the members of the putative class (Plaintiff's First Set of Requests for Production ("RFPs") No. 36 & 37); (2) further responses to discovery requests for Product advertising, labeling, marketing, and packaging (Plaintiff's First Set of Interrogatories ("Interrogatories") No. 2 & 4 and RFPs No. 7–12, 14, & 16–24); (3) production of documents concerning Defendant's market research for the Product, including consumer surveys and documents relating to the "target market" and "consumer demographic" for the Product (RFPs No. 41–42 & 45–46); and (4) identification of each document responsive to Interrogatory No. 10 and of documents produced in response to RFPs. (*See* Doc. 82; Doc. 91 at 11–62.)

Defendant seeks protective orders (1) relieving Defendant of its obligation pursuant to Rule 30(b)(6) to designate a witness to testify regarding the identification of members of the putative class (Deposition Topic No. 22) (*see* Doc. 84; Doc. 89 at 3–7); and (2) limiting Plaintiff's questioning at the deposition of Defendant's corporate representative, designated pursuant to Fed. R. Civ. P. 30(b)(6), about the Product's marketing materials, advertisements, labels, and packaging (Deposition Topics No. 5–7 & 10–13) to the putative class period (*see* Doc. 83; Doc. 90 at 4–6).

## II.     LEGAL STANDARDS

### A.   Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) provides that parties

> [m]ay obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (citations omitted).

Motions for protective orders are governed by Federal Rule of Civil Procedure 26(c), which states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c). District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

**B.     Discovery in the Class Action Context**

As for discovery in the class certification context, "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). *See also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit states that the "advisable practice" for district courts on precertification discovery, "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Artis*, 276 F.R.D. at 351. Ninth Circuit case law therefore "stand[s] for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery may be warranted." *Vinole*, 571 F.3d at

942. A court does not abuse its discretion in refusing to authorize precertification discovery when the plaintiff fails to advance a *prima facie* showing that the class requirements [*i.e.*, numerosity, commonality, typicality and adequacy of representation] of Rule 23 are satisfied or that "discovery is likely to produce substantiation of class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). A court is not required, however, to find a *prima facie* showing under Rule 23 prior to authorizing precertification discovery. *See Kaminske v. JP Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("[T]here is nothing in *Doninger* and *Mantolete* that suggests that a *prima facie* showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing that was approved in *Doninger* and *Mantolete*."); *Robinson v. The Chefs' Warehouse*, No. 3:15-cv-05421-RS (KAW), 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017) ("Plaintiffs are not necessarily required to make a *prima facie* showing in order to obtain information for the putative class.").

### III.    DISCUSSION

Given the overlapping nature of the issues presented in the parties' cross-motions, the Court takes each issue in turn:

**A.    Putative Class Member Identities and Contact Information (Plaintiff's Motion to Compel Further Responses to RFPs No. 36 & 37 (Doc. 82) and Defendant's Motion for Protective Order (Doc. 84))**

RFPs No. 36 & 37 seek documents, and Deposition Topic No. 22 requests the designation of a Rule 30(b)(6) witness who will testify, regarding the identification of putative class members, including names, addresses, telephone numbers, and e-mail addresses.[2] (*See* Doc. 89 at 2; Doc. 91-3 at 9.) Plaintiff contends that class contact information is relevant to precertification because it will enable him to conduct consumer surveys in support of class certification. (*See* Doc. 89 at 10–11; Doc. 91 at 49–50.) Defendant asserts that Plaintiff has not

---

[2] The putative class is defined in the operative complaint as "[a]ll persons residing in California who purchased the Product for personal use and not for resale during the time period May 9, 2014, through the present," excluding Defendants' officers, directors, and employees, and anyone who received remuneration from Defendant in connection with that individual's use or endorsement of the Product. (SAC ¶ 50.)

5

shown how this information "has any relevance whatsoever to class certification." (Doc. 89 at 5; Doc. 91 at 54.)

"The Supreme Court has recognized the importance of permitting class counsel to communicate with potential class members for the purpose of gathering information, even prior to class certification." *Guzman v. Chipotle Mexican Grill, Inc*., No. 17-cv-02606-HSG (KAW), 2018 WL 6092730, at *2 (N.D. Cal. Nov. 21, 2018) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102-03 (1981)). *See also Vinole*, 571 F.3d at 942; *Doninger*, 564 F.2d at 1313. Concerning the contact information of the putative class members, district courts in this Circuit have often found that "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys*., No. 06-CV-01330-JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc*., 109 Cal.App.4th 719, 729 (2003)). For that reason, discovery of the putative class members' contact information is routinely allowed. *See, e.g.*, *Artis*, 276 F.R.D. at 352 ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co*., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful to the plaintiff to determine, at minimum, the commonality and typically prongs of Rule 23.")

The Court finds that Plaintiff has met his burden to show that class contact information is relevant precertification. Even if numerosity is undisputed, as Defendant appears to concede (*see* Doc. 89 at 5–6), class contact information would enable Plaintiff to conduct surveys of the putative class members, which would aid in the development of evidence in support of class certification under Rule 23. Such surveys are relevant to the predominance, commonality, and typicality requirements, particularly where they show the degree of reliance the class members placed on, and thus the materiality of, Defendant's advertising, labeling, and/or packaging of the Product. *See, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612–16 (N.D. Cal. 2018) (finding predominance of materiality and reliance based in part on consumer survey); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1111 (C.D. Cal.

6

2015); *McCrary v. Elations Co. LLC*, No. EDCV 13-0242 JGB (SPx), 2014 WL 12589137, at *18 (C.D. Cal. Dec. 2, 2014) (finding survey results sufficient to infer reliance among buyers of the product at issue such that the requirements of typicality, commonality, and predominance were met). By testing whether a "price premium" existed on the Product due to the allegedly false advertising claims, surveys are also relevant to the measurement of damages across the entire class. *See, e.g., Fitzhenry-Russell*, 326 F.R.D. at 614–16 (finding predominance of damages issue based on price premium survey).

Although originally agreeing to provide class contact information (*see* Doc. 89 at 2), Defendant now contends that because Plaintiff's theory of the case is that the Product is ineffective, "there is no information that Plaintiff could possibly obtain from class members that would be helpful in deciding class certification." (*Id.* at 5. *See also* Doc. 91 at 54–55.) Defendant does not explain why or how Plaintiff's claim that the Product lacks efficacy—germane to the falsity of its advertising—obviates the need to demonstrate the materiality of that advertising and the harm suffered as a result, such that a survey of class members would not be "helpful" to the class certification determination. As the legal authorities cited above exemplify, surveys in consumer protection cases are pertinent to questions of predominance, typicality, and commonality under Rule 23. Defendant's suggestion that the discoverability of class contact information pre-certification is limited to employment cases (*see* Doc. 89 at 5) is equally without merit, as this information has been ordered to be produced in cases outside of the employment context. *See, e.g.*, *Limon v. Circle K Stores Inc.*, No. 1:18-cv-01689-SKO, 2020 WL 1503448, at *5 (E.D. Cal. Mar. 30, 2020); *Gary Davis v. Chase Bank U.S.A., N.A.*, No. CV 06-04804 DDP (PJWX), 2010 WL 1531410, at *1 (C.D. Cal. Apr. 14, 2010).

Defendant next proposes that it provide all purchase information for each putative class member other than names and contact information or alternatively produce contact information from a representative sample from the class. Withholding names and contact information for the putative class, however, would prevent Plaintiff from substantiating its class allegations through survey evidence. *See Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13–cv–01222–TLN–AC, 2017 WL 6558133 at *2 (E.D. Cal. Dec. 22, 2017)). ("Especially when the material is in the

7

possession of the defendant, the court should allow the plaintiff enough discovery to obtain evidence as to whether a class action is maintainable."). Moreover, Defendant's proposals imply that it would bear an undue burden by providing information and designating a witness to testify regarding the identification of the putative class, but it has not met its burden of showing the discovery is unduly burdensome. To meet its burden, Defendant "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents." *Pham v. Wal–Mart Stores, Inc.*, No. 2:11–cv–01148–KJD–GWF, 2011 WL 5508832, at *3 (D. Nev. Nov. 09, 2011) (citing *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05–cv–01318–BES–GWF, 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006)). The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence. *Pham*, 2011 WL 5508832, at *3 (citing *In re Toys "R" Us– Delaware, Inc. (FACTA) Litigation*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010)). Because Defendant has not provided any information about the size of the putative class (other than it meets the numerosity requirement of Rule 23), the Court cannot conclude that the actual putative class is sufficiently large such that sampling would be appropriate. *Cf. Harris v. Best Buy Stores, L.P.*, No. 4:17-cv-00446-HSG(KAW), 2017 WL 3948397, at *3-4 (N.D. Cal. Sept. 8, 2017) ("Given the large size of the putative class [10,000], the Court finds that the 500 employees previously offered by Defendant is appropriate."); *Guzman*, 2018 WL 6092730, at *3 ("Given the large size of the putative class [43,000], the Court finds that a sample of 2,000 individuals is appropriate.").

Finally, Defendant requests, in the event class contact information is deemed discoverable, that the Court order Plaintiff to utilize and bear the cost of a *Belaire-West* opt-out notice procedure for class members who wish to opt-out of the disclosure of their information.[3]

---

[3] Such procedure comes from *Belaire–West Landscape Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007). In that case, the court acknowledged that "[t]he contact information for . . . current and former employees deserves privacy protection." *Id.* at 561. To protect employee privacy, the court adopted an opt-out procedure, whereby employees would receive notice of the putative class action and the fact that plaintiffs were seeking their personal contact information. *Id.* at 562. Employees could then send written notice that they do not want their contact information shared with the plaintiffs' attorneys. *Id.*

(*See* Doc. 89 at 6; Doc. 91 at 56.)  The Court, however, finds that any privacy concerns implicated in producing putative class contact information, including telephone numbers and email addresses, are adequately addressed by the parties' stipulated protective order, which the Court entered on April 10, 2020 (Doc. 76), and declines to order the implementation of a *Belaire-West* procedure in this case.  *See Austin v. Foodliner, Inc.*, No. 16-cv-07185-HSG (DMR), 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (refusing to require a *Belaire-West* notice where precertification discovery of putative class members' confidential contact information, including telephone numbers, is subject to a protective order, observing that while "it is slightly easier to ignore a solicitation that arrives by mail rather than telephone, it does not necessarily follow that such an incremental difference warrants more than the significant bulwark provided by a protective order.") (distinguishing *Willner v. Manpower, Inc.*, No. C 11-2846 JST (MEJ), 2013 WL 12324002, at *2 (N.D. Cal. Mar. 27, 2013)).  *See also Salgado v. O'Lakes*, No. 1:13–CV–0798–LJO–SMS, 2014 WL 7272784, at *12–13 (E.D. Cal. Dec. 18, 2014) (finding a standing protective order is "sufficient to protect the limited disclosure of [class members' contact] information and a *Belaire* opt-out protocol is unnecessary."); *Marsikian v. Mercedes-Benz USA, LLC*, No. CV 08-4876 AHM (FMOx), 2009 WL 10673466, at *2 (C.D. Cal. Aug. 13, 2009) ("[T]he court is persuaded that a protective order is sufficient to protect the class members' state law third-party privacy rights (i.e., an opt-out letter or notice is not required) . . . .")  Indeed, the parties explicitly contemplated that their protective order would protect discovery of "sensitive data regarding customers . . . ." (Doc. 76 at 2.)  Additionally, as set forth above, the requested information is highly relevant to Plaintiff's claims in this litigation.  Consequently, Plaintiff's need for this information significantly outweighs Defendant's asserted, but unsubstantiated, privacy rights in the information.  *See Artis*, 276 F.R.D. at 353.

In sum, the Court finds that Plaintiff has met his burden of showing that the putative class contact information sought by RFPs No. 36 & 37 and Deposition Topic No. 22 is relevant and discoverable prior to class certification, and Defendant has not proven good cause to limit this discovery.  Accordingly, Plaintiff's motion to compel responses to RFPs No. 36 & 37 will be granted, and Defendant's motion for a protective order to prevent the designation of a witness

pursuant to Rule 30(b)(6) to testify regarding Deposition Topic No. 22 will be denied.

**B.     Product Advertising, Labeling, and Packaging (Plaintiff's Motion to Compel Further Responses to RFPs No. 7–11, 14, & 16–23 (Doc. 82) and Defendant's Motion for Protective Order (Doc. 83))**

RFPs No. 7–11, 14, & 16–23 and Deposition Topics No. 5–7 & 10–13 are directed to the advertising, labeling, and packaging of the Product. (*See* Doc. 90 at 2–3; Doc. 91-3 at 4–7; Doc. 91-4 at 3–4.) All of these discovery requests seek this information from the time the Product was first sold in California to the present. (*See id.*) Defendant requests that the Court limit the requests to the putative class period, *i.e.*, between May 9, 2014, and the present, contending that Plaintiff has not shown that the advertising, labeling, and packaging that was used for the Product prior to the putative class period is relevant to class certification. (*See* Doc. 90 at 6.)

Plaintiff asserts that Product advertising, labeling, and packaging materials that predate the putative class period are relevant to the "class-wide proof" necessary to establish commonality under Rule 23 because they show Defendant's "intent, motive, and knowledge" and the "misleading nature of the challenged advertising claims, their materiality, and the consumers' presumptive reliance on them." (*See* Doc. 90 at 9; Doc. 91 at 31.) While marketing materials that predate the putative class period may be relevant to show Defendant's intent, motive, and knowledge, these issues are more properly characterized as merit-based inquiries, which the Court has bifurcated from class certification issues. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (While the court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Moreover, it does not follow that these pre-May 9, 2014 materials could constitute proof that materiality was common class-wide, particularly given how unlikely it is that any putative class member saw, much less relied upon, those materials in deciding to purchase the Product. Plaintiff cites *Ogden v. Bumble Bee Foods*, LLC, 292 F.R.D. 620 (N.D. Cal. 2013) and *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196 WHO (NC), 2014 WL 1940178 (N.D. Cal. May 14, 2014), but those cases are inapposite. Neither case concerned the

10

issue of whether information prior to the class period was within the scope of class certification discovery, which had been bifurcated from that pertaining to the merits. Instead, both cases addressed the question whether pre-class period discovery was relevant to Plaintiff's claims—a question that is premature here. *See Ogden*, 292 F.R.D. at 628 ("Ogden has shown that information about marketing and labeling decisions pre-dating 2008 falls within the broad definition of relevance under Rule 26(b)."); *Ang*, 2014 WL 1940178, at * 2 ("The Court agrees with the Court's holding in *Ogden* that information about defendant's marketing and labeling decisions concerning the products in this food misbranding case would either be relevant to plaintiffs' claims or could lead to admissible evidence supporting their claims.").

Because Plaintiff has not shown how discovery concerning Product advertising, labeling, packaging, and changes thereto that predate the putative class period is likely to substantiate his class allegations, the Court finds that Plaintiff is not entitled to that discovery at this stage of the case. Plaintiff's request for this information and testimony may be renewed after the class certification issues are settled.[4] Accordingly, at this time, Plaintiff's motion to compel further responses to RFPs No. 7–11, 14, & 16–23 will be denied to the extent they seek such information outside of the putative class period of May 9, 2014 to present, and Defendant's motion for a protective order limiting the Rule 30(b)(6) Deposition Topics No. 5–7 & 10–13 to the putative class period will be granted.

**C.     Changes to Product Advertising, Labeling, and Packaging (Plaintiff's Motion to Compel Further Responses to Interrogatories No. 2 & 4 and RFPs No. 12 & 24)**

Interrogatories No. 2 & 4 and RFPs No. 12 & 24 also concern the advertising, labeling, and packaging of the Product, but are more narrowly directed to changes made thereto. (*See*

---

[4] Although Plaintiff's discovery requests are premature, the Court observes that Defendant's objections to those requests, *i.e.*, "harassing, overbroad, overly burdensome, not proportional to the needs of this litigation, not relevant to any party's claims or defenses, and not reasonably calculated to lead to the discovery of admissible evidence" (*see* Doc. 91-6 at 6–12), are too general and boilerplate to be proper objections. *See Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). The Court cautions Defendant that, in the future, objections such as these will not be sufficient to meet its burden of explaining why the requested discovery is objectionable. *See Gorrell v. Sneath*, 292 F.R.D. 629, 632–33 (E.D. Cal. 2013).

11

Doc. 91-3 at 5, 6–7; Doc. 91-4 at 3.) There is, however, significant overlap between these discovery requests and those at issue in the preceding section. (*Compare* Doc. 91-3 at 4–5, RFP No. 11 ("All documents naming, discussing, describing, referencing, relating to, or referring to any changes to SeroVital-hgh advertising materials since SeroVital-hgh was first sold in California.") *with* RFP No. 12 ("All documents naming, discussing, describing, referencing, relating to, or referring to any individuals responsible for making changes to the advertising of SeroVital-hgh, including names, positions, email addresses, and telephone numbers."); *compare* id. at 6–7, RFP No. 23 ("All documents, including written communications, naming, discussing, describing, referencing, relating to or referring to the reason(s) for any change(s) to the labeling and packaging of SeroVital-hgh since SeroVital-hgh was first sold in California.") *with* RFP No. 24 ("All documents, including written communications, identifying, naming, describing, referencing, relating to, or referring to any individuals responsible for making changes to the labeling and packaging of SeroVital-hgh, including names, positions, email addresses, and telephone numbers."). Like the Product advertising, labeling, and packaging discovery requests at issue in the preceding section, none of these requests, except Interrogatory No. 2, is limited to the putative class period. As with the preceding discovery requests, Plaintiff has also not shown that discovery relating to pre-class period Product packaging and labeling changes and the identification of the persons responsible for those changes is within the scope of class certification discovery.[5]

---

[5] Even if Interrogatory No. 4 and RFPs No. 12 & 24 were limited to the putative class period, however, no further response would be required. There is no indication that Rule 26(a)(1)(A), on which Plaintiff and the cases he cites rely, applies to Interrogatory No. 4, as the Rule requires that the responding party identify by name, address, and telephone number only those individuals that the party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). Moreover, the language of Rule 26(b) cited by Plaintiff was eliminated by amendment in 2015. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amends.

RFPs 12 & 24 are simply overbroad. (*See* Doc. 91-3 at 5, 6–7 (requesting "All documents naming, discussing, describing, referencing, relating to, or referring to any individuals responsible for making changes to the advertising [labeling and packaging] of SeroVital-hgh.").) These requests call for, as Defendant points out, every email each person ever sent or received regardless of the subject matter, as well as each person's entire personnel file. The request would also include payroll documents for each person. As worded, it calls for the production of literally *every* document that *bears the name of* any person who had responsibility for making changes to the Product's advertising, labeling, or packaging. Limiting these requests to the putative class period would do little to curtail their overbreadth. The Court cautions Plaintiff that, in the future, such facially overbroad discovery requests will not be countenanced. *See, e.g., Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 5752387, at *3 (S.D. Cal. Aug. 27, 2020) (finding search terms "likely to capture a large volume of email and other

With respect to Interrogatory No. 2, the Court finds that no further answer from Defendant is required. The interrogatory asks Defendant to "[s]tate all reasons for each change made, if any, to the content on all versions of the packaging and labels of SeroVital-hgh within the time period May 9, 2014 through the present." (Doc. 91-4 at 3.) After a series of boilerplate objections, Defendant responds that there were "approximately 48 packaging variations during the relevant period" and that

> variations in packaging were the result of many factors including capsule count, pricing variations, SKU changes, special packaging sold at specific retailers to distinguish that retailers [sic] product from the product sold at other retailers, emphasizing or de-emphasizing certain marketing messages to determine which message may or may not resonate with specific consumers at certain times, and testing marketing messages and packaging. At no time, however, was any change made as the result of a lawsuit, threatened lawsuit, regulatory challenge, or other legal or regulatory reason.

(Doc. 91-7 at 4–5.) Defendant clarifies in the parties' joint statement that its response identifies 48 changes to the Product packaging and labeling, together with "the specific reasons that apply to all of these changes." (*See* Doc. 91 at 43.)

Plaintiff contends that Defendant's response to Interrogatory No. 2 "utterly fails to address any changes in relation to the [P]roduct's efficacy and benefits" (Doc. 91 at 40), but he has not shown that Defendant made any changes to the Product's packaging and/or labeling for these reasons. In the absence of any indication that Defendant made any such changes, and in view of the verification, under penalty of perjury, by Defendant's Chief Executive Officer that its interrogatory answers are "true and correct" (Doc. 91-7 at 12), the Court cannot find any deficiency in Defendant's answer to Interrogatory No. 2.[6]

Because Plaintiff has not shown that he is entitled to further responses to Interrogatories No. 2 & 4 and RFPs No. 12 & 24, the motion to compel as to these requests will be denied.

**D.   Market Research Information (Plaintiff's Motion to Compel Further Responses to RFPs 41–42 & 45–46)**

---

[electronically stored information], much of it wholly irrelevant to the claims at issue" were "impermissibly overbroad.").

[6] Should Plaintiff learn during class certification discovery that Defendant's answer to Interrogatory No. 2 is incomplete, he may renew his request to compel at that time.

RFPs No. 41–42 and 45–46 seek Defendant's market research information for the Product, including consumer surveys, the "target market," and the intended "consumer demographic." (*See* Doc. 91-3 at 10.) Except for RFP No. 45, none of these requests is limited to the putative class period. Plaintiff makes a similar argument that he made with respect to Product advertising, packaging, and labeling: that the information is discoverable, regardless of whether it predates the class period, because it is "relevant to UCL and FAL claims," in that it "weigh[s] on Defendant's intent, motive, and knowledge." (Doc. 91 at 58.) As discussed above, whether the information is relevant to substantiate Plaintiff's claims is not the pertinent question at this time; the question instead is whether the information is relevant to substantiate Plaintiff's class certification allegations, and he has not made that showing.[7] Plaintiff's reliance on *Ang* and *Ogden* is again unavailing.

Plaintiff is entitled, however, to the discovery sought by RFP No. 45, which seeks documents pertaining to customer complaints about the Product made during the putative class period. (*See* Doc. 91-3 at 10.) Defendant objected that the request called for documents subject to the attorney-client and work product privileges, and it further responded that it would produce documents responsive to the request. (*See* 91-6 at 19–20.) Both parties agree that a privilege log is required but disagree on the timing of the log. Defendant states that although it has begun preparing a privilege log, such preparation is a "time consuming task," as Defendant has identified "more than 7000 documents as attorney-client communications (or potentially privileged communications)." (Doc. 91 at 61.) Plaintiff requests that the Court order production of Defendant's privilege log by a date certain. (*See id*. at 59.) Plaintiff's request is well-taken.

RFP No. 45 was propounded six months ago—more than enough time to not only begin, but to substantially complete, a privilege log of this size. Accordingly, Defendant will be required to provide a complete log of all documents responsive to RFP No. 45 but withheld on the basis of privilege within thirty (30) days of the date of this order. As Defendant indicates in

---

[7] Even if RFPs No. 41–42 & 46 were limited to the putative class, it appears from the parties' joint statement that Plaintiff's motion to compel further responses to these requests is moot. In it, Defendant indicates, and Plaintiff does not contest, that it has produced all non-privileged documents responsive to those requests. (*See* Doc. 91 at 60–61 ("Each of these responses already states that Defendant will produce responsive documents, which Defendant has informed Plaintiff that it has now done.").)

14

the parties' joint statement that it has produced all non-privileged documents that are responsive to RFP No. 45 (*see* Doc. 91 at 60–61), which Plaintiff does not contest, Plaintiff's motion to compel a further response to that request will be otherwise denied as moot.

**E.     Identification of Documents Produced in Response to all RFPs and to Interrogatory No. 10 (Plaintiff's Motion to Compel Further Responses to RFPs and Interrogatory No. 10) (Doc. 82))**

**1.     RFPs**

In response to Plaintiff's First Set of RFPs, Defendant produced approximately 730,000 pages without categorizing them by request. (*See* Doc. 91 at 12, 13.) Plaintiff claims that Defendant's production fails to comply with Federal Rule of Civil Procedure 34. (*Id.* at 13–15.) Defendant contends the parties had agreed that Defendant would not have to categorize the produced documents by request. (*Id.* at 21.)

Rule 34(b)(2)(E) governs the production of documents and electronically stored information:

> Unless *otherwise stipulated* or ordered by the court, these procedures apply to producing documents or electronically stored information: (i) A party must produce the documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]

Fed. R. Civ. P. 34(b)(2)(E)(i) & (ii) (emphasis added).

Here, the parties stipulated to a specific procedure for Defendant's production of documents, so the procedures set forth by Rule 34(b)(2)(E) do not apply. As memorialized in an email from Defendant's counsel to Plaintiff's counsel on July 17, 2020, the parties agreed that Defendant "do[es] not need to segregate the documents by request but will produce documents from the search for 'SeroVital' from the custodians" the parties had previously discussed. (*See* Doc. 91-9.)

The Court finds that Defendant produced the requested documents in accordance with the parties' agreement, and Defendant was thus not required to organize the documents by request. Plaintiff contends the agreement was merely "an agreement to a search protocol for document

production," not one relieving Defendant of its obligations under Rule 34(b)(2)(E). (Doc. 91 at 12.) But the July 17, 2020 email clearly states that Defendant would "not need to segregate the documents by request" (*see* Doc. 91-9), and Plaintiff offers no affidavit or other evidence supporting an objection to such an arrangement. Accordingly, Plaintiff's motion to compel Defendant to amend its responses to the First Set of RFPs will be denied.

### 2. Interrogatory No. 10

Lastly, Interrogatory No. 10 asks Defendant to "[i]dentify (by stating the title of the document, its author, its date, and if applicable, its Bates Number) all documents that relate or refer to the answers to Interrogatory Nos. 1–9." (*See* Doc. 91-4 at 4.) Interrogatories No. 1–9 seek information regarding: the means by which the Product was sold (No. 1); the labeling and packaging of the Product and persons involved with approving any changes thereto (Nos. 2–4); records-keeping systems for the sale and distribution of the Product (No. 5); formulations of the Product (No. 6); the identification of persons who assisted in the preparation of Defendant's discovery responses (No. 7); the number of units and dollar amount sold of the Product (No. 8); and the revenue, profits, margins, and costs associated with the Product (No. 9). (*See id.*)

In its amended response, Defendant generally objected to Interrogatory No. 10 as "vague, ambiguous, confusing, harassing, overbroad, overly burdensome, not proportional to the needs of this litigation, not relevant to any party's claims or defenses, and not reasonably calculated to lead to the discovery of admissible evidence."[8] (*See* Doc. 91-7 at 11.) In the parties' joint statement, Defendant explains its objections, contending that "all documents" that "relate to" Defendant's responses to the first nine interrogatories include arguably each of the 730,000 pages produced in the case, and reviewing and organizing the documents would thus be incredibly burdensome and expensive. (Doc. 91 at 22.) Defendant also asserts that requiring it to sort through the documents would render meaningless the parties' agreement that Defendant would not have to organize its documents. (*Id.*) Plaintiff requests that the Court overrule

---

[8] Again, the Court notes that Defendant's boilerplate objections are highly disfavored; discovery objections must be stated with specificity. *See DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

16

1  Defendant's objections and compel a further response to Interrogatory No. 10. (*Id.* at 13–20.)

2  First, to the extent that Plaintiff is requesting that Defendant be compelled in its response
3  to Interrogatory No. 10 to identify which documents "relate or refer to" each of Interrogatories
4  No. 1–9 separately, Interrogatory No. 10 does not seek that information. As currently worded, it
5  requests the identification of documents and does not require them to be categorized by
6  interrogatory.

7  In any event, Interrogatory No. 10 is overbroad and burdensome. "[A] discovery request
8  should be sufficiently definite and limited in scope[.]" *Goose Pond AG, Inc. v. Duarte Nursery,*
9  *Inc.*, No. 2:19-cv-2631-KJM-DB, 2020 WL 4607279, at *2 (E.D. Cal August 11, 2020) (quoting
10 *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008)). "[A] request or
11 interrogatory is overly broad or unduly burdensome on its face if it (1) uses an omnibus term
12 such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents
13 or a broad range of information." *Id.* (quoting *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan.
14 2006)). "The use of the words 'relating to' and 'referring to' [is] overly broad because [the
15 respondent] does not have reasonable notice of what is called for and what is not." *Lopez v.*
16 *Chertoff*, No. CV 07–1566–LEW, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009) (denying
17 the plaintiff's motion to compel where the requests for production sought all documents "relating
18 to" or "referring to" the plaintiff). *Accord Audiotext Communications v. U.S. Telecom, Inc.*,
19 Civ.A. No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. January 17, 1995) ("Requests which
20 are worded too broadly or are too all inclusive of a general topic function like a giant broom,
21 sweeping everything in their path, useful or not. They require the respondent either to guess or
22 move through mental gymnastics which are unreasonably time-consuming and burdensome to
23 determine which of many pieces of paper may conceivably contain some detail, either obvious or
24 hidden, within the scope of the request.").

25 Interrogatories No. 1–9 are directed at a broad range of information (*i.e.*, the Product's
26 channels of sale, formulations, packaging and labeling, quantity sold, profits and revenues, and
27 the identities of those involved with the preparation of Defendant's discovery responses), and
28 Interrogatory No. 10 seeks the identification by title, author, date, and Bates Number of "all

documents that relate or refer" to the answers to the preceding interrogatories. Given the scope of documents sought by Interrogatory No. 10 and its use of the omnibus terms "refer" and "relate"—the latter of which is defined as "to show or establish [a] logical or causal connection between," *Merriam-Webster Dictionary*, www.merriam-webster.com—Defendant's contention that all documents that relate or refer to Defendant's answers to Interrogatories No. 1–9 "are arguably every document produced in the case" (Doc. 91 at 22) has merit. Further, the Court finds it would be unduly burdensome to require Defendant to review and produce a log—by title, author, date, and Bates number—of the approximately 730,000 pages of documents it has produced in order to respond to the interrogatory. *Cf. Jadwin v. County of Kern*, No. 1:07-cv-0026-OWW-TAG, 2008 WL 3820288, at *3 (E.D. Cal. August 8, 2008) (finding that an interrogatory seeking the identification of "any and all" documents that the defendant contended was not a business record, and which would have required the defendant to review "tens of thousands of pages of documents" to prepare its response, was "oppressive and burdensome"). Moreover, as discussed in preceding sections (*see supra* Sections III.B & C), Plaintiff has not shown how the information sought by Interrogatory No. 10 is within the scope of class certification discovery. For example, of the first nine interrogatories, only Interrogatories No. 1 & 2 are limited to the putative class period. (*See* Doc. 91-4.) Therefore, Plaintiff's motion to compel a further response to Interrogatory No. 10 will be denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED as follows:

1. Defendant's motion for protective order seeking to limit Rule 30(b)(6) Deposition Topics No. 5–7 & 10–13 to the putative class period of May 9, 2014, to present (Doc. 83) is GRANTED;

2. Defendant's motion for protective order seeking to relieve it of its obligation pursuant to Rule 30(b)(6) to designate a witness to testify regarding Deposition Topic No. 22 (Doc. 84) is DENIED;

3. Plaintiff's motion to compel (Doc. 82) is GRANTED IN PART and DENIED IN PART, as follows:

|     |     |     |
| --- | --- | --- |
| 1 | (a) | Plaintiff's motion to compel responses to RFPs No. 36 & 37 is GRANTED; |
| 2 | (b) | Plaintiff's motion to compel further responses to RFPs No. 7–11, 14, & 16–23 is DENIED insofar as the requests seek information outside of the putative class period of May 9, 2014 to present; |
| 5 | (c) | Plaintiff's motion to compel further responses to Interrogatories No. 2 & 4 and RFPs No. 12 & 24 is DENIED; |
| 7 | (d) | Plaintiff's motion to compel further responses to RFPs No. 41–42 and 46 is DENIED; |
| 9 | (e) | Plaintiff's motion to compel further responses to RFP No. 45 is GRANTED insofar as it requests Defendant produce a privilege log for documents responsive to RFP No. 45 that have been withheld on the basis of privilege. Accordingly, by no later than thirty (30) days from the date of this order, Defendant SHALL provide Plaintiff a complete privilege log of these documents. Plaintiff's motion to compel further responses to RFP No. 45 is otherwise DENIED as MOOT; |
| 15 | (f) | Plaintiff's motion to compel Defendant to amend its responses to the First Set of RFPs is DENIED; and |
| 17 | (g) | Plaintiff's motion to compel a further response to Interrogatory No. 10 is DENIED. |

IT IS SO ORDERED.

Dated:   **October 15, 2020**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE