1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAUL PIZANA,                          No.  1:18-cv-00644-DAD-SKO

12              Plaintiff,

13        v.                               ORDER GRANTING PLAINTIFF'S MOTION
                                           TO MODIFY THE SCHEDULING ORDER
14   SANMEDICA INTERNATIONAL LLC,          AND FOR LEAVE TO FILE A THIRD
                                           AMENDED COMPLAINT
15              Defendant.
                                           (Doc. No. 118)
16

17

18        This matter is before the court on plaintiff Raul Pizana's motion to modify the scheduling

19   order and for leave to file a third amended complaint filed on December 23, 2020.[1]  (Doc. No.

20   118.)  Pursuant to General Order No. 617 addressing the public health emergency posed by the

21   COVID-19 pandemic, plaintiff's motion was taken under submission on the papers.  (Doc. No.

22   ───────────────────
     [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
23   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  While that situation was partially addressed by
24   the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December
     17, 2021, another vacancy on this court with only six authorized district judge positions was
25   created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over
     approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation
26   resulted in the court not being able to issue orders in submitted civil matters within an acceptable
     period of time and continues even now as the undersigned works through the predictable backlog.
27   This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the
     parties and their counsel.
28

1 128.)  For the reasons explained below, the court will grant plaintiff's pending motion.

2 **BACKGROUND**

3 **A.      Procedural Background**

4         Plaintiff filed this putative class action on May 9, 2018, challenging the advertising and

5 efficacy of SeroVital-hgh ("SeroVital"), a purported human growth hormone supplement

6 produced by defendant SanMedica International LLC ("SanMedica").  (Doc. No. 1 at ¶¶ 1–3.)

7 On June 30, 2018, plaintiff filed a first amended complaint as a matter of course (Doc. No. 13),

8 and defendant responded by filing a motion to dismiss.  (Doc. No. 25.)  The court denied

9 defendant's motion to dismiss, except with regard to one of plaintiff's claims that was dismissed

10 with leave to amend.  (Doc. No. 50.)  On November 13, 2019, plaintiff filed the operative second

11 amended complaint ("SAC"), alleging three causes of action under state law for violations of:  (1)

12 the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, *et seq.*); (2) the

13 California False Advertising Law ("FAL") (Cal. Bus. Prof. Code. § 17500, *et seq.*); and (3) the

14 California Unfair Competition Law ("UCL") (Cal. Bus. Prof. Code § 17200, *et seq.*).  (Doc. No.

15 53 at 20–24.)  On December 13, 2019, defendant answered the SAC.  (Doc. No. 60.)

16         On March 5, 2020, a scheduling conference was held, and the assigned magistrate judge

17 thereafter issued a scheduling order for class certification deadlines, including that "[a]ny motions

18 or stipulations requesting leave to amend the pleadings . . . be filed by no later than June 15,

19 2020."  (Doc. Nos. 73; 74 at 1.)  The scheduling order also provided that class certification

20 discovery was to be completed by no later than December 18, 2020, and that any motion for class

21 certification was to be filed by January 21, 2021.  (*Id.* at 2.)  That scheduling order did not set any

22 other discovery or motion filing deadlines.

23         Discovery commenced with plaintiff serving discovery requests on defendant on April 13,

24 2020, to which defendant responded by producing "a few thousand pages of documents" on July

25 13, 2020 and turning over "nearly one million pages in records" on August 13, 2020.  (Doc. No.

26 118 at 11.)  Depositions of the eight witnesses designated by defendant under Rule 30(b)(6) were

27 taken on September 8, 9, 10, and 14, 2020; November 12, 17, 18, and 19, 2020; and December 8,

28 /////

2

2020.[2]  (*Id.* at 12–13.)  The court observes that the discovery phase of this litigation has apparently been somewhat contentious with both sides filing several discovery-related motions.[3]

        In light of the information plaintiff learned during discovery, on December 23, 2020, plaintiff filed the pending motion to modify the scheduling order and for leave to file a third amended complaint.  (Doc. No. 118.)  Defendant filed an opposition to the pending motion on January 15, 2021, and plaintiff filed his reply thereto on January 29, 2021.  (Doc. Nos. 139, 144.)

**B.      Factual Background**

        In his pending motion, plaintiff contends that during the Rule 30(b)(6) depositions taken in September and November 2020, new facts arose that warrant an amendment to the pleadings in order to seek to add fifteen new defendants, new claims, new products, and eight new plaintiffs who allegedly purchased some of the new products.  (Doc. Nos. 118 at 12–13; 118-9 at 1.)  Specifically, plaintiff claims these new facts reveal that defendant is part of a web of affiliated entities and individuals operating a single enterprise (referred to by plaintiff as the "Basic Research Enterprise") with a unified aim to manufacture, market, and sell the same product under different brand names based on the same purportedly faulty science and false representations.[4]

---

[2]  Although plaintiff lists eight different witnesses designated under Rule 30(b)(6) in his pending motion, and has provided the deposition transcripts for those eight witnesses, he states in his pending motion—apparently by mistake—that defendant "designated seven (7) separate witnesses."  (Doc. Nos. 118 at 12; 118-3, 118-4, 118-5, 118-6, 118-7, 133, 134, 135.)

[3]  Plaintiff moved to compel seven hours of deposition time for each Rule 30(b)(6) witness (*see* Doc. Nos. 79, 80, 81) and responses to requests for production of documents, including in regard to identifying putative class members (*see* Doc. No. 82), and defendant moved for a protective order with regard to question topics for the Rule 30(b)(6) depositions and for designating a witness for identification of putative class members (*see* Doc. Nos. 83, 84).  The assigned magistrate judge issued an order addressing several of these motions on October 15, 2020.  (Doc. No. 97.)

[4]  On June 5, 2018, defendant filed a corporate disclosure statement in this action pursuant to Federal Rule of Civil Procedure 7.1, stating that Basic Research Intermediate, LLC was defendant's parent corporation and that Basic Research Holdings, LLC was defendant's grandparent corporation.  (Doc. No. 9.)  During one of the depositions in September 2020, plaintiff learned that Basic Research Intermediate, LLC sold defendant to another entity, BR Cos, LLC.  (Doc. No. 118 at 13–14.)  To date, defendant has not filed a supplemental corporate disclosure statement to reflect any changes to the identity of its parent corporation, as required by Rule 7.1(b)(2).

1 (Doc. Nos. 118 at 7–9; 144 at 6 n.1.)

2      In opposing the pending motion, defendant argues, among other things, that "much of the

3 information" in question was available to plaintiff and his counsel before this case was filed and

4 plaintiff could have learned of these purportedly "new" facts earlier from three other similar

5 lawsuits that plaintiff's counsel either knew about or were involved in.  (Doc. No. 139 at 5.)

6      In reply, plaintiff counters that it was not possible to infer the complicated web of entities

7 associated with defendant that was uncovered during the September and November 2020

8 depositions from the other lawsuits.  (Doc. No. 144 at 6.)

9      1.      Facts Purportedly First Discovered by Plaintiff During Rule 30(b)(6) Depositions

10     The new information that plaintiff claims he learned from the depositions of defendant's

11 Rule 30(b)(6) witnesses falls into two categories:  (i) facts about the alleged Basic Research

12 Enterprise's sprawling corporate structure; and (ii) facts about new products that are substantially

13 similar, if not identical to, SeroVital.  (Doc. No. 118 at 13–17.)  Plaintiff purportedly first learned

14 of this information during the depositions of defendant's corporate representatives:  Gina Daines,

15 Amy Heaton, Brokk Mowrey, Matthew Draper, Bradley Skinner, Jim Kreeck, Evan Strassberg,

16 and Alexis Timpson.  (*Id.* at 13.)

17     In regard to the first category of new information, plaintiff claims that he began to unravel

18 the corporate structure during the depositions when each of defendant's Rule 30(b)(6) witnesses

19 were asked which company they worked for, and their responses varied.  (*Id.* at 14–15.)  For

20 example, plaintiff maintains that several of the witnesses testified that they worked for affiliates

21 of defendant or merely, "Basic Research":  (i) Alexis Thomson (September 8, 2020) testified that

22 she worked for Basic Research; (ii) Jim Kreeck (September 14, 2020) testified that he worked for

23 Bydex Management, which was described as the "employee leasing company" that is located in

24 the same building as Basic Research; (iii) Brokk Mowrey (November 18, 2020) testified that he

25 worked for Bydex Management but was also director of operations at Basic Research; (iv) Amy

26 Heaton (November 17, 2020) testified that she worked for Bydex Management, which is "part of

27 the Basic Research family of companies," but was also the chief scientific officer of Basic

28 Research and its "R&D arm" (which is another entity called Sierra Research) and that she was

also the former director of scientific affairs at Limitless Worldwide, "another brand, similar to the other Basic Research family of brands for which Sierra [Research] develops products"; and (v) Brad Skinner (September 10, 2020) testified that he worked for Basic Research but was employed by Majestic Media. (*Id.* at 14–15.) These various different answers from the Rule 30(b)(6) witnesses indicated to plaintiff's counsel that the alleged Basic Research Enterprise had a complex corporate structure. (*Id.* at 15.) But it was not until the deposition of Gina Daines on November 19, 2020 that the scope of the alleged Basic Research Enterprise became fully known to plaintiff. (*Id.*)

In her deposition, Daines testified that the alleged Basic Research Enterprise is closely held by family members, including Daines and her siblings Bodee Gay, Haley Blackett, and Kimm Humphries, who acquired ownership in companies "affiliated with 'Basic Research'" after their father passed away in 2018. (*Id.*) Daines also testified that Mitchell K. Friedlander—one of the individuals that plaintiff now seeks to add as a named defendant in this action and the purported inventor of SeroVital—was involved in SeroVital's marketing, and that he too holds an ownership interest in the alleged Basic Research Enterprise. (*Id.*) Daines further testified as to the general corporate structure of the alleged Basic Research Enterprise, confirming that it is made up of one or more holding companies with numerous wholly-owned subsidiary affiliates, and that these entities are engaged in a unified business of developing, manufacturing, distributing, and selling dietary supplements. (*Id.* at 16.) Based on Daines' testimony, coupled with the information regarding other entities that plaintiff learned from the other depositions, plaintiff alleges that each of those entities are wholly-owned affiliates and subsidiaries of different holding companies that, like defendant SanMedica, perform a particular function within the alleged Basic Research Enterprise, and that all employees working for the affiliate entities perform work on behalf of the alleged Basic Research Enterprise. (*Id.* at 16–17.)

In regard to the second category of information revealed during depositions, plaintiff contends that he learned that two other products—GF-9 and Thrive—used the same science, substantiation, formulation, and manufacturing specifications as defendant's SeroVital, but were

/////

merely "branded under different names."[5]  (*Id.* at 15–16.)  Plaintiff further alleges that SeroVital and all its related products are not only identical, but also are manufactured by different entities within the alleged Basic Research Enterprise that operate out of the same principal place of business in Salt Lake City, Utah.  (*Id.* at 15–17.)

2.    Plaintiff's Proposed Additions to a Further Amended Complaint

Based on this allegedly new information obtained during the September and November 2020 depositions, plaintiff seeks leave to file a third amended complaint to add:  (i) ten entity defendants and five individual defendants ("proposed defendants");[6] (ii) a claim against defendant and the proposed defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), (d) and allegations in support thereof that defendant and the proposed defendants were alter egos of each other ("proposed claims"); (iii) allegations regarding three products (SeroDyne, Thrive, and GF-9) that are "substantially similar, if not identical, products to SeroVital" ("proposed products"), including allegations that the specific

---

[5]  Plaintiff also contends that SeroDyne—a third new product that plaintiff seeks to include in a third amended complaint—uses "the same oral amino acid complex that purportedly increases growth hormone[s] to provide anti-aging benefits."  (Doc. No. 118 at 16.)  Plaintiff's assertion appears to be based on information from the website for that SeroDyne product, not on information plaintiff learned during the Rule 30(b)(6) depositions.  However, the entity appearing to sell SeroDyne previously employed Heaton, one of defendant's Rule 30(b)(6) designated witnesses who, as noted, testified that she worked for the "Basic Research family of companies."  (*Id.* at 15–16)

[6]  Plaintiff seeks to add the following new entities as defendants in this action:  (1) Basic Research Holdings, LLC; (2) Basic Research Intermediate, LLC; and (3) BR Cos, LLC, (an alleged holding company for several affiliated subsidiaries); (4) Basic Research, LLC (the alleged sales and distribution department of the enterprise's products); (5) Sierra Research Group, LLC (the alleged research and development department for the enterprise); (6) Majestic Media, LLC (the alleged marketing and advertising department for the enterprise); (7) CRM Specialists, LLC (the alleged customer service and direct to customer sales department for the enterprise); (8) Limitless Worldwide, LLC (the alleged nominal manufacturer of SeroDyne and Thrive); (9) Novex Biotech, LLC (the alleged nominal manufacturer for GF-9); and (10) Bydex Management, LLC (the alleged human resources department and nominal "employer" of the individuals who work for the enterprise).  (Doc. Nos. 118 at 9; 118-9 at 1.)  Plaintiff also seeks to add the following individuals as defendants:  (1) Bodee Gay; (2) Gina Daines; (3) Haley Blackett; (4) Kim Humphries; and (5) Mitchell K. Friedlander.  (Doc. Nos. 118 at 9; 118-9 at 1.)  Plaintiff refers collectively to defendant and the proposed defendants as the "Basic Research Enterprise."  (Doc. No. 118 at 7.)

1  false and misleading representations about the proposed products also violate the same California

2  consumer protection statutes; and (iv) eight new plaintiffs who each purchased one or more of the

3  proposed products or SeroVital ("proposed plaintiffs").[7]  (Doc. No. 118 at 9–10, 17–18.)

4  Collectively, the newly proposed defendants, proposed claims, proposed products, and proposed

5  plaintiffs will be referred to herein as the "proposed amendments."

6                                              **LEGAL STANDARDS**

7            Once the district court has issued a pretrial scheduling order pursuant to Rule 16

8  establishing the time for any amendment to the pleadings, "a motion seeking to amend pleadings

9  is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson v. Laureate, Inc.*,

10  186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

11  604, 607–08 (9th Cir. 1992)).  Under Rule 16, the court will only modify a scheduling order upon

12  a showing of "good cause" by the moving party.  Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at

13  609.  "Unlike Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party

14  seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good

15  cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*,

16  975 F.2d at 609.  "Although the existence or degree of prejudice to the party opposing the

17  modification might supply additional reasons to deny a motion, the focus of the inquiry is upon

18  the moving party's reasons for seeking modification." *Id.*

19            "Only after the moving party has demonstrated diligence under Rule 16 does the court

20  apply the standard under Rule 15 to determine whether the amendment [is] proper." *Hood v.*

21  *Hartford Life & Accident Ins. Co.*, 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008).  Under Rule 15,

22  leave to amend pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).

23  Nevertheless, leave to amend need not be granted when the amendment:  (1) prejudices the

24  opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

25  futile.  *See AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)

26

27  ───────────────

[7]  Plaintiff seeks to add the following additional plaintiffs in this action:  (1) Maureen Hobbs; (2) Charles Berglund; (3) Jeanette Mills; (4) Erica Laroche; (5) Ann Marie Lynch; (6) Oskar Laffont;

28  (7) Sal Munoz; and (8) Keith Barnes.  (Doc. No. 118-9 at 1.)

1 | (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)).

2 | **ANALYSIS**

3 | **A.      Whether Good Cause Exists to Modify the Scheduling Order**

4 |         Courts adhere to a three-step inquiry in determining whether good cause under Rule 16

5 | has been satisfied:

6 |
7 |
8 |
9 |
10 |
11 |

> To demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following:  (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

12 | *Wake Forest Acquisitions, L.P. v. Vanderbilt Com. Lending, Inc.*, No. 2:15-cv-02167-KJM-DB,

13 | 2018 WL 1586362, at *3 (E.D. Cal. Apr. 2, 2018) (brackets omitted); *see also Grant v. United*

14 | *States*, No. 2:11-cv-00360-LKK-KJN, 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011), *report*

15 | *and recommendation adopted*, 2012 WL 218959 (E.D. Cal. Jan. 23, 2012); *Kuschner v.*

16 | *Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009).  "The decision to modify a

17 | scheduling order is within the broad discretion of the district court."  *FMC Corp. v. Vendo Co.*,

18 | 196 F. Supp. 2d 1023, 1030 (E.D. Cal. 2002).

19 |         1.      Diligence in Assisting the Court in Creating a Workable Rule 16 Order

20 |         Plaintiff's counsel in this case timely filed several joint scheduling reports and appeared at

21 | the scheduling conference on March 5, 2020.  (Doc. Nos. 45, 48, 54, 72.)  The assigned

22 | magistrate judge thereafter issued a Rule 16 scheduling order, setting a June 15, 2020 filing

23 | deadline for "[a]ny motions or stipulations requesting leave to amend the pleadings."  (Doc. No.

24 | 74).  Defendant has not argued that plaintiff was not diligent in assisting the court in this regard.

25 | Consideration of this factor therefore favors the granting of the pending motion.

26 | /////

27 | /////

28 | /////

2.        Development of Unforeseen Matters

Plaintiff must also show that his noncompliance with the June 15, 2020 deadline occurred because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference.  *Wake Forest*, 2018 WL 1586362, at *3.  Here, plaintiff filed the pending motion to amend the pleadings on December 23, 2020 (Doc. No. 118), which is approximately six months after the June 15, 2020 deadline, and over nine months after the March 5, 2020 scheduling conference held in this action.  (Doc. No. 74.)

Plaintiff argues that he "diligently sought discovery" and "diligently seeks to amend" his complaint.  (Doc. No. 118 at 20–22.)  Plaintiff maintains that he could not have complied with the June 2020 deadline to move to amend his complaint because defendant did not serve discovery responses or produce documents until July and August 2020, and defendant had not yet agreed on a schedule for taking depositions.  (*Id.* at 11, 20–22.)  Moreover, plaintiff argues that due to the slipshod nature of defendant's document production, he could not have discovered "Basic Research's illegal racket" until after deposing defendant's corporate representatives.  (*Id.* at 21.)  Although plaintiff initially noticed the depositions of defendant's Rule 30(b)(6) witnesses for June 2020, plaintiff commenced taking those depositions in September 2020, shortly after defendant's document productions.  (*Id.* at 11–13.)  To the extent there was any delay or lack of diligence in uncovering the new information, plaintiff argues that it is due to the defendant's "obstructionist tactics repeated throughout this litigation."  (*Id.* at 22.)  In any event, plaintiff contends that he diligently filed the pending motion on December 23, 2020 because it was not until the taking of depositions in November 2020—specifically, the Heaton, Daines, and Mowry depositions—that he could have known all the facts necessary to warrant seeking further leave to amend his complaint.  (*Id.* at 21.)  Based on the declaration of plaintiff's counsel filed in support of the pending motion and the deposition transcripts attached as exhibits thereto (*see id.* at 13–17), the court concludes that plaintiff has credibly shown that he discovered facts during those depositions that revealed the scope of defendant's corporate structure and that other products were likely identical to SeroVital, such that it became appropriate to seek further leave to amend to add new defendants and new claims based on this newly discovered information.

9

In its opposition to the pending motion, defendant principally argues that plaintiff's counsel knew or should have known the facts that were purportedly discovered during depositions "years in advance" because plaintiff's counsel was either directly involved in, or aware of, other litigation involving plaintiff, defendant, or one of the proposed defendants.  (Doc. No. 139 at 5–7, 12.)  Defendant's argument in this regard is not persuasive for several reasons.

First, defendant asserts that the allegedly "new" information underlying the proposed amendments was not unforeseen to plaintiff because his counsel had also represented the plaintiff in *Martin v. Sanmedica Int'l, LLC*, No. 2:16-cv-07794-ODW-JPR (C.D. Cal. Oct. 19, 2016), which action was based on "the same product" and "the same product packaging," and asserted the "same causes of action" premised on "identical allegations" as plaintiff's allegations brought in this case.  (Doc. No. 139 at 5–6.)  But defendant has not identified what information— specifically—it was that plaintiff's counsel would have known from the *Martin* litigation.  A review of the docket in *Martin* merely reveals the case was stayed by the court and then voluntarily dismissed by the plaintiff in 2017 after plaintiff's counsel let the deadline for the filing of a motion for class certification in that case lapse.  *See* Order at 2, *Martin*, No. 2:16-cv-07794-ODW-JPR, Doc. No. 59, (C.D. Cal. July 17, 2017).

Second, defendant contends that plaintiff should have known about two of the newly proposed defendants (Novex Biotech, LLC and Sierra Research, LLC) and one of the proposed products (GF-9) because two Ninth Circuit decisions issued in 2017 involved those proposed defendants and that proposed product, and purportedly addressed "the same fundamental allegations made in this case."  (Doc. No. 139 at 6) (citing *Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017); *Engel v. Novex Biotech, LLC*, 689 F. App'x 510 (9th Cir. 2017)).[8] However, both of the cases upon which defendant relies in this regard were dismissed at the pleadings stage, and plaintiff's counsel does not appear to have been involved in either case.  *See Kwan*, 854 F.3d at 1090; *Engel*, 689 F. App'x at 510.  Although one of the proposed defendants, Sierra Research, LLC, was a named defendant in *Kwan*, the parties had voluntarily dismissed

---

[8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  Sierra Research, LLC from that action, suggesting that it was *not* a proper defendant.  *See Kwan*,

2  854 F.3d at 1090.  In addition, although another one of plaintiff's newly proposed defendants

3  here, Novax Biotech, LLC, was a named as a defendant in *Engel* and the GF-9 product was at

4  issue in that case, the Ninth Circuit's summary decision affirming the district court's dismissal of

5  that action did not indicate that the GF-9 product had any connection to SeroVital or that Novax

6  Biotech, LLC had any connection with defendant SanMedica.  *See Engel*, 689 F. App'x at 510.

7  　　　　Third, defendant contends that plaintiff should have known about three of the newly

8  proposed defendants based on plaintiff's counsel relationship with their co-counsel, Shepherd,

9  Finkelman, Miller & Shaw, LLP ("SFMS Law"), in a different still ongoing case brought against

10  defendant, *Diebler v. SanMedica Int'l, LLC*, No. 1:9-cv-20155-NLH-MJS, (D.N.J. Nov. 13,

11  2019).  Specifically, defendant contends that because SFMS Law had allegedly sued Bydex

12  Management, LLC, Basic Research, LLC, and Mitchell K. Friedlander over a decade ago for

13  alleged RICO violations in *Miller v. Basic Rsch., Inc.*, No. 2:07-cv-00871-TS (D. Utah Nov. 9,

14  2007), plaintiff's counsel should have somehow already been aware of these three newly

15  proposed defendants.  (Doc. No. 139 at 8–9.)  However, defendant offers no explanation as to

16  how plaintiff's counsel would have been aware of those defendants from the *Miller* case,

17  especially given that a protective order had been issued in *Miller* preventing disclosure of

18  information and that action also concerned a different product than that at issue in this action.[9]

19  (Doc. Nos. 144 at 11; 144-2 at 2; 144-3 at 4–6.)

_____

[9]  Defendant also argues that because a Google search reveals that Mitchell K. Friedlander is listed on SeroVital's patent, and defendant disclosed Friedlander as a person involved in the content of SeroVital's packaging in response to an interrogatory, plaintiff should have known that Friedlander was involved long before the Rule 30(b)(6) depositions were taken in this action. (Doc. No. 139 at 7–8.)  But defendant has not explained how the mere disclosure of Friedlander would have revealed the extent of his purported involvement in the alleged Basic Research Enterprise such that plaintiff should have sought leave to add Friedlander as a defendant in this action much earlier than they did.  Even if plaintiff was aware of the existence of certain individuals, entities, or products from the disparate sources of information that defendant has referenced, the court is not convinced that plaintiff would have had sufficient information regarding the purported interconnectedness of them all to have alleged the facts underpinning all of his newly proposed amendments.  Critically, defendant has also failed to offer any reason why plaintiff should have known before the depositions in this case were taken that SeroVital and the proposed products share a formula.

Having considered the parties' arguments, the court is persuaded that plaintiff could not have reasonably foreseen the need for the proposed further amendment of the complaint prior to the June 15, 2020 deadline to amend the pleadings because plaintiff did not learn of the information underlying those proposed amendments until depositions taken in September and November 2020.  *See Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2019 WL 3892374, at *2 (E.D. Cal. Aug. 19, 2019) ("Courts in this circuit have recognized that a plaintiff has good cause to amend a complaint to add defendants if the identities of those defendants were unknown prior to discovery.").[10]

Accordingly, consideration of the second relevant factor also supports the granting of plaintiff's motion.

       3.      <u>Diligence In Seeking Amendment</u>

Lastly, plaintiff must show that he was diligent in seeking an amendment of the Rule 16 scheduling order once it became apparent that he could not comply with the deadlines established in that order.  *Wake Forest*, 2018 WL 1586362, at *3.  Here, plaintiff filed the pending motion on December 23, 2020, approximately three and a half months after the first deposition began on September 8, 2020 and approximately one month after the last deposition commenced on November 19, 2020, though some of those depositions were continued to November 30 and December 8, 2020.  (Doc. No. 118 at 1, 12–13.)  In other words, plaintiff filed the pending motion a few weeks after the last deposition leading to the discovery of the new information was concluded.

Under these circumstances, the court finds that plaintiff was diligent in filing the pending motion to amend the scheduling order and for leave to further amend his complaint.  Although some of the September 2020 deponents suggested that there were other corporate entities that

---

[10]  It is worth noting that the plaintiff in *Deibler* filed a motion for leave to amend the pleadings to add defendants and causes of action based on the information learned from these same depositions, and the district court granted that motion.  *See Diebler v. SanMedica Int'l, LLC*, No. 19-cv-20155-NLH-MJS, 2021 WL 5013617, at *3 (D.N.J. Oct. 28, 2021) ("On the record before it, the Court cannot find that Plaintiff was previously aware, or should have been aware, of facts sufficient to formulate and support the Proposed Amendments prior to the depositions in *Pizana*.").

might be relevant to this action, and plaintiff's counsel informed defendant's counsel on September 22, 2020 of plaintiff's intention to file a motion to amend the pleadings, it was not dilatory or unreasonable for plaintiff to wait to seek leave for such an amendment until after completing the remaining Rule 30(b)(6) depositions. *See Cervantes v. Zimmerman*, No. 3:17-cv-01230-BAS-NLS, 2019 WL 1129154, at *7 (S.D. Cal. Mar. 12, 2019) (collecting cases and noting that it can "be reasonable for a plaintiff to delay seeking an amendment [to the scheduling order] to place newly discovered information into context"); *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 216–17 (N.D. Cal. 2015) (finding good cause to allow amending the scheduling order to permit the filing of a supplemental complaint even when plaintiffs "spent several months gathering [new and pertinent] information"); *cf. DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 & n.4 (9th Cir. 1987) (finding no "undue delay" or "bad faith" under Rule 15(a) when the plaintiff "waited [to move to amend] until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct" and noting an attorney's duty to investigate under Rule 11 before asserting legal claims).

For instance, when the Draper deposition revealed on September 9, 2020 that the defendant had a new parent corporation that had acquired interests in defendant and "various entities," there were still six more scheduled Rule 30(b)(6) depositions to be conducted. (Doc. No. 118 at 13.) Indeed, the subsequent depositions revealed additional context relevant to plaintiff's proposed amendments. It was not until the deposition of Daines on November 19 and 30, 2020 that the general corporate structure of the alleged Basic Research Enterprise was confirmed and the individual family-member-owners were identified. (*Id.* at 15–16.) Moreover, it was at the Heaton and Mowrey depositions on November 17 and 18, 2020, respectively, that plaintiff learned that SeroVital shared the same formula as two of the products which plaintiff seeks to identify in a third amended complaint. (*Id.*) Given that plaintiff filed a motion to compel further time to depose Daines on December 2, 2020, and plaintiff's counsel was not retained to represent the proposed plaintiffs until on or after December 16, 2020, plaintiff acted diligently in filing the pending motion a few months after the depositions commenced and a few weeks after being retained by the newly proposed plaintiffs. (*Id.* at 13; Doc. No. 111); *cf. Zivkovic v. S. Cal. Edison*

13

1   *Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming the district court's finding that a four-month

2   delay in seeking amendment of a scheduling order was too long to establish "good cause" under

3   Rule 16(b)).

4        Moreover, although the pending motion was filed five days after the close of class

5   certification discovery, courts routinely find good cause when a movant shows that facts

6   supporting new amendments were revealed for the first time in discovery.  *See, e.g.*, *U.S. Equal*

7   *Emp. Opportunity Comm'n v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1102 (S.D.

8   Cal. 2020) (finding good cause to amend the scheduling order eight months after the deadline for

9   amendments where the new information was uncovered through depositions and admissions in

10   August, November, and December and the moving party informed the opposing party of its intent

11   to amend the complaint in December and January before moving to amend in February); *Circus*

12   *Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1279 (D. Nev. 2021) (finding

13   good cause to amend the complaint after the deadline set in a scheduling order because the

14   "critical" and "behind-the-scenes" facts that justified the proposed amendment could not have

15   been known until discovery responses were served, which occurred after the scheduling order's

16   deadline to amend the complaint).  Thus, due to the number of depositions and manner in which

17   the factual information supporting the proposed amendments unfolded over several depositions

18   taken in September and November 2020, plaintiff acted with sufficient diligence in seeking

19   amendment by filing its pending motion on December 23, 2020.  Accordingly, consideration of

20   this third and final relevant factor supports the granting of plaintiff's motion.

21        In sum, the court finds that plaintiff has established good cause to amend the scheduling

22   order and to extend the deadline for filing motions requesting leave to amend the pleadings.  *See*

23   *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. 2:05-cv-00583-LKK-GGH, 2006 WL

24   3733815, at *5 (E.D. Cal. Dec. 15, 2006) (collecting cases) ("Allowing parties to amend [the

25   scheduling order] based on information obtained through discovery is common and well

26   established.").

27   /////

28   /////

14

1  **B.**    **Whether Leave to Amend Should Be Granted**

2      Because plaintiff has established good cause to modify the scheduling order to extend the

3  deadline to request leave to amend the pleadings, the court now turns to application of the Rule

4  15(a) standard in determining whether leave to amend should be granted here.

5      "In general, a court should liberally allow a party to amend its pleading." *Sonoma Cnty.*

6  *Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). "This liberality in

7  granting leave to amend is not dependent on whether the amendment will add causes of action or

8  parties." *DCD Programs*, 833 F.2d at 186. Instead, "[c]ourts may decline to grant leave to

9  amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of

10  the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

11  prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

12  amendment, etc.'" *Sonoma Cnty.*, 708 F.3d at 1117 (quoting *Foman v. Davis*, 371 U.S. 178, 182

13  (1962)). "[I]t is the consideration of prejudice to the opposing party that carries the greatest

14  weight . . . . Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there

15  exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC*

16  *v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing leave to amend bears

17  the burden of showing prejudice," *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1041 (E.D. Cal. 2010),

18  "futility, or one of the other permissible reasons for denying a motion to amend." *Cervantes*,

19  2019 WL 1129154, at *13; *see also Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31

20  (N.D. Cal. 1989) ("[S]ince Rule 15 favors a liberal policy towards amendment, the nonmoving

21  party bears the burden of demonstrating why leave to amend should not be granted.").

22      1.    Undue Delay

23      As discussed above in the Rule 16 analysis, plaintiff was not aware and did not have

24  reason to know of the facts underlying the proposed amendments before taking the September

25  and November 2020 depositions. Thus, plaintiff was diligent in seeking leave to amend once the

26  factual bases for the proposed amendments were uncovered. Moreover, as plaintiff points out, the

27  scheduling order in this case was issued on March 5, 2020 (Doc. No. 74), mere weeks before the

28  COVID-19 pandemic swept this nation. (Doc. No. 118 at 19–21.) According to plaintiff, he

1  nevertheless, despite delays by defendant, diligently pursued written and oral discovery in the

2  months following issuance of the scheduling order.  (Doc. No. 118-1 at ¶ 3.)

3        In any event, the court cannot find that plaintiff acted with undue delay in pursuing

4  discovery that led to uncovering the new facts upon which the proposed amendments are based or

5  in filing the pending motion.  *Cf. Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (finding

6  that undue delay warranted denial of leave to amend that plaintiff requested after summary

7  judgment because plaintiff had known of the grounds for the amendment since the

8  commencement of litigation years prior and had previously been given two opportunities to

9  address the defect).  Therefore, consideration of this factor does not weigh against granting leave

10 to amend.

11       2.     Bad Faith

12       Defendant dedicates one paragraph of its opposition to arguing that plaintiff's bad faith is

13 evident from the fact that plaintiff filed the pending motion shortly "before Christmas and just

14 before the class certification deadline to do so."  (Doc. No. 139 at 21.)  However, defendant does

15 not point to any "evidence in the record which would indicate a wrongful motive" by plaintiff in

16 seeking the proposed amendment.  *DCD Programs*, 833 F.2d at 187.  Absent any wrongful

17 motive, merely filing the pending motion close to a holiday or as a litigation deadline approached

18 does not amount to evidence of bad faith.  Thus, consideration of this factor does not weigh

19 against granting leave to amend.

20       3.     Previous Amendments

21       Plaintiff seeks leave to file a third amended complaint.  (Doc. No. 118 at 27.)  Plaintiff

22 filed his first amended complaint as a matter of course and his SAC after the court granted

23 defendant's motion to dismiss with leave to amend so that plaintiff could add allegations

24 pertaining to certain notice requirements.  (Doc. Nos. 13, 53.)  Thereafter, defendant answered the

25 SAC.  (Doc. No. 60.)  Plaintiff's proposed amendments are unrelated to plaintiff's two previous

26 amendments, and there has been no history of repeated failures to cure pleading deficiencies in

27 this case.  Thus, consideration of this factor does not weigh against granting leave to amend.

28 /////

16

1          4.        Undue Prejudice

2          "Prejudice is the 'touchstone of the inquiry under rule 15(a).'"  *Eminence*, 316 F.3d at

3  1052.  "'Undue prejudice' means substantial prejudice or substantial negative effect."  *SAES*

4  *Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002).  "[T]he Ninth

5  Circuit has found such substantial prejudice where the claims sought to be added 'would have

6  greatly altered the nature of the litigation and would have required defendants to have undertaken,

7  at a late hour, an entirely new course of defense.'"  *Id.* (quoting *Morongo Band of Mission*

8  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).  "Prejudice is generally mitigated where

9  the case is still in the discovery stage, no trial date is pending and no pretrial conference has

10  occurred."  *Calderon v. Tulare Reg'l Med. Ctr.*, No. 1:17-cv-0040-BAM, 2018 WL 4473626, at

11  *5 (E.D. Cal. Sept. 17, 2018) (citing *DCD Programs*, 833 F.2d at 187–88).

12          In its opposition to the pending motion, defendant does not cite any case authority or

13  evidence to support its arguments regarding undue prejudice, despite it bearing the burden to

14  establish the undue prejudice it would suffer from the proposed amendments.  Defendant argues

15  that it will be prejudiced because it will have to conduct additional discovery, duplicate its

16  document production and privilege log efforts, and "essentially relitigate the entire case,"

17  resulting in increased expenses to defendant.  (Doc. No. 139 at 21.)  However, other than vaguely

18  asserting in conclusory fashion that its "expenses will greatly increase" if the court allows the

19  proposed amendments and hits the "reset" button on this litigation, defendant has not explained

20  nor shown how the proposed amendments would necessitate duplication of its discovery efforts

21  undertaken thus far.  (*Id.*)  Moreover, as plaintiff contends and a review of the proposed third

22  amended complaint suggests, there appears to be significant overlap among the proposed

23  amendments that may reduce the time and expense needed with respect to conducting additional

24  discovery.  (Doc. Nos. 144 at 13–14; *see, e.g.*, 118-9 at ¶¶ 74, 86, 88, 92, 96.)  For example,

25  seven of the proposed defendants plus defendant SanMedica, are subsidiary entities that all share

26  the exact same corporate address in Salt Lake City, Utah (Doc. No. 118-8), and plaintiff asserts

27  that he "would not need additional discovery on the formula, substantiation, or purported efficacy

28  of the [proposed] products" if he obtains "an admission from Defendant that they are the same as

17

1    that of SeroVital." (Doc. Nos. 144 at 14; 118 at 26.)

2          Defendant also argues that allowing the proposed amendments would result in the newly

3    proposed plaintiffs receiving "nearly three years added on to their limitations period" as opposed

4    to the case if they were required to pursue their claims on their own. (Doc. No. 139 at 21–22.)

5    Though not entirely clear, defendant's undeveloped assertion that it would suffer "substantial

6    prejudice" if the proposed plaintiffs receive an extended limitations period on their claims rings

7    hollow. In making this assertion, defendant ignores the fact that Rule 15(c) provides for relation

8    back of amendments and the sort of extension of the limitations period that defendant now

9    apparently protests. Under relation-back principles, where there is an "identity of interests"

10   between a plaintiff and proposed additional plaintiffs, "relation back of the amendment is not

11   prejudicial to the defendant." *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir.

12   1982) (finding substitution of plaintiffs not prejudicial when plaintiff "took more than six months

13   to discover the proper party plaintiff and discovery had commenced"). Though Rule 15(c) is not

14   at issue in the pending motion, defendant's assertion of prejudice from an extended limitations

15   period is simply not persuasive against that backdrop.

16         Defendant also argues that it would be prejudiced if it had to oppose class certification as

17   to class representatives other than plaintiff because of the "specific challenges [plaintiff] will face

18   as class representative." (Doc. No. 139 at 21–22.) This argument also lacks merit because (i)

19   defendant cites no legal authority in support of its argument, and (ii) even assuming that plaintiff

20   were to be deemed an inadequate class representative—which is an inquiry reserved for a motion

21   for class certification—courts often allow counsel seeking to represent a putative class to identify

22   a new class representative before a certification order is issued when the original class

23   representative is deemed inadequate to represent the class. *See, e.g.*, *Woods v. Google LLC*, No.

24   11-cv-01263-EJD, 2018 WL 4030570, at *10 (N.D. Cal. Aug. 23, 2018) (granting leave to amend

25   after scheduling order deadline for amendment to substitute newly named plaintiff and noting that

26   "[a]n additional round of class certification [would] not be overly burdensome").

27   /////

28   /////

18

At bottom, the court concludes that defendant has failed to meet its burden of showing that it would suffer "substantial prejudice" or a "substantial negative effect" if further leave to amend were to be granted.  Since the pending motion was filed, no other meaningful activity has occurred in this case, aside from the resolution of some outstanding discovery disputes.  (*See* Doc. No. 137, 145, 154.)  There is no scheduling order in effect, no pending dispositive motions,[11] no pending trial date, no final pretrial conference has been held (or ever been scheduled), no other discovery appears to have occurred since the September and November 2020 depositions, and the scheduled settlement conference was vacated due to the pending motion which is the subject of this order.  (Doc. No. 160)  The threshold procedural issue of class certification has not yet been addressed, and there has not been any formal discovery scheduled on topics pertaining to the merits of plaintiff's claims.  In short and for better or for worse, this case remains in its beginning phases.  Even though additional class certification discovery will likely be necessary due to the proposed amendments and the deadline for such discovery will need to be extended, plaintiff's representation that he discovered this new information as a result of the September and November 2020 depositions is credible and there does not appear to have been a more efficient way for plaintiff to have raised the proposed amendments.  *See Genentech*, 127 F.R.D. at 531 (finding that there was no undue prejudice when plaintiff sought amendments that would have required that defendant "depose numerous witnesses across the country who have been previously questioned," "necessitate[d] additional document searches and written discovery," and would "postpone the trial date" because plaintiff credibly showed that the facts on which the amendments were based "came to light only after the original complaint was filed and during the course of discovery").  Thus, consideration of this factor does not weigh against granting leave to amend.

    5.    Futility

    In determining futility, "[a] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim." *Barrett v. Apple Inc.*, 523 F.

---

[11]  Defendant had filed a motion for summary judgment on December 18, 2020 (Doc. No. 117), but it was withdrawn on February 1, 2021 (Doc. No. 147).

1  Supp. 3d 1132, 1149 (N.D. Cal. 2021).  However, "[l]eave to amend is warranted if the

2  deficiencies can be cured with additional allegations that are 'consistent with the challenged

3  pleading' and that do not contradict the allegations in the original complaint."  *United States v.*

4  *Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901

5  F.2d 696, 701 (9th Cir. 1988) (noting that it is improper to deny leave to amend when the court

6  can "conceive of facts" that would render plaintiff's claim viable).

7       In its opposition to the pending motion, defendant contends that granting plaintiff further

8  leave to amend would be futile because:  the proposed third amended complaint ("TAC") does

9  not allege sufficient facts demonstrating that there is personal jurisdiction over some of the

10  proposed defendants; the proposed plaintiffs lack standing to sue a proposed defendant for some

11  of the proposed products; and the allegations in the proposed TAC are insufficient to plausibly

12  state the proposed claims.  (Doc. No. 139 at 17–19.)  In reply, plaintiff counters that the proposed

13  plaintiffs have standing to sue for the proposed products under the "substantial similarity

14  doctrine" and the proposed TAC sufficiently alleges personal jurisdiction and is sufficient to state

15  the proposed claims.  (Doc. No. 144 at 18–19.)  The court will address each of defendant's futility

16  arguments below.

17            a.    *Personal Jurisdiction*

18       Defendant's attempt to object to personal jurisdiction on behalf of the proposed

19  defendants is unavailing.  (Doc. No. 139 at 17–18.)

20       In contrast to subject matter jurisdiction, "[t]he personal jurisdiction requirement

21  recognizes and protects an individual liberty interest.  It represents a restriction on judicial power

22  not as a matter of sovereignty, but as a matter of individual liberty."  *Ins. Corp. of Ireland v.*

23  *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  Like other individual rights,

24  personal jurisdiction can be waived, and a "variety of legal arrangements have been taken to

25  represent express or implied consent to the personal jurisdiction of the court."  *Id.*  However,

26  because personal jurisdiction is only "waivable by the affected parties . . . [it] cannot be raised on

27  their behalf by anyone else."  *Jenkins v. Smead Mfg. Co.*, No. 3:09-cv-00261-IEG BLM, 2009

28  WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (collecting cases); *Caballero v. Fuerzas Armadas*

1    *Revolucionarias de Colombia*, No. 2:20-cv-07602-JWH, 2021 WL 6135758, at *6 (C.D. Cal.

2    Dec. 29, 2021) ("[D]istrict courts in this circuit and elsewhere have held that objections to

3    personal jurisdiction can be raised only by the individual defendant who is protected by that

4    right.").  In this regard, none of the proposed defendants are currently named in this action, nor is

5    it apparent that defendant's counsel even represents those proposed new defendants.  As such,

6    defendant cannot raise an objection based on personal jurisdiction on behalf of the proposed

7    defendants.  Thus, the proposed amendment is not futile due to any alleged lack of personal

8    jurisdiction.

9                         b.      *Standing*

10           Defendant cursorily argues that allowing the proposed amendments would be futile

11   because none of the proposed plaintiffs ever purchased two of the proposed products, Thrive and

12   SeroDyne, which are allegedly manufactured by proposed defendant Limitless Worldwide, LLC,

13   and thus the proposed plaintiffs lack standing to sue proposed defendant Limitless Worldwide,

14   LLC or its corporate parents.  (Doc. No. 139 at 18.)  However, in the Ninth Circuit, "the question

15   whether [named class representatives] may be allowed to present claims on behalf of others who

16   have similar, but not identical, interests depends not on standing, but on an assessment of

17   typicality and adequacy of representation." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir.

18   2015).  As such, "any issues regarding the relationship between the class representative and the

19   passive class members—such as dissimilarity in injuries suffered—are relevant only to class

20   certification, not to standing." *Id.*; *see also Kirola v. City & Cnty. of San Francisco*, 860 F.3d

21   1164, 1176 (9th Cir. 2017) (finding it appropriate, under the class certification approach, to

22   certify a class of individuals with mobility disabilities who were denied access to city facilities,

23   regardless of whether the named plaintiff had personally attempted to visit all the facilities);

24   *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("The majority of

25   the courts that have carefully analyzed the question hold that a plaintiff may have standing to

26   assert claims for unnamed class members based on products he or she did not purchase so long as

27   the products and alleged misrepresentations are substantially similar.").

28   /////

21

Notably, defendant does not challenge whether the proposed plaintiffs have individual standing to bring their claims for purchasing either SeroVital or the other proposed product, GF-9.  That is the correct inquiry under Ninth Circuit law.  *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) ("[W]hen we measure a plaintiff's standing, regardless of whether the plaintiff sues individually or as class representative, we look concretely at the facts that pertain to that plaintiff.").  Whether plaintiff or any of the proposed plaintiffs can be "allowed to present claims on behalf of others who have similar, but not identical, interests"—specifically, the interests of unnamed individuals who purchased proposed products Thrive and SeroDyne from proposed defendant Limitless Worldwide, LLC—is a question "relevant only to class certification, not to standing."  *Melendres*, 784 F.3d at 1262; *see also Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) (finding that the named plaintiff's ability to represent purchasers of a related line of dietary supplements not purchased by the named plaintiff to be analyzed under Rule 23).  Defendant's "standing" objection merely raises an issue to be considered, if at all, in connection with a motion for class certification; it does not demonstrate the futility of allowing the proposed amendments.

c.     *Alter Ego Allegations*

In the proposed TAC, plaintiff includes a paragraph alleging that defendant and all proposed defendants are liable for violations of the CLRA, FAL, and UCL based on an alter ego theory of liability, in that "each Defendant was the alter ego of each other Defendant."  (Doc. No. 118-9 at ¶ 197.)

Under California's choice-of-law rules,[12] the court begins with California law in conducting the alter ego analysis because no party has invoked the law of a foreign state.  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) ("By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims."), *disapproved of on other*

---

[12]  "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

1   *ground by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, ___ F.4th ___, No.

2   19-56514, 2022 WL 1053459 (9th Cir. Apr. 8, 2022).  California law provides that to determine

3   whether a limited liability company is liable under the alter ego theory, courts apply the

4   substantive law of the state where the limited liability company is formed.  *MacRae v. HCR*

5   *Manor Care Servs., LLC*, No. 8:14-cv-140715-DOC-RNB, 2017 WL 11480091, at *3 (C.D. Cal.

6   Sept. 14, 2017) (collecting cases) (citing Cal. Corp. Code § 17708.01(a)).

7         Here, three of the proposed defendants are alleged to be Delaware limited liability

8   companies—Basic Research Holdings, LLC; Basic Research Intermediate, LLC; and BR Cos,

9   LLC (collectively, "Delaware defendants")—whereas defendant SanMedica and the remaining

10   proposed entity defendants are alleged to be Utah limited liability companies—Basic Research,

11   LLC; Sierra Research Group, LLC; Majestic Media, LLC; CRM Specialists, LLC; Bydex

12   Management, LLC; Limitless Worldwide, LLC; Novex Biotech, LLC; and defendant SanMedica

13   International, LLC (collectively, "Utah defendants").  (Doc. No. 118-9 at ¶ 33.)  Thus, although

14   plaintiff relied on California's substantive law to support his alter ego allegations (Doc. No. 144

15   at 19), California law does not apply.  Delaware's substantive law on alter ego liability applies to

16   the Delaware defendants and Utah's substantive law on alter ego liability applies to the Utah

17   defendants.  The court now turns to consider whether plaintiff's alter ego allegations may suffice

18   to state a claim under the applicable substantive law.[13]

19         Under Utah law, an entity's form may be disregarded when (1) there is a "unity of interest

20   and ownership that the separate personalities of the corporation and the individual no longer

21   exist," and (2) "the observance of the corporate form would sanction a fraud, promote injustice,

22   or an inequitable result would follow."  *Celtig, LLC v. Patey*, No. 2:17-cv-01086, 2019 WL

---

[13]  The court recognizes that there is some disagreement among district courts in the Ninth Circuit
as to whether Rule 9(b)'s heightened pleading standard applies to pleading alter ego liability.  *See*
*Wimbledon Fund, SPC v. Graybox, LLC*, No. 15-cv-6633-CAS-AJW, 2016 WL 7444709, at *5
(C.D. Cal. Aug. 31, 2016) (analyzing the split of authority among district courts in the Ninth
Circuit over the correct pleading standard applicable to alter ego liability and noting that the
majority of courts apply a heightened pleading standard).  This court need not decide whether a
heightened pleading standard applies here because regardless of which pleading standard is
applied, the court concludes that plaintiff has not adequately stated a claim for alter ego liability
in the proposed third amended complaint.

1    4779285, at *5 (D. Utah Sept. 30, 2019) (quoting *Norman v. Murray First Thrift & Loan Co.*, 596

2    P.2d 1028, 1030 (Utah 1979)); *see also Eskelsen v. Theta Inv. Co.*, 437 P.3d 1274, 1283 n.6 (Utah

3    Ct. App. 2019) ("We note that while most of these factors apply to traditional corporations, the

4    alter ego doctrine applies equally to Utah limited liability companies, though there is little case

5    law developing this area of law."); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1335 (D.

6    Utah 1997) (applying Utah's corporate veil piercing doctrine to an LLC).  "Under this test, 'there

7    is no single factor that alone justifies piercing the corporate veil' and 'a careful review of the

8    entire relationship between various corporate entities and their directors and officers' is the

9    overarching inquiry."  *Id.*  In evaluating the first prong, Utah courts look to the following seven

10   factors "that bear on the unity of interest and ownership analysis":  "(1) undercapitalization of a

11   one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends;

12   (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other

13   officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade

14   for operations of the dominant stockholder or stockholders[.]"  *Celtig*, 2019 WL 4779285, at *6

15   (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)).  Under the second prong,

16   which is referred to as the "fairness requirement," "[i]t is not necessary that the plaintiff prove

17   actual fraud, but must only show that failure to pierce the corporate veil would result in an

18   injustice."  *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635–36 (Utah 2012) (citations

19   omitted).

20           Under Delaware law, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts

21   supporting an inference that the corporation, through its alter-ego, has created a sham entity

22   designed to defraud investors and creditors."  *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del.

23   2003).  Moreover, Delaware's veil-piercing principles "are generally applicable . . . where one of

24   the entities in question is an LLC rather than a corporation."  *NetJets Aviation, Inc. v. LHC*

25   *Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (applying legal standard for piercing corporate

26   veil to an LLC under Delaware law, and noting that one difference is that "[i]n the alter-ego

27   analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal

28   formalities because fewer such formalities are legally required").  In analyzing alter ego

24

1   allegations under Delaware law, courts consider five of the same seven factors that are analyzed

2   under Utah law.  *Compare Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del.

3   Ch. 2021) (stating the five factors reviewed by Delaware courts) *with Celtig*, 2019 WL 4779285,

4   at *6 (stating the seven factors reviewed by Utah courts).  In addition, "Delaware public policy

5   disfavors disregarding the separate legal existence of business entities," *Manichaean*, 251 A.3d at

6   706, thus "a plaintiff must do more than show that one corporation is an alter ego of another in a

7   conclusory fashion in order for the court to disregard their separate legal existence."  *In re Draw*

8   *Another Circle.*, 602 B.R. 878, 905 (Bankr. D. Del. 2019).  Though not specifically invoking

9   either Utah or Delaware law, plaintiff argues that his allegations of alter ego in the prosed third

10  amended complaint are sufficient to state a claim because "[t]he TAC specifically alleges how the

11  Basic Research Enterprise consists of numerous phony companies, none of which are separate

12  legal entities, but instead are wholly owned, controlled, and operated by the same group of

13  individuals who share family ties," and the proposed TAC alleges that "if each Defendant's

14  separate legal existence were not disregarded for purposes of assessing liability for the wrongful

15  conduct herein allege, it would result in an injustice."  (Doc. No. 144 at 19).  The court is

16  unpersuaded by this argument.

17      Plaintiff's allegations attempt to round up fifteen proposed defendants in a conclusory,

18  one-size-fits-all fashion by alleging that all of the proposed defendants were alter egos of each

19  other at all relevant times.  (*See* Doc. No. 118-9 at ¶ 197.)  Indeed, the allegations of the proposed

20  TAC does not delineate whatsoever between the fifteen different proposed defendants; plaintiff

21  essentially alleges that everyone did everything in a conclusory manner, without any supporting

22  factual allegations.  Such conclusory allegations are insufficient to provide notice to defendant of

23  the grounds on which the alter ego claims are based.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

24  544, 556 n.3 (2007) ("Without some factual allegation in the complaint, it is hard to see how a

25  claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the

26  claim, but also 'grounds' on which the claim rests.").  At most, paragraphs 5 and 33 of the

27  proposed TAC allege some factual support as to just one of the factors that courts consider—"the

28  use of the corporation as a façade for operations of the dominant stockholder or stockholders"—

1   because plaintiff alleges the roles each newly proposed defendant is responsible for within the

2   alleged Basic Research Enterprise and that different entities are controlled and operated by the

3   five proposed individual defendants.  (Doc. No. 118-9 at ¶¶ 5, 33.)  However, there is a dearth of

4   alleged facts addressing any of the remaining factors that courts are to consider in determining

5   alter ego liability under either Utah or Delaware law.  Moreover, as to the fairness requirement

6   under Utah law, plaintiff merely alleges in conclusory fashion that failing to disregard the Utah

7   defendants' entity status "would result in an injustice."  (Doc. No. 118-9 at ¶ 197.)

8          Accordingly, the court concludes that the allegations of plaintiff's proposed third amended

9   complaint are insufficient to state a plausible claim for alter ego liability under either Utah or

10   Delaware law.  Nevertheless, the court concludes that granting plaintiff leave to amend to include

11   the proposed allegations of alter ego liability would not be futile.  Even though the alter ego

12   allegations may not survive under a Rule 12(b)(6) challenge, the granting of leave to amend is

13   still warranted because in this case the court can "conceive of additional facts, if formally

14   alleged," that would support a claim for alter ego liability.  *Corinthian Colls.*, 655 F.3d at 995.

15               d.      *RICO Claim*

16          To state a civil RICO claim, "a plaintiff must allege (1) conduct (2) of an enterprise (3)

17   through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the

18   plaintiff's 'business or property.'"  *Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020).

19   "Racketeering activity . . . requires predicate acts," which can include "mail and wire fraud

20   under 18 U.S.C. §§ 1341 and 1343."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751

21   F.3d 990, 997 (9th Cir. 2014); *see also* 18 U.S.C. § 1961(1)(B) (stating that "racketeering

22   activity" includes both mail fraud and wire fraud).  "The mail and wire fraud statutes are identical

23   except for the particular method used to disseminate the fraud, and contain three elements:  (A)

24   the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that

25   scheme, and (C) the specific intent to defraud."  *Eclectic Props.*, 751 F.3d at 997.

26          "Where, as here, the racketeering activity alleged is fraud, including mail fraud and wire

27   fraud, the heightened pleading requirements of Rule 9(b) apply to the predicate acts."  *Shaw v.

28   Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (internal citations omitted).  "In

1   the RICO context, a Plaintiff must 'detail with particularity the time, place, and manner of each

2   act of fraud, plus the role of each defendant in each scheme.'" *Id.* (quoting *Lancaster Cmty.*

3   *Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).  "While plaintiffs must

4   plead the factual circumstances of fraud itself with particularity, they may allege specific intent to

5   defraud through general allegations." *Comm. To Protect our Agric. Water v. Occidental Oil &*

6   *Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017).  Moreover, "[t]he intent to defraud may

7   be inferred from a defendant's statements and conduct." *Eclectic Props.*, 751 F.3d at 997

8   (quoting *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992)).  "In the absence of direct

9   evidence of intent, the party asserting fraud must first [allege and ultimately] prove 'the existence

10   of a scheme which was reasonably calculated to deceive persons of ordinary prudence and

11   comprehension,' and then, 'by examining the scheme itself' the court may infer a defendant's

12   specific intent to defraud." *Id.* (quoting *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.

13   1984)).

14         In opposing the pending motion, defendant contends that granting plaintiff leave to amend

15   in order to add the proposed RICO claim would be futile because that claim as proposed has not

16   been plausibly pled under the Rule 9(b) heightened pleading standard.  (Doc. No. 139 at 19.)

17   Focusing on the "specific intent to defraud" element, defendant argues that plaintiff's proposed

18   RICO allegations are speculative and not sufficiently detailed.  (*Id.*)  According to defendant,

19   because plaintiff's allegations "regarding mail and wire fraud prerequisites state only that

20   defendants used these mediums to set up its corporate scheme," one would have "to assume the

21   illegality and corrupt nature of the corporate structure" in order to draw an inference of

22   defendant's specific intent to defraud.  (*Id.*)

23         An inference of specific intent to defraud can be drawn from plaintiff's factual allegations.

24   The proposed TAC alleges that defendant and the newly proposed defendants "have unlawfully

25   increased their profits by making fraudulent claims that the Products—under the guise of multiple

26   different brand and entity names—increase HGH and provide anti-aging benefits when they do

27   not." (Doc. No. 118-9 at ¶ 142.)  That core allegation is buttressed by several factual allegations.

28   First, the proposed TAC alleges that defendant and proposed defendants made "fraudulent

1   claims" or "false representations" regarding the efficacy of SeroVital and the newly proposed

2   products to be identified by way of amendment, which are based on, among other things, expert

3   reports prepared by the experts hired by plaintiff.  (*See, e.g.*, *id.* at ¶¶ 1–13, 103–04, 109, 111–12,

4   123–25.)  Second, the proposed TAC alleges that four different products—i.e., SeroVital and the

5   new proposed products (SeroDyne, Thrive, and G-9)—are identical in formulation but publicly

6   appear and are marketed under different names and are produced by different entities that all fall

7   within the alleged Basic Research Enterprise.  (*See id.* at ¶¶ 74, 86, 88, 92, 96 105.)  Third, the

8   proposed TAC not only alleges that "[d]efendants each had the specific intent to participate in the

9   overall RICO enterprise and the scheme to defraud Plaintiffs and the Class, and each participated

10  in the enterprise," (*id.* at ¶ 149), but also provides the details of each defendant's particular role in

11  the alleged Basic Research Enterprise.  (*Id.* at ¶¶ 150–62.)

12          Viewing the foregoing allegations together, the proposed TAC adequately alleges that a

13  scheme existed, that the scheme was reasonably aimed at deceiving ordinary persons by

14  marketing and selling identical products under different brand names through different entities,

15  and that the products sold as part of the scheme were allegedly no more effective than a placebo

16  despite explicit representations to the contrary.  Thus, the court can infer from these allegations

17  that the defendant and the newly proposed defendants had a specific intent to defraud.  *See*

18  *Andrews Farms v. Calcot, Ltd.*, 527 F. Supp. 2d 1239, 1255 (E.D. Cal. 2007) (quoting *Odom v.*

19  *Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007)) ("[T]he third requirement—specific intent to

20  deceive or defraud—requires only a showing of the defendants' state of mind, for which general

21  allegations are sufficient.").  Accordingly, the court finds that allowing amendment to include

22  plaintiff's proposed RICO claim would not be futile.

23          In sum, the court concludes that defendant has failed to carry its burden to show that the

24  granting of leave to amend would be futile.  Accordingly, the court will grant plaintiff's pending

25  motion for leave to file a third amended complaint.

26  /////

27  /////

28  /////

28

1                                            **CONCLUSION**

2        For the reasons explained above:

3        1.      Plaintiff's motion to modify the scheduling order and for leave to file a third

4              amended complaint (Doc. No. 118) is granted;

5        2.      Plaintiff is directed to file a third amended complaint consistent with this order

6              within twenty-one (21) days of this order; and

7        3.      In the event that the response to the third amended complaint is an answer by all

8              defendants, this matter is referred back to the assigned magistrate judge for

9              issuance of a new scheduling order.  Of course, if the response is a motion to

10            dismiss the re-scheduling of this case will await the court's resolution of any such

11            motion(s).

12 IT IS SO ORDERED.

13    Dated:   **April 26, 2022**

14                                               UNITED STATES DISTRICT JUDGE

29